March 30, 2018

**VIA ELECTRONIC DELIVERY**

Kenneth L. Dorsney, Esq.  
Morris James LLP  
500 Delaware Avenue, Suite 1500  
Wilmington, Delaware 19801

Michael J. Farnan, Esq.  
Farnan LLP  
919 North Market Street, 12th Floor  
Wilmington, Delaware 19801

David W. Holt, Esq.  
Jake M. Gipson, Esq.  
Bradley Arant Boult Cummings, LLP  
200 Clinton Avenue W, Suite 900  
Huntsville, Alabama 35801

Peter J. McAndrews, Esq.  
Thomas J. Wimbiscus, Esq.  
McAndrews, Held & Malloy, Ltd.  
500 West Madison Street, 34th Floor  
Chicago, Illinois 60661

Re: *TQ Delta, LLC v. ADTRAN, Inc.*  
    C.A. Nos. 14-954-RGA, 15-121-RGA

Dear Counsel:

This letter shall serve as my decision and order concerning Defendant's Motion to Compel Production of Documents (the "Motion").

BACKGROUND

On July 17, 2014, Plaintiff TQ Delta, LLC ("TQ Delta") filed suit against Defendant ADTRAN, Inc. ("Adtran") in the United States District Court for the District of Delaware [D.I. #1] (the "Complaint"). TQ Delta seeks an award of declaratory relief and monetary damages arising out of Adtran's alleged infringement of a number of patents relating to digital subscriber line technology (collectively, the "Patents").

On July 21, 2017, Adtran served its Second Request for Production of Documents [D.I. #179] (the "Requests"). TQ Delta objected to the Requests on numerous grounds. The parties conferred regarding TQ

David A. White  
Partner  
T. 302.984.6370  
F. 302-691-1136  
dwhite@mccarter.com

McCarter & English, LLP  
Renaissance Centre  
405 N. King Street, 8th Floor  
Wilmington, DE  19801-3717  
T. 302.984.6300  
F. 302.984.6399  
www.mccarter.com

BOSTON

HARTFORD

STAMFORD

NEW YORK

NEWARK

EAST BRUNSWICK

PHILADELPHIA

WILMINGTON

WASHINGTON, DC

March 30, 2018
Page 2

Delta's objections to the Requests, but they were unable to bridge the difference in their respective positions.

The parties' subsequent efforts to meet-and-confer did not resolve their discovery dispute, and Adtran contacted the Special Master to request a teleconference.  Following a teleconference with the Special Master, on January, 22, 2018, Adtran submitted its letter brief in support of the Motion to Compel (the "Motion").  TQ Delta served its letter brief in opposition to the Motion to Compel on February 2, 2018 (the "Opposition").  Ten days later, on February 12, 2018, Adtran submitted a reply in support of the Motion to Compel (the "Reply").

On February 20, 2018, the Special Master held oral argument on the Motion ("Oral Argument").[1]  The Special Master reserved judgment, and the following shall serve as his decision and order on the Motion.

### ANALYSIS

### A. Legal Standard

Federal Rule of Civil Procedure 26(b)(1) permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case ..." FED. R. CIV. P. 26(b)(1).  Proportionality is the standard, as mandated by the recent revisions to Federal Rule 26(b)(1), which require consideration of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*  The United States District Court for the District of Delaware has written on the topic of proportionality in recent years, and the Court has explained that it must "evaluate the parties' arguments for or against the requested production on the bases of the production sought, the other production to date, the

---

[1] Oral argument was transcribed (the "Transcript"), and where appropriate, the Special Master has endeavored to cite to the transcript in this decision and order.

March 30, 2018
Page 3

degree of the requested production's relevance, and the burdens imposed on the party from whom the production is requested." *AVM Tech., LLC v. Intel Corp.*, Civ. A 15-033-RGA-MPT, 2016 WL 1948872, at *2 (D. Del. May 3, 2016).   *See also Syngenta Corp. Protection, LLC v. Willowood, LLC*, Civ. No. 16-171-RGA, 2016 WL 4925099, at *2 (D. Del. Sept. 14, 2016).

Federal Rule of Civil Procedure 37 permits a party to "move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a).  "Generally, a party moving to compel discovery bears the burden of demonstrating the relevance of the requested information." *Novanta Corp. v. Iradion Laser, Inc.*, Civ. A. 15-1033-SLR-SRF, 2016 WL 4987110, at *2 (D. Del. Sept. 16, 2016) (citing *Del. Display Grp LLC v. Lenovo Grp Ltd.*, Civ. A. 13-2108-RGA, 13-2109-RGA, 2016 WL 720977, at *2 (D. Del. Feb. 23, 2016)).   "It is [the moving party's] burden to show how discovery ... is proportional to the needs of the case." *Id.* at *4.  Further, "[t]he parties and the court have a collective responsible to consider the proportionality of all discovery and consider it in resolving discovery disputes." *Id.* at *2.

## B. Requests for the Production of Documents

Adtran seeks the entry of an order compelling TQ Delta to produce non-privileged documents concerning seven areas of inquiry:   (1) Organizational Structure, (2) Settlement Agreements, (3) Litigation Financing Agreements, (4) Transcripts, (5) Production of Undisputed Items, (6) Privilege Log, and (7) Redaction Log.  *See* Motion.

### 1. Organizational Structure

Adtran seeks an order compelling TQ Delta to produce documents responsive to Request Nos. 8-10 concerning TQ Delta's members and affiliated entities.   *See* Motion at pp. 1-4.   Adtran asserts that the requested information is relevant to its claims and defenses in this Action and its evaluation of witness bias.  *See* Motion at pp. 1-3.  Adtran also maintains that it is entitled to the requested information, because TQ Delta's members and affiliated entities may possess discoverable

March 30, 2018
Page 4

information.  *See* Motion at p. 3.  TQ Delta objects to the production of the requested documents on the basis of relevance, proportionality, and unfair prejudice.  *See* Opposition at pp. 1-2.  The Court questioned the parties at oral argument, in which Adtran revealed that it did not know if it would propound third party discovery even if the Court granted its request.  *See* Transcript at p. 12.  Adtran, however, disclosed its potential end game with respect to this area of inquiry, namely the identification and production of documents given to investors concerning the value of the patents.  *See id.* at pp. 13-14.

Adtran seeks the production of all non-privileged documents responsive to the following Requests:

> 8.   All Documents sufficient to identify TQ Delta's current and past corporate organizational structures.

> 9.   All Documents sufficient to identify all past and present corporate officers, executives, members, and members of the board of directors of TQ Delta, including their names, positions, titles, duties, and reporting relationships.

> 10.   All Documents sufficient to identify TQ Delta's predecessors, past and present affiliates, including parent companies, subsidiaries, partnerships, joint ventures, divisions, and shareholders.

While an organizational chart would likely include the requested information, TQ Delta has previously represented to the Court that it does not possess a document of this type.  Civil Rule 34 obligates a party to produce all non-privileged, responsive documents in its possession, custody, or control  *See* FED. R. CIV. P. 34.  Civil Rule 34 does not require a party to create a document that may respond to its adversary's request for information, and the Court will not impose such burden here. *See id.*

March 30, 2018
Page 5

Civil Rule 26's emphasis on proportionality guides the Court, and since TQ Delta does not possess an organizational chart, the Court's focus turns to what non-privileged, responsive documents might exist.  Aside from TQ Delta's limited liability company agreement, which will be addressed in Section B.7. herein, Adtran was not able to identify any type or category of document that might be responsive to these Requests.  *See* Transcript at p. 8.  The Court appreciates that Adtran is not in a position to identify which documents are in TQ Delta's possession, custody, or control.  The breadth of the Request, however, is extensive, and the continued uncertainty does not aid the Court in its analysis.

The Court's inquiry next focuses on the value of the information sought.  Adtran did not use an interrogatory to request the information, because it has "a limit on the number of interrogatories, while there is not one on requests for production ..."  Transcript at p. 8.  Albeit a practical approach to discovery, the response was telling.  More importantly, the Court found it troublesome that Adtran was unable to commit to serving third party discovery, even if the Court granted its request for relief.  *See* Transcript at p. 12.  This comment not only potentially reduces any decision by the Court on this matter to an advisory opinion.  The position taken by Adtran on discovery, along with its comments at Oral Argument, reflect the low probative value that it attributes to the requested information.

Finally, the Court will consider the burden on the respective parties.  TQ Delta will suffer actual expense related to its search, review, and production of documents deemed responsive to these Requests, if any.  Meanwhile, Adtran will suffer relatively little harm.  First, Adtran has not adequately shown how the requested information could support its defenses beyond conclusory statements.  Second, to the extent that the requested documents may be relevant to witness bias, TQ Delta has produced evidence of bias in advance of a witness's deposition in related litigation, and the Court expects TQ Delta to continue its historical practice in this Action.  Third, the Court does not find persuasive Adtran's argument that these third parties *may* possess responsive

March 30, 2018
Page 6

documents.  Civil Rule 34 requires a responding party to produce all documents in its possession, custody, or control.  *See* FED. R. CIV. P. 34. Subsidiaries of TQ Delta, if any, fall within the scope of Civil Rule 34,[2] and thus, any non-privileged, responsive documents in the possession of a subsidiary should have been included in the existing production.  *See* Transcript of Oral Argument at 52:24-53:3, *TQ Delta, LLC v. Comcast Cable Communications, LLC, et al.*, C.A. No. 15-611-RGA (D. Del. June 23, 2016) ("*MoCa I*") ("We've explained that TQ Delta is not withholding documents on the basis of – not withstanding their separate corporate existence, which is maintained, will not withhold – TQ Delta is not withholding documents on the basis of separateness of the entities.").  Likewise, the Court finds it unlikely that an investor has responsive documents that TQ Delta does not possess or has not produced.  Fourth, the tools of discovery provide other opportunities for obtaining the requested information.  *See id.* at 52:2-53:15.  Fifth, Adtran's motivation for these Requests reinforces the Court's conclusion, in which Adtran expressed its "expectation" that responsive documents would include information on valuation.  Transcript at p. 12. Where the Court will address valuation documents in this Order separately, Adtran will suffer relatively little prejudice.

Accordingly, for the reasons set forth herein, the Court sustains TQ Delta's objection to Request Nos. 8-10 on the basis of proportionality and unfair prejudice, provided that (a) TQ Delta continues its practice of producing Documents concerning witness bias in advance of a witness's deposition and (b) TQ Delta produces all non-privileged, responsive Documents in its possession, custody, or control consistent with the representations of counsel in *MoCa I* concerning the production of Documents without regard to separate corporate existence.

---

[2] *See generally McGrane v. Hubbell Lenoir City, Inc.,* 2011 WL 7646200, at *1 (Del. Super. Ct. Sept. 30, 2011) ("Generally, parent companies control their subsidiaries and are regularly required to produce their documents."); *Dawson v. Pittco Capital Partners, L.P.,* 2010 WL 692385, at *1 (Del. Ch. Feb. 15, 2010) ("[D]ocuments of the wholly-owned subsidiary ... are deemed controlled by its defendant parent ...");

March 30, 2018
Page 7

### 2. Settlement Agreements

Adtran seeks an order compelling the production of documents related to settlement agreements. *See* Motion at pp. 4-6; Transcript at p. 51. Adtran has divided this area of inquiry into two parts: (a) documents related to executed settlement agreements, and (b) documents related to draft settlement agreements. *See* Motion at p. 4. TQ Delta concedes that the Court previously decided this issue in a related litigation and it is willing to comply with this Court's prior order in *TQ Delta, LLC v. 2Wire, Inc.*, C.A. No. 13-1835-RGA (D. Del. Sept. 29, 2017), White, S.M. (the "2Wire Order"). TQ Delta, however, objects to the production of documents related to draft settlement agreements. *See* Opposition at pp. 6-9.

Adtran seeks the production of all non-privileged documents in response to the following requests:

11. All minutes, memoranda, notes or other documents and things related to TQ Delta's Board of Director meetings that relate to the Defendant or the Asserted Patents.

30. All investment prospectus, business plans, sales or marketing plans, sales or marketing strategies, market projections, and other documents and things relating to any products, devices, or services relating to any subject matter disclosed or claimed in the Asserted Patents.

56. All communications relating to agreements and drafts of agreements entered into between TQ Delta and any nonparty relating to, in whole or in part, the Asserted Patents.

88. All documents and things relating to the determination of or the calculation of any damages associated with

March 30, 2018
Page 8

> any nonparties associated with infringement of the
> Asserted Patents.

### a. Meeting Minutes

Adtran neglected to address Request No. 11 in its written submissions
and at Oral Argument. *See* Motion; Transcript at p. 54. To the extent
that Adtran sought to compel the production of documents in response to
Request No. 11, the Court finds that Adtran has not satisfied its burden
or otherwise waived its request. *See Novanta Corp.,* 2016 WL 4987110,
at *2. Thus, the request for relief is denied.

### b. Settlement Documents

With respect to the first category of settlement documents, the Court
sees no reason to deviate from the 2Wire Order. Accordingly, to the
extent that it has not produced such documents, TQ Delta is compelled
to produce all claim charts, executed licenses, executed settlement
agreements, and court-approved consent orders or judgments related to
the Patents. Further, the Court orders TQ Delta to produce the demand
letters exchanged in those matters that resulted in an executed settlement
agreement.

As to the second category of settlement documents, Adtran's argument
falls short. Judge Andrews has previously found that draft settlement
agreements and evidence of failed settlement negotiations are not
discoverable. *See MoCa I* at 38:19-22 ("Until they actually reach a
settlement with some defendant, ... that's just not something that we're
going to have discovery on ..."); *id.* at 39:16-23 ("And until you get to an
agreement, you have nothing."). The Court's explanation in *Sciele
Pharma, Inc. v. Lupin, Ltd.* for denying a request for evidence of
settlement negotiations lends further support to the Court's conclusion in
this Action. *See* 2013 WL 12161442, at *4 (D. Del. Jan. 31, 2013)
("[A]s a general rule license negotiations are less probative and more
prejudicial than the license themselves."). Further, Magistrate Judge
Thynge previously denied a request for the production of settlement
materials in light of "the strong public policy favoring settlement ..."

March 30, 2018
Page 9

*See Block Drug Co., Inc. v. Sedona Labs., Inc.*, C.A. No. 06-350, 2007 WL 1183828, at *1 (D. Del. Apr. 19, 2007).   While not binding authority, the Court is also persuaded by the rationale employed by the United States District Court for the Southern District of New York in *Am. Soc. of Composers, Authors & Publishers* persuasive.  *See* No. 13-95, 1996 WL 157523 (S.D.N.Y. Apr. 3, 1996).

Adtran relies on the Federal Circuit's decision in *ResQNet.com, Inc. v. Lansa, Inc.* to support its request for the production of draft settlement agreements.  *See* Motion at p. 5; Transcript at 37:1-12.   Adtran specifically relies on the Federal Circuit's holding that "the district court[, on remand,] may also consider the panoply of events and facts that occurred thereafter and that could not have been known to or predicted by the hypothesized negotiators." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010).  The Court does not find this decision persuasive.  First, the posture, in which the Federal Circuit discussed settlement communications, presents a clear point of distinction.   Second, the opinion was issued prior to the recent amendment to Civil Rule 26 and the amendment's emphasis on proportionality.   Third, the Federal Circuit issued its decision approximately six years prior to Judge Andrews' ruling in *MoCa I*. Judge Andrews was presumably aware of *ResQNet.com* at the time of *MoCa I*, yet the opinion did not appear to influence the Court's decision in a material way.  Fourth, the Federal Circuit holds that a district court *may* consider events following the first date of infringement.  *See ResQNet.com, Inc.*, 594 F.3d at 872.  This ruling affords a district court flexibility in its analysis, and Judge Andrews exercised his discretion in *MoCa I* in no uncertain terms by denying the defendants' bid for draft settlement agreements.  *See MoCa I* at 38-39.   Further, Adtran's interpretation of *ResQNet.com* would appear to open the door to an unlimited swath of information that the Federal Circuit called into question and/or cautioned district courts against in considering a reasonable royalty rate.  Finally, while *ResQNet.com* purportedly stands for the proposition that "a settlement agreement can be relevant,"[3] the

---

[3] Transcript at p. 49:4-6.

March 30, 2018
Page 10

Federal Circuit's discussion of the various materials capable of aiding it in its royalty analysis did not include draft settlement agreements.[4]

For these reasons, the Court orders TQ Delta to produce all claim charts, executed licenses, executed settlement agreements, and court-approved consent orders or judgments related to the Patents, as well as the demand letters exchanged between the parties that resulted in an executed settlement agreement. The Court sustains TQ Delta's objections to the remainder of Request Nos. 56 and 88.

### c. Promotional/Marketing Materials

Adtran seeks the production of marketing materials related to the Patents in response to Request No. 30. The Court previously addressed this issue in the 2Wire Order, in which the Court ordered the production of "any materials used to market, promote, or solicit investment in the Patents and [those] portfolios including the Patents ..." 2Wire Order at p. 11. The Court does not see a reason to deviate from the 2Wire Order and the production of such materials is consistent with Judge Andrews' ruling in *MoCa II*. *See* Transcript of Oral Argument at 33-37, *TQ Delta, LLC v. Comcast Cable Communications, LLC, et al.*, C.A. No. 15-611-RGA (D. Del. June 23, 2016) ("*MoCa II*"). The Court finds that such materials are relevant to TQ Delta's opinion as to the value of the Patents. *See Georgia Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Accordingly, the Court orders TQ Delta to produce all materials used to market, promote, or solicit investment from third parties related to the Patents and those portfolios including the Patents.

### 3. Litigation Financing Agreements

Adtran seeks an order compelling the production of documents concerning purported litigation financing. Adtran argues that the requested documents are relevant to identifying the real party in interest

---

[4] On this very point, Judge Andrews made himself clear: "And until you get to an agreement, you have nothing." *MoCa I* at 39:16-23.

March 30, 2018
Page 11

and assessing the value of the Patents. *See* Motion at p. 7. Adtran also asserts that the requested information is relevant to assessing TQ Delta's objections to discovery on the basis of proportionality. *See id.* TQ Delta counters that the requested documents are irrelevant. *See* Opposition at p. 10. At oral argument, Adtran represented that it was "fairly confident that TQ Delta did receive funding for the litigation from some entity or group." Transcript at p. 58:13-21. Meanwhile, in addition to its relevance objection, TQ Delta does not believe that Adtran has made a sufficient showing to justify production. *See id.* at p. 65:22-23. TQ Delta also argues that it has produced documents concerning investments pursuant to the 2Wire Order, which it distinguishes from litigation financing. *See id.* at p. 65:17-67:8.

Adtran seeks the production of documents concerning the existence of litigation financing pursuant to the following requests:

56. All communications related to agreements and drafts of agreements entered into between TQ Delta and any nonparty relating to, in whole or in part, the Asserted Patents.

111. All agreements related in any way to TQ Delta's financing of the present litigation.

At a fundamental level, the requesting party must put forth good cause or a basis for the discovery request. *See Novanta Corp.*, 2016 WL 4987110, at *2. While the Civil Rules' emphasis on proportionality adds another layer to the analysis, the requesting party must first show that it is entitled to the requested information. *See id.* The Court finds that Adtran has not made the initial showing sufficient to compel production of any litigation financing agreements. The Court understands that Adtran does not stand in a position to know if a litigation financing agreement exists, and it does not find its counsel's confidence or lack of confidence in the existence of an agreement particularly relevant. The Court has carefully reviewed the Motion, the Reply, and the Transcript, and it fails to find a compelling argument to justify the production of a

March 30, 2018
Page 12

purported litigation financing agreement. Adtran, rather, argues that the production of such agreements is relevant to evaluating TQ Delta's objections to discovery on the basis of proportionality. *See* Motion at p. 7; Reply at p. 6; Transcript at p. 59:16-60:8. While Civil Rule 26 lists the parties' respective resources as a factor in the Court's analysis, it is one of at least six factors set forth in Civil Rule 26(b), and the Court does not find that it is the determinative factor in the analysis. Further, Adtran's reliance on Judge Andrews' rulings in *Acceleration Bay, LLC* and *MoCa II* for this specific point is misplaced. Neither case stands for the proposition that a party must produce a litigation financing agreement. *See Acceleration Bay, LLC v. Activision Blizzard, Inc., et al.*, C.A. Nos. 16-453-RGA, 16-454-RGA, 16-455-RGA (D. Del. Feb. 9, 2018), Andrews, J.; *Moca II* at p. 34:3-12. Judge Andrews, in fact, explained:

> And I don't think the entities that are providing the funding, or the amount of the funding are relevant, or likely to lead to relevant information. And what's more, I think they are – I think really they should be off limits unless they are really necessary, and I don't think they are necessary.

*Id.* at 34:7-12. Thus, Adtran is not entitled to the production of any litigation financing agreements.

The second part of Adtran's request concerns communications between TQ Delta and its contractual counterparts concerning the Patents. Adtran has narrowed the scope of its request to "[t[hose documents that capture the representations regarding valuation, regarding validity and infringement ...]" Transcript at p. 71:6-8. Issues of validity, infringement, and valuation are clearly relevant, and any statements that TQ Delta made to third parties concerning these topics could be of value. Judge Andrews certainly thought so in both *Acceleration Bay* and *MoCa II*. In *MoCa II*, Judge Andrews explained:

March 30, 2018
Page 13

> In terms of these other things you are asking for, it does
> strike me that if plaintiffs are busy to saying to investors,
> these patents are worth X, Y, or Z, or something else, that
> plaintiff's evaluation of the patents is certainly something
> that an expert would want to consider ... And so, it strikes
> me that it would be the case that when you're trying to
> raise funds, you make representations about the value of
> the patents. ... So, I'm inclined to say that there could be
> communications, and other sorts of documents that do
> have an impact on value, and I don't think it's unfair to
> make you produce them.

*Moca II* at 34:13-35:15 (ordering plaintiff to produce "investor reports,
strategic plans, communications with investors or other persons related
to the value of ... patents"). *See also Acceleration Bay, LLC*, C.A. Nos.
16-453-RGA, 16-454-RGA, 16-455-RGA, at *2 (affirming order of
special master compelling production of documents disclosed to third
party financing entity).

TQ Delta attempts to deny Adtran discovery on this topic by
highlighting a purported distinction between litigation financing and
investment. *See* Transcript at p. 66:19-67:17. The Court fails to
recognize a meaningful distinction between the two concepts where
discovery will be limited to communications and materials concerning
the value, validity, and infringement of the Patents. At its essence, the
permissible discovery will concern representations made by TQ Delta, as
the holder of the Patents, to third parties concerning value, validity, and
infringement. The subject matter of the discovery is certainly relevant.
*See also Acceleration Bay, LLC*, C.A. Nos. 16-453-RGA, 16-454-RGA,
16-455-RGA, at *6. Further, the scope of the discovery is narrow so as
to address any concerns with proportionality.

Accordingly, for the reasons set forth herein, the Court orders TQ Delta
to produce all non-privileged communications with and materials
disclosed to third parties concerning the validity, infringement, and value

March 30, 2018
Page 14

of the Patents.[5]   Further, the Court sustains TQ Delta's objection to Request No. 111 on the basis of relevance, proportionality, and unfair prejudice.

### 4. Transcripts

Adtran seeks an order compelling the production of all transcripts in related litigations.  *See* Motion at p. 8.  TQ Delta objects to this request for documents as overbroad, irrelevant, and not proportional.  *See* Opposition at p. 12.  At Oral Argument, Adtran limited its request to unsealed transcripts and for those cases identified by TQ Delta's counsel on the record.[6]   *See* Transcript at pp. 73, 76-77, 83-84.   These concessions narrowed the scope of the dispute to the types of hearings that may be responsive to the Request.

14.   All court transcripts in any Related Litigation.

Adtran bears the burden of proving the proportional nature of Request No. 14.  Despite its concessions at Oral Argument, Request No. 14 is overbroad, because it potentially captures transcripts for scheduling hearings, status conferences, motions to amend, and motions to compel. These types of hearings are irrelevant.  The 2Wire Order required TQ Delta to produce unsealed deposition transcripts and expert reports concerning the Patents.  To the extent that it has not done so, the Court

---

[5] The Court is aware of that portion of Judge Andrews' ruling in *Acceleration Bay* concerning privilege.  By including the word, 'non-privileged', in the Order, the Court does not intend to create the impression that it disagrees with Judge Andrews' ruling or finds it unpersuasive.  This portion of the Order directs TQ Delta to produce all communications with and materials disclosed to third parties, which could be interpreted to include attorneys and experts.  The Court's ruling is not intended to impact the attorney-client privilege or attorney work product doctrine. TQ Delta, rather, should adhere to Judge Andrews' ruling in *Acceleration Bay* when completing its production in response to Request No. 56.

[6] TQ Delta represented that it produced unsealed deposition transcripts and expert reports from "MoCa, DSL, IPR, UK proceedings" in the 2Wire litigation pursuant to the 2Wire Order.  Transcript at pp. 76-77.  These cases shall constitute the known universe of cases that TQ Delta must search for and produce relevant transcripts in this Action.  *See id.* at pp. 83-84.

March 30, 2018
Page 15

expects TQ Delta to honor the spirit and letter of the 2Wire Order and produce all unsealed deposition transcripts and expert reports concerning the Patents.  Further, TQ Delta shall produce all unsealed transcripts from any *Daubert*-type hearing and Motion for Summary Judgment concerning the Patents.  While this ruling reflects an expansion of the scope of documents to be produced, the increase is hardly significant or disproportionate given the limited number of cases that TQ Delta identified at Oral Argument.

Accordingly, the Court orders TQ Delta to produce all unsealed expert reports and unsealed transcripts from depositions, *Daubert* hearings, and oral argument on Motions for Summary Judgment concerning the Patents in the specific cases identified by TQ Delta's counsel at Oral Argument.  The Court sustains TQ Delta's objection to the remainder of Request No. 14 as overbroad and disproportionate.

### 5. Production of Undisputed Items

Adtran seeks an order compelling TQ Delta to produce all non-privileged documents, which are responsive to Request Nos. 11, 24, 27, 50, 51, 61, 64, 76, 83, and 88.  *See* Motion at p. 8.  At Oral Argument, counsel for both parties agreed that the Court need not take any further action on this point.  *See* Transcript at p. 6.  Accordingly, the issue is moot.

### 6. Privilege Log

Adtran seeks an order compelling TQ Delta to create a privilege log, which identifies those documents withheld from production on the basis of privilege.  *See* Motion at pp. 8-9; Transcript at pp. 87-88.  TQ Delta asks that any obligation to create a privilege log be mutual, to which Adtran agreed.  *See* Transcript at p. 92.  Based on the parties agreement on this issue, the sole remaining issue is the date by which the parties must produce the privilege logs.  Adtran seeks a date in March 2018, by which the parties must exchange privilege logs, while TQ Delta maintains that they should not be required to produce a privilege log prior to June 2018.  *See* Transcript at pp. 91, 93.

March 30, 2018
Page 16

Although the Requests have been pending for a significant period of time, neither party has produced a privilege log.  The time has come for the parties to take more focused discovery in preparation for trial, and thus, the Court orders the parties to exchange privilege logs in accordance with the provisions of the protective order entered in this Action by or before Monday, May 7, 2018.[7]

### 7. Redaction Log

Adtran seeks an order compelling TQ Delta to create a redaction log, which reflects the redacted portions of responsive documents produced in this Action.  *See* Motion at p. 9.  As of Oral Argument, it was uncertain whether Adtran received TQ Delta's redaction log.  *See* Transcript at p. 106.  To avoid any doubt on this issue, the Court orders TQ Delta to produce a redaction log to Adtran within three (3) business days of the entry of this Order.  Simultaneously therewith, TQ Delta shall provide the Court with a copy of the redaction log and the relevant documents in redacted and unredacted form.[8]  If it deems necessary, TQ Delta shall have three (3) business days from the production of the redaction log to submit a letter brief justifying redactions.[9]  Adtran may submit a written response no later than three (3) business days after its

---

[7] Counsel for Adtran represented that the protective order places certain limitations on the parties' obligation to create a privilege log.  *See* Transcript at p. 95.  Absent further agreement, each party may create a privilege log in good faith reliance on the limitations set forth in the protective order.  To the extent that the protective order does not contain such limitations or otherwise guide the parties, then the parties must defer to the standards recognized in this jurisdiction.  In the event that a dispute between the parties remains as to the sufficiency of a privilege logs, the Court is available to make a timely decision for the benefit of the parties.

[8] The Court shall either return or purge the documents pursuant to the instructions of TQ Delta.

[9] If TQ Delta submits a letter brief, the Court would find it helpful to understand the nature of the redacted document, the basis for the redaction, and the specific Request(s) to which it responds.

March 30, 2018
Page 17


receipt of TQ Delta's submission.   The Court will issue a prompt decision on the papers.[10]

It is so ordered.



Special Master David A. White

_____

[10] The parties' submissions on this topic may not exceed three (3) pages, single spaced, twelve-point font.