**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TQ DELTA, LLC, | | Civil Action No. 14-cv-954-RGA |
| | Plaintiff, | |
| v. | | Redacted Version |
| ADTRAN, INC. | | |
| | Defendant. | |
| ADTRAN, INC, | | Civil Action No. 15-cv-121-RGA |
| | Plaintiff, | |
| v. | | ██████████████ |
| TQ DELTA, LLC. | | |
| | Defendant. | |

**DEFENDANT ADTRAN, INC.'S OBJECTIONS TO THE SPECIAL MASTER'S
MARCH 30, 2018 ORDER**

## I.      INTRODUCTION

Under Federal Rule of Civil Procedure 53(f) and the order appointing the Special Master (D.I. 108, ¶ 6), Defendant ADTRAN, Inc. respectfully objects to portions of the Special Master's March 30, 2018 Order regarding ADTRAN's motion to compel production of certain documents. D.I. 361 (the "Order"). The Court should overrule the following three portions of the Order.

*First*, ADTRAN objects to the denial of its motion to compel Plaintiff TQ Delta, LLC to produce copies of litigation funding agreements. Contrary to the Order, such information is highly relevant to numerous issues, including the identification of parties with a financial interest in the litigation and the assessment of TQ Delta's damages theories. The Order erred by failing to consider those grounds, and ADTRAN is otherwise entitled to the requested documents.

*Second*, ADTRAN objects to the refusal to compel TQ Delta to produce documents sufficient to identify and show the relationship of TQ Delta's members and affiliates. Despite clear relevance, the Order denied discovery on the ground of proportionality. That ruling is erroneous due to its incorrect characterization of the requests and flawed metrics for assessing their value. Judged under the proper standards, ADTRAN is entitled to the discovery.

*Third*, ADTRAN objects to the Order to the extent that it qualifies or limits TQ Delta's obligation to produce correspondence and other documents exchanged with third parties about validity, infringement, and value of the Asserted Patents. Although the Order broadly compelled production of such documents, other portions of the Order arguably muddy the scope of TQ Delta's obligation. ADTRAN asks the Court to clarify the scope of the Order.

## II.     BACKGROUND

TQ Delta asserts that ADTRAN infringes over 30 Asserted Patents in 10 patent families purportedly related to certain DSL technology. D.I. 51. In July 2017, ADTRAN served its second set of requests for production, which included the following five requests:

8. All documents sufficient to identify TQ Delta's current and past corporate organizational structures.

9. All documents sufficient to identify all past and present corporate officers, executives, members, and members of the board of directors of TQ Delta, including their names, positions, titles, duties, and reporting relationships.

10. All documents sufficient to identify TQ Delta's predecessors, past and present affiliates, including parent companies, subsidiaries, partnerships, joint ventures, divisions, and shareholders.

56. All communications relating to agreements and drafts of agreements entered into between TQ Delta and any nonparty relating to, in whole or in part, the Asserted Patents.

111. All agreements related in any way to TQ Delta's financing of the present litigation.

*See* ADTRAN's Second Set of Requests for Production of Documents (attached as Exhibit A). TQ Delta served objections in August 2017 and refused to produce any documents on the ground that each request was irrelevant and disproportionate, among other objections. *See* TQ Delta's Responses to ADTRAN's Second Set of Requests for Production (attached as Exhibit B).

After ADTRAN attempted to meet and confer without success, it then contacted the Special Master to compel production. The parties submitted briefing and the Special Master held a hearing. *See* ADTRAN's Jan. 22, 2018, Letter (attached as Exhibit C); TQ Delta's Feb. 2, 2018, Letter (attached as Exhibit D); ADTRAN's Feb. 12, 2018, Letter (attached as Exhibit E); Transcript of Feb. 20, 2018, Hearing (attached as Exhibit F). Based on that evidence, the Special Master issued his Order partially granting and partially denying ADTRAN's motion. D.I. 361. ADTRAN now objects to three portions of that Order that are ripe for review.[1]

## III.   LEGAL STANDARD

A litigant is entitled to discovery that is "relevant to any party's claim or defense" and "proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). The moving party must initially

---

[1] Two other issues are worth noting. First, the Special Master is still considering the propriety of TQ Delta's redactions to certain documents. D.I. 361 at 16. Second, the Order noted that ADTRAN had failed to address Request No. 11 in its briefing (*id.* at 8), but that is because the Parties already reached an agreement concerning that request.

satisfy the relevance threshold. *Novanta Corp. v. Iradion Laser, Inc.*, 2016 WL 4987110, at *2 (D.

Del. Sept. 16, 2016). After that, proportionality requires consideration of six factors listed in the

Rule, and the parties and court share responsibility for the determination. *Id.* The Court reviews

*de novo* a Special Master's order regarding a motion to compel. *Acceleration Bay LLC v. Activision*

*Blizzard, Inc.*, 2018 WL 798731, at *1 (D. Del. Feb. 9, 2018).

## IV.   ARGUMENT

### A.   The Order Erred when It Denied ADTRAN's Motion to Compel Production of TQ Delta's Litigation Funding Agreements, which Are Relevant to Numerous Important Issues.

The Order erred when it denied ADTRAN's motion to compel production of litigation

funding agreements, Request No. 111. D.I. 361 at 11–12. TQ Delta's primary objection—and the

Order's sole ground for denying relief—is that the agreements are irrelevant. *Id.* But that

assessment is wrong, both because the Order failed to consider numerous grounds of relevance

and because it improperly evaluated other grounds. Not only are the agreements relevant, they are

highly probative. And since this information is readily available and not privileged, production of

the agreements is proportional and entirely consistent with the Federal Rules.

The funding agreements are relevant on a multitude of grounds that the Order failed to

consider. As an initial matter, the litigation funding agreements are relevant to identifying

individuals and entities who may have a financial or other interest in this litigation. *See* Ex. C at

7. That information is vital. Without it, ADTRAN cannot identify witnesses having bias, potential

jurors who may be partial, or grounds for recusal. *Balsey v. LFP, Inc.*, 691 F.3d 747, 762 (6th Cir.

2012). For very similar reasons, numerous courts automatically require the disclosure of such

information,[2] which underscores the common-sense conclusion that such information is highly

---

[2] *See, e.g.*, 3d Cir. L. R. 26.1.1(b) ("Every party to an appeal must identify . . . every publicly owned corporation not a party to the appeal . . . that has a financial interest in the outcome . . .");

relevant and necessary to avoid even the appearance of impropriety. Moreover, depending on the agreements, the funders may be a real party in interest, which the Court and ADTRAN "have the right to know." *Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826, 851 (E.D. Tex. 2017). In our adversarial system, it is improper to entrust TQ Delta to be the sole gatekeeper of such information. *See also Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1347 (Fed. Cir. 2011) (A "level evidentiary playing field created by discovery . . . lies at the heart of our adversarial system.").

Likewise, the litigation funding agreements are relevant to and highly probative of TQ Delta's damages theories. Ex. C at 7. Even if the agreements do not contain explicit statements about the value of TQ Delta's licensing and litigation, those agreements—similar to ███████ ████████████—certainly include provisions defining how proceeds are distributed between TQ Delta and its funders. *See* █████████████ (attached as Exhibit G). The funders are likely afforded some preference, thus motivating TQ Delta to pursue settlements and judgments sufficiently large enough to trigger distribution of profits to both its funders *and* its members. In light of this reality, the funding agreements are very relevant to TQ Delta's damages calculations. ADTRAN is entitled to the agreements to explore their influence and impact. *W.L Gore & Associates, Inc. v. C.R. Bard, Inc.*, 2015 WL 12731924, at *6 (D. Del. Nov. 4, 2015) (noting that a "defendant will have the opportunity to cross examine the damages expert on the factual basis and assumptions for his opinion") (internal quotation marks and citation omitted).

Beyond the grounds that the Order failed to consider, the agreements are also relevant to

---

5th Cir. L. R. 28.2.1 (Each party "must certify a complete list of all persons, associations of persons, firms, partnerships, corporations, guarantors, insurers, affiliates, parent corporations, or other legal entities who or which are financially interested in the outcome of the litigation."); 10th Cir. L. R. 46.1(D)(2) ("The certificate must list all persons, associations, firms, partnerships, corporations, guarantors, insurers, affiliates, and other legal entities that are financially interested in the outcome of the litigation."); 11th Cir. L. R. 26.1-2(a) ("A CIP must contain a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal . . . .").

TQ Delta's innumerable objections on the ground of proportionality. Puzzlingly, the Order dismissed this concern because "the parties' resources" is *only* one of six factors listed in the Federal Rules. *See* D.I. 361 at 12 (discussing FED. R. CIV. P. 26(b)(1)). The Order fails, however, to explain why a factor enumerated in the Federal Rules can be denigrated. Since TQ Delta has specifically objected to more than one hundred of ADTRAN's requests as "not proportional," TQ Delta has squarely and significantly placed its resources at issue. *See* Ex. B, Responses to Nos. 8–40, 42–90, 92–112. But without knowing the existence and magnitude of TQ Delta's funding, neither ADTRAN nor the Court may properly analyze proportionality. The Order thus erred by barring ADTRAN from discovering information that is per se relevant to TQ Delta's objections.

ADTRAN also respectfully disagrees that an oral order in a different case on a different issue controls the outcome. *See* D.I. 361 at 12 (quoting *TQ Delta LLC v. Comcast Cable Comm.*, No. 1:15-cv-611-RGA (D. Del. Oct. 11, 2016), ECF No. 154)). As stated in the briefing underlying that order, the issue before the Court was whether TQ Delta could be compelled "to search for and produce documents 'relating to the[] value'" of TQ Delta or its patents. *Comcast*, No. 1:15-cv-611-RGA, ECF No. 155, p.3 (attached as Exhibit H). The question was thus whether litigation funding agreements were relevant to value; the Court was not asked to rule on, and it did not consider, whether litigation funding agreements might be discoverable for other reasons. *See id.* ECF No. 154, pp.33–38 (attached as Exhibit I). Plainly, as other courts have found, litigation funding agreements can be and are discoverable. *See, e.g.*, *Gbarabe v. Chevron Corp.*, 2016 WL 4154849, at *1–2 (N.D. Cal. Aug. 5, 2016); *Cobra Int'l, Inc. v. BCNY Int'l, Inc.*, 2013 WL 11311345, at *2–3 (S.D. Fla. Nov. 4, 2013). The oral order in *Comcast* is inapposite.

Turning to proportionality, although the Order did not reach the issue, ADTRAN's discovery is proportional to the needs of this case. *See* FED. R. CIV. P. 26(b)(1). Each relevant

factor supports proportionality: (1) issues like impartiality and damages will be key to the trials in this case; (2) the amount in controversy—involving ten patent families and over 30 patents—is significant; (3) TQ Delta has exclusive access to the information; (4) TQ Delta possesses ample resources to identify and produce the agreements; (5) the funding agreements are necessary to ensuring the impartial adjudication of TQ Delta's claims, and they are also highly probative of TQ Delta's damages theories and objections to discovery; and (6) the burden of production is slight since the funding agreements should be immediately available to TQ Delta.

Finally, the discovery is not objectionable for any other reason. TQ Delta expressly disavowed a privilege objection, relying instead on relevance and proportionality to resist ADTRAN's discovery. Ex. D at 11. Because the discovery is relevant and proportional, the Court should sustain ADTRAN's objection and order production of all litigation funding agreements.

### B. The Order Erred when It Ruled that ADTRAN's Targeted Requests about TQ Delta's Members and Affiliates Were Disproportionate to the Needs of this Case.

The Order improperly denied ADTRAN's request to compel TQ Delta to produce documents sufficient to show the identity and relationship of TQ Delta's members and affiliated entities, Request Nos. 8–10. *See* D.I. 361 at 3–6. Such information is plainly relevant. *See id.* at 4 (stating that such discovery could be obtained through organizational charts, if they existed). The Order denied this targeted discovery, however, on the ground of proportionality. Because that analysis erred in several respects, ADTRAN objects to that portion of the Order.

*First*, the Order significantly inflated the breadth of ADTRAN's requests, labeling them "extensive" and "uncertain[]." *Id.* at 5. But each request is targeted. ADTRAN only requested "documents sufficient to identify" certain entities or individuals and their relationship with TQ Delta. Ex. A, Nos. 8–10 (emphasis added). As ADTRAN has explained, documents that satisfy these targeted requests should be "immediate[ly]" available in the form of "corporate formation

documents, membership agreements, investment agreements, and other similar documents." Ex. C at 4. But ignoring that clear statement, the Order faulted ADTRAN for "not [being] able to identify any type or category of document that might be responsive." D.I. 361 at 5 (citing Hearing Transcript at 8). Not only is that characterization unsupported by the citation to the hearing transcript, it flatly ignores ADTRAN's briefing. *See* Ex. F at 8 (discussing different issues). The Order thus fundamentally misunderstood or misconstrued ADTRAN's requests. As a result, the ensuing proportionality analysis was skewed against ADTRAN's targeted discovery.

*Second*, the Order relied upon two flawed premises to conclude that the information had "low probative value." D.I. 361 at 5. The Order initially found it "telling" that ADTRAN propounded document requests instead of interrogatories. *Id.* The Order fails to explain, however, why forgoing interrogatories inherently reflects the value judgment. Due to the limit on interrogatories (D.I. 112, ¶ 5.d), and due to the right to respond to interrogatories by producing documents (FED. R. CIV. P. 33(d)), ADTRAN reasonably chose to forgo an interrogatory on a topic that should be readily ascertainable through document requests. *See also* FED. R. CIV. P. 26(d)(3)(A) ( "methods of discovery may be used in any sequence."); *Inventio AG v. ThyssenKrup Elevator Ams. Corp.*, 2009 WL 2408422, at *2 (D. Del. Aug. 3, 2009) (refusing to require defendant to pursue discovery in a different sequence). The logic of the Order would mean that if ADTRAN had requested the information through both interrogatories and requests for production—a more burdensome, but permissible option—ADTRAN's request would have been more proportional. The analysis should not turn on such a dubious distinction, particularly where TQ Delta has never suggested that other means of discovery would be unobjectionable.

The Order then attempts to corroborate the purported low value by noting that ADTRAN "was unable to commit to serving third party discovery." D.I. 361 at 5 (citing Hearing Transcript

at 12). But again, the import of this observation is not self-evident and does not withstand scrutiny. Precisely because ADTRAN does not yet know the identities or relationships of third parties, ADTRAN cannot commit to serving third-party discovery (without appearing overzealous), and it cannot commit to forgoing third-party discovery (without a risk of waiving its rights). Thus, ADTRAN quite reasonably responded that it would need to know more information before deciding whether to pursue third-party discovery. Ex. F at 12.

Moreover, ADTRAN's pragmatic approach to this targeted discovery makes sense in light of the numerous needs for the information. *See* Ex. C at 1–4. For instance, this information is imperative to identifying individuals and entities with a financial interest in the litigation— information that ADTRAN must know for identifying witness bias, assessing juror partiality, and rebutting TQ Delta's damages theories. *See infra* Section IV.A. Likewise, the third parties may themselves possess various discoverable information about ADTRAN's defenses or other issues in the case. *See, e.g.*, *Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*, 2007 WL 839939, at *4 (D. Nev. Mar. 16, 2007); *Draper v. Bank of Am., N.A.*, 2012 WL 12878606, at *3 (W.D. Tex. Mar. 8, 2012). And at least some information possessed by third parties likely falls beyond what TQ Delta possesses, either because the third parties are <u>past</u> affiliates of—and no longer "controlled" by—TQ Delta, or because the third parties possess their own relevant personal knowledge. *Compare* D.I. 361 at 5–6. The requested information thus has high probative value.

*Third*, the Order erred by relying upon the first two errors when weighing the relative burden on the parties. *Id.* As to the burden on TQ Delta, the Order portends that TQ Delta "will suffer actual expense." *Id.* at 5. But because documents sufficient to respond to ADTRAN's requests should be immediately available to TQ Delta, any purported burden on TQ Delta will be slight. Conversely, the prejudice to ADTRAN will be significant if discovery is denied. The Order

attempts to dismiss the significant need for the discovery as merely "conclusory" or "unlikely," which of course is founded upon the flawed premise that the requested information is "low" value. *Id.* at 5–6. It is also founded on the flawed premise that, although ADTRAN identified a litany of grounds, ADTRAN needed to justify a third party's relevance with more specificity. Not only would such a task be impossible because the necessary information is within TQ Delta's exclusive control, such information asymmetry actually supports the proportionality of ADTRAN's requests. *See* FED. R. CIV. P. 26(b)(1) (listing "the parties' relative access to information").

*Fourth*, the Order failed to consider the remaining proportionality factors, which weigh in favor of production. Specifically, the issues identified by ADTRAN (*e.g.* financial interest and damages theories) are important "issues at stake," and the requested information is highly relevant to "resolving th[ose] issues." *Id.* Accordingly, ADTRAN objects to the Order and requests that the Court compel TQ Delta to produce documents in response to Request Nos. 8–10.

### C.   TQ Delta Must Produce All Documents and Other Materials Exchanged with Any Third Party about Validity, Infringement, or Valuation.

In an abundance of caution, ADTRAN lastly objects to the extent that the Order is ambiguous about TQ Delta's obligation to produce documents concerning validity, infringement, and value, Request No. 56. ADTRAN requests clarification that TQ Delta must produce documents exchanged with *any* third party—whether an investor, member, affiliate, licensee, funder, or otherwise—that concern validity, infringement, or value of the Asserted Patents.

The Order specifically addressed this issue while discussing litigation funding agreements, although ADTRAN's relevant request extended to *any* "nonparty" communicating with TQ Delta. *See* Ex. A, No. 56. Rejecting TQ Delta's objections, the Order broadly compelled "TQ Delta to produce all non-privileged communications with and materials disclosed to third parties concerning the validity, infringement, and value of the Patents." D.I. 361 at 13–14. By its terms,

the Order covers documents exchanged with all third parties, not just litigation funders.

Despite the broad ruling, other parts of the Order arguably restrict its scope. For example, while discussing documents related to executed settlement agreements (which fall under Request No. 56), the Order compelled production of "demand letters" without mentioning other correspondence. *Id.* at 8. That silence should not limit TQ Delta's obligations. ADTRAN's motion to compel specifically requested all "related correspondence" because that information was important "to myriad issues," including validity, infringement, and value. Ex. C at 5 (discussing *Phoenix Sols., Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 582 (N.D. Cal. 2008)). Those reasons are precisely the reasons that the Order (under the heading "Litigation Financing Agreements") compelled the production of all communications and materials exchanged with third parties. Therefore, the earlier silence should not limit the scope of the TQ Delta's obligation.

Likewise, the denial of ADTRAN's request for documents showing the identity and relationship of TQ Delta's members and affiliates should not limit TQ Delta's obligation to produce documents exchanged with members and affiliates about validity, infringement, and valuation. Indeed, the Order noted that "valuation documents" were addressed "separately," D.I. 361 at 6, and members and affiliates fall within the scope of Request No. 56. Thus, any correspondence or documents about valuation, validity, or infringement must be produced—even if those documents also contain information about TQ Delta's members and affiliates.

ADTRAN accordingly objects to the Order to the extent that any portion appears to contradict TQ Delta's unequivocal obligation to produce correspondence and materials provided to third parties about validity, infringement, or valuation of the Asserted Patents.

## V.    CONCLUSION

For these reasons, ADTRAN respectfully requests that the Court sustain ADTRAN's objections and overrule the portions of the Order identified above.

Dated: April 20, 2018                    Respectfully submitted,


MORRIS JAMES LLP

___/s/ Kenneth L. Dorsney_____
Kenneth L. Dorsney (Bar No. 3726)
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
(302) 888-6800
kdorsney@morrisjames.com

*Attorneys for Defendant ADTRAN, Inc.*

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TQ DELTA, LLC, | |
|       Plaintiff, | C.A. No. 1:14-cv-00954-RGA |
| v. | |
| ADTRAN, INC. , | |
|       Defendant. | |
| ADTRAN, INC., | |
|       Plaintiff and<br>      Counterclaim Defendant, | |
| v. | C.A. No. 1:15-cv-00121-RGA |
| TQ DELTA, LLC, | |
|       Defendant and<br>      Counterclaim Plaintiff. | |

## ADTRAN, INC.'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, ADTRAN, Inc.

("ADTRAN") hereby requests that TQ Delta LLC ("TQ Delta") produce the following documents

and things in accordance with the Definitions and Instructions contained herein, within thirty (30)

days of service hereof, or at such other time and place as may be mutually agreed upon by the

parties, and at the offices of Bradley Arant Boult Cummings, LLP, One Federal Place, 1819 5th

Avenue N, Birmingham, AL 35203.  These requests for production are deemed to be continuing

up to and including the time of trial, and impose upon TQ Delta the obligations set forth in Rule

26(e) of the Federal Rules of Civil Procedure.

## INSTRUCTIONS

1.     The Requests require Plaintiff to produce all documents and things in Plaintiff's possession, custody or control; or in the possession, custody or control of Plaintiff's agents, consultants, representatives, officers, directors, affiliates, predecessors and successors in interest, parents, divisions, subsidiaries, regional offices, assignees, trustees, employees, experts, attorneys, and/or anyone else acting on Plaintiff's behalf or subject to its control.

2.     The Defendant requests that documents be produced in the same file or other organizational environment in which they are maintained.  For example, a document that is part of a file, docket or other grouping should be physically produced together with all other documents from said file, docket or grouping responsive to said request, in the same order or manner of arrangement as the original.  Additionally, a document should be produced stapled, clipped or otherwise bound or connected in the same manner as the original.  Where color is necessary to interpret or understand the content of the documents, please produce color copies.

3.     Each Request shall be answered separately and fully in writing, unless it is objected to, in which event TQ Delta shall state the reasons for objection and shall answer to the extent the Request is not objectionable.  All grounds for an objection to a Request shall be stated with specificity.

4.     If in responding to these Requests for Production, TQ Delta contends that an ambiguity exists with respect to construing a request or definition, the response shall set forth the matter deemed ambiguous and the construction used in responding.

5.     Whenever in this Request you are asked to identify or produce a document which is deemed by you to be properly withheld from production:

(a)     If you are withholding the document under a claim of privilege (including but not

limited to the attorney-client privilege and the work product doctrine), please

2

provide the information set forth in Federal Rule of Civil Procedure 26(b)(5), including:

(i)      the type of document;

(ii)     the general subject matter of the document;

(iii)    the date of the document withheld or the date of the information redacted;

(iv)    such other information as is sufficient to identify the document, including, where appropriate, the author, addressees, custodian, and any other recipient of the document, and where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other, in a manner that, without revealing the information claimed to be protected, will enable this party to assess the applicability of the privilege or protection claimed by you;

(v)     the nature and basis of the privilege claimed

(vi)    if the privilege claimed is the attorney-client privilege, an indication of which author(s) or addressee(s) is/are attorney(s); and

(vii)   any other information necessary to support the claim of privilege;

(b)    If production of any requested document(s) is objected to on the grounds that production is unduly burdensome, describe the burden or expense of the proposed discovery;

(c)    If you are withholding the document for any reason other than an objection that it is beyond the scope of discovery or that a request is unduly burdensome, please provide the reason for withholding the document, and the information requested in sections 4(a)(i) – 4(a)(iv) above. Regardless of whether a protective order is

entered by the Court, in all instances in which you are withholding documents or things on the ground of confidentiality, please so indicate in your responses.

6.      When a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed. When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted document.

7.      All documents that constitute electronically stored information as defined in the Federal Rules of Civil Procedure shall be produced as single page TIFFs with image load files showing production numbers and document breaks or as otherwise agreed by the parties. Defendants reserve the right to request production of electronically stored information in its native format and/or with associated metadata where necessary.

8.      If Plaintiff has no documents responsive to a certain request, please so state.  If Plaintiff is aware that a document or group of documents responsive to these requests once existed, but has been destroyed or discarded, please identify the document by stating: (i) the date of the document; (ii) the subject matter of the document; (iii) the person(s) who prepared or authored the document; (iv) all persons to whom the document was distributed, shown, or explained; (v) when the document or group of documents was destroyed or discarded; (vi) why the document or group of documents was destroyed or discarded; and (vii) the person most

knowledgeable about the content of the document(s) and the circumstances under which the document or group of documents was destroyed or discarded.

9.      If Plaintiff cannot answer any Request for Production fully within the prescribed time limit despite the exercise of reasonable diligence, furnish as complete an answer as possible and explain in detail the reasons why a full and complete response cannot be provided.

10.      To the extent possible, TQ Delta should supply all annual data requested on a calendar basis.  However, if fiscal year data is provided, please specify the month in which the fiscal year begins and terminates.  When information is requested "for each year," include the requested information for all prior years from 2003 to the present and also the requested information available for the current year and specify what portion of the current year (e.g., January 1, 2013 through [month] [day], 2013) is covered by such information.

11.      Each reference to a firm or company other than Plaintiff shall be deemed to refer to that firm or company, and its subsidiaries and associated, affiliated, related, or controlled entities.

12.      Where an identified document is in a language other than English, state whether an English translation of such document exists. If a document is in a language other than English and an English translation exists, identify and provide both documents.

## **DEFINITIONS**

Notwithstanding any definition set forth below, each word, term, or phrase used in these Requests for Production of Documents and Things ("Requests for Production") is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.  In these Requests for Production, the following terms are to be given their ascribed definitions:

1.      The terms "TQ Delta," "Plaintiff," "You," and/or "Your" refers collectively and individually to Plaintiff/Counterdefendant TQ Delta LLC, and all its predecessors or successors

5

(merged, acquired, or otherwise), parents, divisions, subsidiaries, and affiliates thereof, and all past or present directors, officers, agents, representatives, employees, consultants, counsel, joint-venture, partnership, and other persons acting on its behalf.

2.    The term "Aware" means Aware Inc. and all predecessors, subsidiaries, parents and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, entities acting in joint-venture or partnership relationships with them, and others acting on its behalf.

3.    The terms "Defendant" and "ADTRAN" mean ADTRAN, Inc.

4.    The term "Asserted Patents" shall mean and refer to the U.S. Patents that ADTRAN is alleged to have infringed in Your Amended Complaint and Answer and Counterclaims.  For avoidance of doubt, the Asserted Patents are U.S. Patent Nos. 7,570,686, 7,835,430, 7,889,784, 8,238,412, 8,432,956, 7,453,881, 7,809,028, 7,978,706, 8,422,511, 7,831,890, 7,844,882, 8,276,048, 8,495,473, 7,836,381, 8,607,126, 7,292,627, 7,471,721, 8,090,008, 8,073,041, 8,218,610, 8,355,427, 7,451,379, 7,925,958, 7,979,778, 8,516,337, 8,462,835, 8,594,162, 6,445,730, 7,978,753, 8,437,382, 8,611,404, 7,796,705, 8,335,956, 8,407,546, 8,468,411, 8,645,784, 8,595,577, and 8,626,660.

5.    The term "Related Litigation" means any case filed by TQ Delta in which the Asserted Patents are asserted.  This includes, without limitation, the following cases before Judge Richard G. Andrews in the District of Delaware: *TQ Delta, LLC v. 2Wire, Inc.*, 1:13-cv-1835-RGA; *TQ Delta, LLC v. Zhone Technologies, Inc.*, 1:13-cv-1835-RGA; *TQ Delta, LLC v. ZyXel Comms., Inc., et al.*, 1:13-cv-2013-RGA; *TQ Delta, LLC v. Comcast Corp., et al.*, 1:15-cv-00611-RGA; *TQ Delta, LLC v. CoxCom, LLC, et al.*, 1:15-00612-RGA; *TQ Delta, LLC v. DIRECTV, et al.*, 1:15-00613-RGA; *TQ Delta, LLC v. DISH Network Corp., et al.*, 1:15-00614-

RGA; *TQ Delta, LLC v. Time Warner Cable Inc., et al.*, 1:15-615-RGA; *TQ Delta, LLC v. Verizon Services Corp.*, 1:15-00616-RGA.

6.      The terms "Person" and Persons" mean both natural persons and legal entities, including, without limitation corporations, companies, firms, partnerships, joint ventures, proprietorships, associations, and governmental bodies or agencies.  Unless noted otherwise, references to any person, entity or party herein include its, his or her agents, attorneys, employees, employers, officers, directors, or others acting on behalf of said person, entity, or party.

7.      The term "thing" shall mean, consistent with the comprehensive meaning in Federal Rules of Civil Procedure 34, any physical specimen or tangible item, other than a document.

8.      The term "communication" or any variant thereof means any contact, oral or documentary, formal or informal, at any place or under any circumstances whatsoever whereby information of any nature is transmitted or transferred, including, without limitation, a single person seeing or hearing any information by any means.

9.      As used herein, the terms "relate to," "related to" "relates to," or "relating to" mean directly or indirectly mentioning, involving, depicting, listing, forming the basis of, supporting forwarding, relying upon, regarding explaining, concerning, referring to, pertaining to, summarizing, comprising, showing, commenting on, describing, reflecting, analyzing, being connected with, or otherwise discussing the subject matter.

10.      The terms "and," "or," and "and/or" shall be construed in the conjunctive or the disjunctive, whichever makes the Request more inclusive.

11.     The terms "include" or "including" mean containing and comprising without limitation.

12.     The terms "each" and "any" mean each and every, and should be understood to encompass "all.  "Or" should be understood to include and encompass "and."  "And" should be understood to include and encompass "or."

13.     The term "date" means the exact day, month, and year.  If the day, month, and year are not ascertainable, then provide the most complete and accurate approximation thereof. Any approximation must be identified as such.  The sources and means of derivation of such estimations shall be specifically set forth in your written responses.

14.     The term "agreement" includes any license, contract or assignment, including amendments and/or modifications thereto.

15.      "Complaints" shall mean the Complaint filed by the Plaintiff in the United States District Court for the Delaware District on July 17, 2014 in this action, as well as any supplemental or amended complaints filed by the Plaintiff in this action.

16.     "Third Party" shall mean any Person other than the Defendant or Plaintiff.

17.     "Application" means any patent application or similar document anywhere in the world, including but not limited to any provisional application, continuing application, continuation-in-part application, divisional application, file-wrapper continuation, reexamination proceeding, reissue application, and abandoned application.

18.     "Asserted Claims" means the claim(s) of any Asserted Patent that has/have been identified as asserted against ADTRAN in the Complaint filed in this action or that may otherwise be identified as asserted against ADTRAN during this action.

19.     "Related Patents" and "Related Applications" means any patent or Application filed anywhere in the world that is related to any Asserted Patent, including but not limited to any patent or Application that (i) claims priority in whole or in part to or from any Asserted Patent, (ii) is the basis for a claim of priority in whole or in part for any Asserted Patent, or (iii) discloses the same subject matter as any Asserted Patent or shares any part of its written description with the written description of any Asserted Patent.

20.     "Inventors" means any and all of the inventors of any invention claimed by any of the Asserted Patents.

21.     The term "infringement" shall mean and refer to direct, contributory and induced infringement, whether literally or under the doctrine of equivalents, under the applicable laws.

22.     "Prior Art" means all publications, patents, physical devices, prototypes, products, uses, sales, offer for sale, or other activity concerning the subject matter of the Asserted Patents and existing on, or occurring at, a date such as to be relevant under any subdivision of 35 U.S.C. §§ 102 or 103.

23.     "PTO" shall mean the United States Patent and Trademark Office.

24.     "Accused Products" refers to those products disclosed by TQ Delta in its Final Infringement Contentions served December 8, 2016 and January 31, 2017.

25.     "Court documents" shall mean pleadings, discovery requests, discovery responses, deposition transcripts (whether written, audiotaped or videotaped), legal memoranda, briefs, motions, notices, certificates, affidavits, declarations, or any visual, graphic or audio presentation that was filed, served, exchanged or recorded in connection with any civil, criminal or administrative proceeding, International Trade Commission investigation, PTO proceeding,

arbitration, mediation, or dispute resolution process to which TQ Delta was a party or in which

TQ Delta had a legal or equitable interest.

26.     The term "United States" or "U.S." shall mean and refer to the United States and

its territories and possessions.

27.     "Electronically stored information" or "ESI" means any information stored in

electronic form, whether an original or a copy, however reproduced, and each and everything

from which information can be processed or transcribed, and is defined to be synonymous in

meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34.

28.     "Document" and "documents" shall have the broadest possible meaning allowed

by Rule 34(a) of the Federal Rules of Civil Procedure and includes (without limitation) any

writing of any kind, including originals and all non-identical copies (whether different from the

original by reason of any notation made on such copies or otherwise). The terms "document" and

"document(s)" shall include ESI and shall also include, without limitation, the following items,

whether printed or reproduced by any process, or written or produced by hand or stored in

computer memory, magnetic or hard disk or other data storage medium, and whether or not

claimed to be privileged, confidential or otherwise excludable from discovery, namely, notes,

letters, correspondence, communications, e-mails, telegrams, memoranda, summaries or records

of telephone conversations, summaries or records of personal conversations or meetings, diaries,

reports, laboratory and research reports and notebooks, recorded experiments, charts, plans,

drawings, diagrams, schematic diagrams, HDL, Verilog, or other computer code, illustrations,

product descriptions, product analyses, requests for proposals, documents related to proposed or

actual product improvements or changes, users manuals or guides, installation guides or

manuals, technical descriptions or specifications, product repair manuals or guides, photographs,

video images, software flow charts or descriptions or specifications, product functional

descriptions or specifications, minutes or records of meetings, summaries of interviews, reports,

or investigations, opinions or reports of consultants, reports of patent searches, patent appraisals,

opinions of counsel, agreements, reports or summaries of negotiations, brochures, pamphlets,

advertisements, circulars, trade letters, press releases, drafts of documents, and all other materials

fixed in a tangible medium of whatever kind known to you or in your possession, custody, or

control.

29.     The term "information" means and refers to communications and documents as

those terms are defined herein.

30.     The term "standard(s)" means and refers to a technical specification promulgated

by an organization relating to a practice or product that is widely recognized or employed by

those in the industry.

31.     "Standard Setting Organization" or "SSO" means any organization that proposes

or implements standards for use in the telecommunications industry, including but not limited to

the International Telecommunications Union (ITU), Association of Radio Industries and

Businesses (ARIB), European Telecommunication Standards Institute (ETSI),

Telecommunications Technology Committee, Japan (TTC), Telecommunications Technology

Association, Korea (TTA), American National Standards Institute (ANSI), the Alliance for

Telecommunications Industry Solutions (ATIS), China Communications Standards Association

(CCSA), the Institute of Electrical and Electronic Engineers (IEEE), 3GPP or 3GPP2, involved

in issuing any standard that is listed in the Amended Complaint or is relied upon by Plaintiffs to

support its infringement contentions.

32.     "DSL Standards" has the same meaning as that term is defined in TQ Delta's

Fifth Set of Requests for Production of Documents and Things to ADTRAN.

33.     "ITU" refers to the International Telecommunication Union, including any sectors

thereof.

34.     The term "essential" when used in connection with a technology standard shall

have the meaning given to it by the relevant patent or intellectual property rights policy of the

standard setting organization responsible for that standard.

35.     "ITU IPR Policy" refers collectively and individually to the Common Patent

Policy for ITU-T/ITU-R/ISO/IEC and the Guidelines for Implementation of the Common Patent

Policy for ITU-T/ITU-R/ISO/IEC.

36.     "FRAND" means fair, reasonable, and non-discriminatory, as those terms are

used in the ITU IPR Policy.

37.     The term "RAND" means reasonable and non-discriminatory, as those terms are

used in the ITU IPR Policy.

38.     The term "computer" means any device, whether stationary, portable, removable

or otherwise, with electronic storage medium(-a) or capabilities, including a laptop computer,

desktop computer, workstation, hard drive, mobile phone, smart phone, jump drive, disc, tape

and personal digital assistant (or "PDA"), such as a Blackberry or Palm.

39.     "Infringe" and "infringement" means any and all types of patent infringement set

forth in 35 U.S.C. § 271, including but not limited to direct infringement, contributory

infringement, active inducement of infringement, literal infringement, and/or infringement under

the doctrine of equivalents.

40.     "Technical Documentation" means documents that relate to structure, electronic circuitry, operation, function, and/or features, including but not limited to user guides, user manuals, reference manuals, service manuals, product manuals, use cases, product descriptions, technician's guides, installation guides, technical manuals, technical specifications, functional specifications, software manuals, software design documents, source code, memory maps, block diagrams, theory of operation documents, road maps, and datasheets.

41.     "Effective Percentage Running Royalty Rate" means the royalty paid to Plaintiff by the licensee for sales of licensed products during a given period divided by the total revenue received by the licensee from sales of products licensed under the license agreement during the same period.  For example, if a licensee paid Plaintiff $5 in royalties for sales of licensed products during the third quarter of 2012 and the licensee received revenues of $500 from sales of licensed products during the third quarter of 2012, the Effective Percentage Running Royalty Rate for the third quarter of 2012 would be 1%.

42.     "Per-Unit Royalty" means the total royalties paid by the licensee for sales of licensed products during a given period divided by the number of units of licensed products sold by the licensee during the same period.  For example, if a licensee paid $500 in royalties during the third quarter of 2012 and the licensee sold 100 licensed products during the third quarter of 2012, the Per-Unit Royalty for the third quarter of 2012 would be $5.

43.     The term "source of information" includes any source of information not already within the definition of "document" or "thing," including but not limited to, intangible sources of information, such as the identification of witnesses or other persons, or other means of communication that comprise sources of information.

44.     The term "concerning" means identifying, referring to, concerning, regarding, evidencing, demonstrating, summarizing, reflecting, constituting, containing, embodying, mentioning, pertaining to, commenting upon, connected with, discussing, describing, analyzing, showing, comprising, or relating to in any relevant way to a particular subject, in whole or in part, either directly or indirectly.

45.     The singular of any term includes the plural of that term, and the plural includes the singular.

46.     The term "sale" means and refers to any exchange of goods, services or other property for value and includes transferring goods to another party on a consignment basis, regardless of whether title has passed.

## REQUEST FOR PRODUCTION

**Document Request No. 8:**

All documents sufficient to identify TQ Delta's current and past corporate organizational structures.

**Document Request No. 9:**

All documents sufficient to identify all past and present corporate officers, executives, members, and members of the board of directors of TQ Delta, including their names, positions, titles, duties, and reporting relationships.

**Document Request No. 10:**

All documents sufficient to identify TQ Delta's predecessors, past and present affiliates, including parent companies, subsidiaries, partnerships, joint ventures, divisions, and shareholders.

**Document Request No. 11:**

All minutes, memoranda, notes or other documents and things related to TQ Delta's Board of Director meetings that relate to the Defendants or to the Asserted Patents.

**Document Request No. 12**:

All documents and things produced by TQ Delta in any Related Litigation.

**Document Request No. 13**:

All transcripts of depositions taken of TQ Delta in any Related Litigation.

**Document Request No. 14**:

All court transcripts in any Related Litigation.

**Document Request No. 15**:

All expert reports served by TQ Delta in any Related Litigation.

**Document Request No. 16**:

All documents, agreements and things related to the ownership of the Asserted Patents or any interest in the Asserted Patents, including but not limited to any transfers of title, assignments or obligations to assign, joint ownership, liens, mortgage rights, conditional rights, or security interests, in whole or in part, to the extent such documents have not already been produced.

**Document Request No. 17**:

All documents and things that relate to the preparation or prosecution of the Asserted Patents, including but not limited to the prosecution history of the Asserted Patents and any invention disclosures or drafts of patent applications or portions of applications relating to the subject matter disclosed or claimed in the Asserted Patents.

**Document Request No. 18**:

All public documents and things that relate to the conception of any subject matter disclosed or claimed in the Asserted Patents, including without limitation, any engineering notebooks, laboratory notebooks, log books, record books, memoranda, design reviews, progress reports, technical reports, drawings, schematics, specifications, diagrams, computer records,

diaries, calendars, test results, invention disclosures, patent prosecution records, or any other documents or things which you contend corroborate the conception.

**Document Request No. 19:**

All public documents and things that relate to any actual reduction to practice of any subject matter disclosed or claimed in the Asserted Patents, including without limitation, any engineering notebooks, laboratory notebooks, log books, record books, memoranda, design reviews, progress reports, technical reports, drawings, schematics, specifications, diagrams, computer records, diaries, calendars, test results, invention disclosures, patent prosecution records, or any other documents or things which you contend corroborate any actual reduction to practice.

**Document Request No. 20:**

All public documents and things that relate to any constructive reduction to practice of any subject matter disclosed or claimed in the Asserted Patents, including without limitation, any engineering notebooks, laboratory notebooks, log books, records books, memoranda, design reviews, progress reports, technical reports, drawings, schematics, specifications, diagrams, computer records, diaries, calendars, test results, invention disclosures, patent prosecution records, or any other documents or things which you contend corroborate any constructive reduction to practice.

**Document Request No. 21:**

All public documents and things concerning the contribution, participation, or involvement of any person in the conception or reduction to practice of the alleged invention claimed in the Asserted Patents.

**Document Request No. 22:**

All documents and things that relate to the first disclosure by the inventors to any third party of any of the inventions described or claimed in the Asserted Patents.

**Document Request No. 23:**

All public documents and things that relate to the diligence of the alleged inventors of the Asserted Patents leading to the actual or constructive reduction to practice of the subject matter of each claim of the Asserted Patents, including, without limitation, any engineering notebooks, laboratory notebooks, log books, record books, memoranda, design reviews, progress reports, technical reports, drawings, schematics, specifications, diagrams, computer records diaries, calendars, test results, invention disclosures, patent prosecution records, or any other documents or things which You contend corroborate any act of diligence leading to the reduction to practice.

**Document Request No. 24:**

All documents and things that relate to the research, design, development, manufacture, assembly, testing, or operation of any device, prototype, product, or system, that allegedly embodies, falls within the scope of, or is practiced in accordance with the subject matter of any claim of the Asserted Patents, including, without limitation, any engineering notebooks, laboratory notebooks, log books, record books, memoranda, design reviews, progress reports, technical reports, drawings schematics, specifications, diagrams, computer records, diaries, calendars, or test results.

**Document Request No. 25:**

All engineering notebooks, laboratory notebooks, records, logs, and files generated at or by the direction of any of the named inventors of either of the Asserted Patents, and all engineering notebooks, laboratory notebooks, records, logs, and files in which any of the named inventor(s) of the Asserted Patents made any entries.

**Document Request No. 26:**

All engineering notebooks, laboratory notebooks, records, logs, and files relating to the subject matter of the Asserted Patents.

17

**Document Request No. 27:**

All publications, papers, presentations, or speeches authored, in whole or in part, by the named inventors of the Asserted Patents that relate to the subject matter of the Asserted Patents.

**Document Request No. 28:**

All documents and things that relate to any attempt by You to sell any object, system, machine, software or other thing embodying any invention claimed in the Asserted Patents, including, without limitation, demonstrations, testing, bug reports, correspondence, sales reports, sales forecast, strategic plans, budgeting documents, pricing policies, lost business reports, advertising or marketing materials, sales training materials, licensing policies, purchase orders, invoices, shipping orders, shipping logs, guarantees, and warranties.

**Document Request No. 29:**

All documents and things that relate to any attempt by You or Aware to explore the market or the technical or the commercial viability of any object, system, machine, software or other thing embodying any invention claimed in the Asserted Patents, including, without limitation, demonstrations, testing, bug reports, correspondence, sales reports, sales forecast, strategic plans, budgeting documents, pricing policies, lost business reports, advertising or marketing materials, sales training materials, licensing policies, purchase orders, invoices, shipping orders, shipping logs, guarantees, and warranties.

**Document Request No. 30:**

All investment prospectuses, business plans, sales or marketing plans, sales or marketing strategies, market projections, and other documents and things relating to any products, devices, or services relating to any subject matter disclosed or claimed in the Asserted Patents.

**Document Request No. 31:**

All documents and things relating to any product or service offered by You that embodies the subject matter of any claim of the Asserted Patents or that is marked with (or have in the past been marked with) the Asserted Patents including, but not limited to specifications, operation manuals, maintenance manuals, service manuals, user manuals, or schematics.

**Document Request No. 32:**

All documents and things relating to any product or service offered by Your licensee(s) that embodies the subject matter of any claim of the Asserted Patents or that is marked with (or have in the past been marked with) the Asserted Patents including, but not limited to specifications, operation manuals, maintenance manuals, service manuals, user manuals, or schematics.

**Document Request No. 33:**

All documents and things relating to any effort, instructions, or steps taken by You to insure Your licensee(s) marked any product that embodies the subject matter of any claim of the Asserted Patents, including, but not limited to specifications, operation manuals, maintenance manuals, service manuals, user manuals, or schematics.

**Document Request No. 34:**

All documents or things relating to any communication by You or any predecessor-in-interest to any licensee regarding its failure to mark any product that embodies the subject matter of any claim of the Asserted Patents, including, but not limited to specifications, operation manuals, maintenance manuals, service manuals, user manuals, or schematics.

**Document Request No. 35:**

All documents and things that relate to the first sale, first offer for sale, first disclosure, first demonstration, first promotion, first license, first manufacture of, or first use of any device or system or method which You believe is covered by any claim of the Asserted Patents.

**Document Request No. 36:**

All documents and things that relate to TQ Delta's basis for the priority dates of the Asserted Patents.

**Document Request No. 37:**

All documents and things relating to any search, investigation, analysis, review, opinion or study relating to the scope, novelty, non-obviousness, patentability, validity, enforceability, and/or infringement of any claim of the Asserted Patents by any party.

**Document Request No. 38:**

All non-privileged documents, communications and things pertaining to the state of the art at any time prior to the filing date of the Asserted Patents, including without limitation documents dated after such date that refer to the state of the art at any time prior to such date.

**Document Request No. 39:**

All documents, communications and things relating to the level of ordinary skill in the art to which the subject matter of the Asserted Patents pertain, including without limitation, all documents, communications and things that TQ Delta intends to rely upon to establish the level of ordinary skill in the art in either this action or in any Related Litigation.

**Document Request No. 40:**

All public documents and things comprising prior art (including, without limitation, any and all material prior art patents, publications and/or literature or other documents) to the Asserted Patents.

**Document Request No. 41:**

All documents and things which You contend may relate to the interpretation of any term in any claim of the Asserted Patents.

**Document Request No. 42:**

All documents and things that relate to the scope of the art and/or the level of ordinary skill in the art, as the term "art" is used in 35 U.S.C. § 103, of the subject matter described and claimed in the Asserted Patents.

**Document Request No. 43:**

All documents and things relating to any differences, as term "differences" is used in 35 U.S.C. § 103, between the prior art and the subject matter described and claimed in the Asserted Patents.

**Document Request No. 44:**

All documents and things relating to any motivation to combine any prior art teachings to yield the subject matter disclosed or claimed in the Asserted Patents.

**Document Request No. 45:**

All documents and things that relate to, support, demonstrate, or evidence the non-obviousness of any subject matter disclosed or claimed in the Asserted Patents, including but not limited to long-felt need, failures of others, unexpected results or advantages, existing licenses, copying, commercial success, and acceptance in the industry.

**Document Request No. 46:**

To the extent not produced in response to the preceding requests, all documents and things relating to any alleged "long-felt but unmet need" as described in *Graham v. John Deere Co. of Kansas City,* 383 U.S. 1 (1966) and its progeny, for the subject matter described and claimed in the Asserted Patents including, without limitation, all documents and things that allegedly establish that the claimed invention satisfied that alleged long-felt but unmet need.

**Document Request No. 47**:

To the extent not produced in response to the preceding requests, all documents and things relating to any alleged "commercial success" as described in *Graham v. John Deere* and its progeny, for the subject matter described and claimed in the Asserted Patents including, without limitation, all documents and things identifying the product(s) alleged to be commercially successful, all sales records for the period of time that such sales were made (including, for example, monthly and year-end sales by customer, by region, and by product), all documents and things allegedly purporting to establish nexus between the claimed invention and the "commercial success," and all documents and things necessary to establish that the claims "read on," cover, or otherwise encompass such products(s).

**Document Request No. 48**:

To the extent not produced in response to the preceding requests, all documents and things relating to any alleged "failure of others" as described in *Graham v. John Deere* and its progeny, to arrive at the subject matter described and claimed in the Asserted Patents, including without limitation, all documents that reflect the alleged failures and all documents that allegedly establish that the claimed subject matter solved the problem that others failed to solve.

**Document Request No. 49**:

To the extent not produced in response to the immediately preceding requests, all documents and things relating to any alleged "secondary considerations" of the type described in *Graham v. John Deere* and its progeny, for the subject matter described and claimed in the Asserted Patents.

**Document Request No. 50:**

All documents and things relating to the best mode of practicing the subject matter of any claim of the Asserted Patents contemplated by any of the named inventors at the time of filing any patent application that led to or resulted in the Asserted Patents.

**Document Request No. 51:**

All documents and things relating to each mode of practicing the subject matter of each claim of the Asserted Patents.

**Document Request No. 52:**

All documents and things that relate to or describe Your intellectual property licensing policies.

**Document Request No. 53:**

All documents and things that relate to any offer of, request for, or expression of interest in a license and/or immunity from suit under the Asserted Patents.

**Document Request No. 54:**

To the extent not already produced, all documents and things relating to contracts, understandings and/or agreements between you and any other person relating to the subject matter of the Asserted Patents.

**Document Request No. 55:**

All agreements and drafts of agreements entered into between TQ Delta and any nonparty relating, in whole or in part, to the Asserted Patents.

**Document Request No. 56:**

All communications relating to agreements and drafts of agreements entered into between TQ Delta and any nonparty relating to, in whole or in part, the Asserted Patents.

**Document Request No. 57**:

To the extent not already produced, all agreements and drafts of agreements entered into between TQ Delta and Aware.

**Document Request No. 58**:

All communications relating to agreements and drafts of agreements entered into between TQ Delta and Aware.

**Document Request No. 59**:

All agreements and drafts of agreements entered into between TQ Delta and any inventor of the Asserted Patents.

**Document Request No. 60**:

All communications relating to agreements and drafts of agreements entered into between TQ Delta and any inventor of the Asserted Patents.

**Document Request No. 61**:

All patents held, owned, or licensed by You relating to the subject matter of the Asserted Patents.

**Document Request No. 62**:

All documents and things that relate to the practices of any third party related to marking with respect to the Asserted Patents.

**Document Request No. 63**:

All documents and things that relate to any product made, sold, or used by Defendants that TQ Delta believes may infringe the Asserted Patents including, but not limited to, any examination or investigation of the products and any documents and things that formed all or any part of the factual basis for the alleged infringement of claims asserted in this lawsuit.

24

**Document Request No. 64**:

All documents and things relating to the Defendants.

**Document Request No. 65**:

All documents and things relating to the purchase of any product of Defendants, including any Accused Product, by You or on your behalf.

**Document Request No. 66**:

All documents and things relating to Your earliest knowledge or awareness of each of the activities, products, methods, or processes of Defendants that you contend have infringed or currently infringe, have constituted or currently constitute contributory infringement of, or have induced or currently are inducing others to infringe, any claim of the Asserted Patents.

**Document Request No. 67**:

All documents and things relating to any determination, assertion, conclusion, by TQ Delta that any of Defendants' products and/or services infringe any claim of the Asserted Patents under any of 35 U.S.C. §§ 271 (a), (b), or (c).

**Document Request No. 68**:

All documents and things relating to any notification by TQ Delta to Defendants of infringement or alleged infringement of the Asserted Patents.

**Document Request No. 69**:

All documents and things relating to any contention by TQ Delta that Defendants' alleged infringement is willful.

**Document Request No. 70**:

All documents and things relating to any tests, measurements, evaluations, studies, analysis or surveys of or that relate to any product or services of Defendants including without limitation as deployed or used by any defendant in any Related Litigation.

25

**<u>Document Request No. 71</u>**:

All documents and things that relate to TQ Delta's knowledge, understanding, belief, perception, or apprehension of alleged or potential infringement by Defendants of any claim of the Asserted Patents.

**<u>Document Request No. 72</u>**:

All documents and things that relate to, or contradict, each of Your claims in this action, including without limitation as set forth in the Complaint filed on July 17, 2014, as amended.

**<u>Document Request No. 73</u>**:

To the extent not already produced, all documents and things that relate to the Asserted Patents.

**<u>Document Request No. 74</u>**:

All documents and things relating to any determination, assertion, notification, or conclusion by TQ Delta, regarding any infringement or alleged infringement of the Asserted Patents by any person.

**<u>Document Request No. 75</u>**:

All documents and things relating to any determination, assertion, notification, or conclusion by TQ Delta, regarding any infringement or alleged infringement of the Asserted Patents by any defendant in any Related Litigation.

**<u>Document Request No. 76</u>**:

All documents and things related to any communication regarding this lawsuit, or the anticipated commencement of this lawsuit, to persons not employed by TQ Delta at the time of the communication.

**Document Request No. 77:**

All documents and things related to any communication regarding this lawsuit, or the anticipated commencement of this lawsuit, to persons not employed by TQ Delta at the time of the communication.

**Document Request No. 78:**

All documents and things related to TQ Delta's decision to bring its Claims as set forth in the Complaint, including but not limited to, all documents and things relating to any analysis of the likelihood of success in asserting a patent infringement claim against Defendants or any other party based on the Asserted Patents.

**Document Request No. 79:**

All documents and things related to TQ Delta's decision to bring related litigation, including but not limited to, all documents and things relating to any analysis of the likelihood of success in asserting a patent infringement claim against Defendants or any other party based on the Asserted Patents

**Document Request No. 80:**

All documents and things that relate to any search, investigation, review, opinion or study relating to the patentability, validity, enforceability, or infringement of the Asserted Patents.

**Document Request No. 81:**

All documents and things that relate to any search, investigation, review, opinion or study relating to the patentability, validity, enforceability, or infringement of the Asserted Patents.

**Document Request No. 82:**

All documents and things that relate to the settlement of any claim of infringement of the Asserted Patents.

**Document Request No. 83:**

All documents and things that relate to TQ Delta's consultation with any other person with respect to the Asserted Patents prior to filing the complaint in any related litigation.

**Document Request No. 84:**

All documents and things which support any of Your contentions, positions, or assertions made or to be made concerning YOUR damages theories in this litigation, including, without limitation, contentions, positions, or assertions made or to be made concerning the theories of lost profits, reasonable royalty, established royalty, lost sales, and/or reduced or depressed pricing, and/or any other basis for alleged compensation under 35 U.S.C. § 284.

**Document Request No. 85:**

To the extent not produced in response to the immediately preceding requests, all documents and things concerning any factors listed in *Georgia-Pacific Corp. v. United States Plywood Corp.,* 318 F. Supp. 1116 (S.D.N.Y. 1970) relating to the determination of reasonable royalty, including without limitation all documents concerning:

(a) any royalties received pursuant to any licenses or sublicenses of the Asserted Patents;

(b) any royalty rates paid by companies in the United States for the use of patents comparable to the Asserted Patents;

(c) Your policies regarding licensing of any of your patents or patent applications;

(d) Your competition in the United States;

(e) the effect of any of Your products covered by the Asserted Patents in generating sales of products other than the products covered by the Asserted Patents;

(f) the portion of the realizable profit that could be credited to the claimed subject matter covered by the Asserted Patents, as distinguished from non-patented elements; and/or

(g)   any support for any contention regarding the hypothetical negotiation as described in *Georgia-Pacific.*

**Document Request No. 86:**

To the extent not produced in response to any of the preceding requests, all documents and things relating to any adequate compensation to which You claim You are entitled under 35 U.S.C. § 284 with respect to the subject matter disclosed and claimed in the Asserted Patents.

**Document Request No. 87:**

All valuations and appraisal reports relating to the valuation of any intellectual property assets owned by You, including but not limited to the Asserted Patents.

**Document Request No. 88:**

All documents and things relating to the determination of or the calculation of any damages associated with any nonparties associated with infringement of the Asserted Patents.

**Document Request No. 89:**

All documents and things identified, or otherwise requested to be identified, in any interrogatory served by Defendants or any response or supplemental response by You to any interrogatory served by Defendants in this action.

**Document Request No. 90:**

All documents and things considered, used, or relied upon in the preparation of any response or supplemental response to any interrogatory served by Defendants in this action.

**Document Request No. 91:**

All documents and things sufficient to identify and describe Your current and past policies and procedures for generating, maintaining, retaining, and disposing documents and things, including, without limitation, procedures and policies regarding patent application files.

**Document Request No. 92**:

All documents and things reflecting any exception to Your current and past policies and procedures for generating, maintaining, retaining, and disposing of documents and things, including, without limitation, procedures and policies regarding patent application files.

**Document Request No. 93**:

A copy of each document or communication provided to any Standard Setting Organization.

**Document Request No. 94**:

To the extent not produced in response to Request No. 84, a copy of any other document that You or Aware submitted to the ITU-T that relates to any of the Asserted Patents.

**Document Request No. 95**:

Documents sufficient to show which of the Asserted Patents is or are subject to which documents produced in response to Request No. 86 or Interrogatory No.4.

**Document Request No. 96**:

All agreements and drafts of agreements entered into between Aware and Lantiq.

**Document Request No. 97**:

All documents and communication regarding the agreements entered into between Aware and Lantiq.

**Document Request No. 98**:

All documents and communication regarding FRAND rates charged to other licensees for licenses to Standards Essential Patents.

**Document Request No. 99:**

To the extent not produced in response to any of the preceding requests, all documents and communication regarding the agreements entered into between Aware and other licensees for the Asserted Patents.

**Document Request No. 100:**

Documents sufficient to show the relative strength of the Asserted Patents as determined by TQ Delta and/or Aware.

**Document Request No. 101:**

All documents that identify any relation between consumer demand and the functions or features of the Accused Products that TQ Delta contends are covered by the Asserted Claims.

**Document Request No. 102:**

All documents evidencing any survey, market study, or any other analysis identifying any and all features that affect consumer demand or buying decisions with respect to products having DSL functionality, including but not limited to the Accused Products.

**Document Request No. 103:**

All documents evidencing any study, analysis, or evaluation of the number of patents that are essential to the DSL Standards.

**Document Request No. 104:**

All documents evidencing any study, analysis, or evaluation of the value of the Asserted Patents.

**Document Request No. 105:**

All documents evidencing any study, analysis, or evaluation of the value of the Asserted Patents' incorporation into the DSL Standards.

**Document Request No. 106:**

All documents evidencing any study, analysis, or evaluation of the contribution of any one or more of the Asserted Patents to the technical capabilities of the DSL Standards.

**Document Request No. 107:**

All documents evidencing any study, analysis, or evaluation of the importance of the Asserted Patents to the DSL Standards.

**Document Request No. 108:**

All documents evidencing any study, analysis, or evaluation of any patents or patent portfolio comparable to the Asserted Patents.

**Document Request No. 109:**

All documents evidencing any study, analysis, or evaluation of any alternatives to the Asserted Patents that were considered by the ITU-T and could have been adopted into the DSL Standards.

**Document Request No. 110:**

All communications with or between TQ Delta and any investment firms, potential or actual investors, and intellectual property monetization entities (including but not limited to Techquity, LP, TQCAP, LLC, and Techquity Capital Management, LLC) regarding the value of TQ Delta's intellectual property, including the Asserted Patents.

**Document Request No. 111:**

All agreements related in any way to TQ Delta's financing of the present litigation.

**Document Request No. 112:**

All documents identifying any person with a financial interest in this litigation or its outcome, including direct or indirect interests, or monetary or non-monetary interests.

Dated: July 21, 2017

/s/  Kenneth L. Dorsney
Kenneth L. Dorsney (#3726)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
kdorsney@morrisjames.com

Paul M. Sykes
John E. Goodman
David W. Holt
*(Admitted Pro hac vice)*
BRADLEY ARANT BOULT CUMMINGS LLP
1819 5th Avenue North
(205) 521-8000
psykes@babc.com
jgoodman@babc.com
dholt@babc.com

*Attorneys for ADTRAN, Inc.*

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TQ DELTA, LLC, | |
| Plaintiff | |
| v. | C.A. No. 14-cv-954-RGA |
| ADTRAN, INC., | |
| Defendant. | |
| ADRAN, INC., | |
| Plaintiff and Counterclaim Defendant, | |
| v. | C.A. No. 15-cv-121-RGA |
| DELTA, LLC, | |
| Defendant and Counterclaim Plaintiff. | |

**TQ DELTA, LLC'S RESPONSES TO ADTRAN'S SECOND
SET OF REQUESTS FOR PRODUCTION TO TQ DELTA, LLC**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff TQ Delta, LLC ("TQ Delta") by and through its undersigned attorneys, hereby responds to Defendant ADTRAN, Inc.'s ("ADTRAN")'s First Set of Requests For Production To TQ Delta, LLC ("ADTRAN's Requests"). These responses are based upon the best information presently available to TQ Delta, but are made without prejudice to or waiver of any right of TQ Delta to make additional or modified responses should better or further information and belief subsequently become available to TQ Delta.

## GENERAL OBJECTIONS AND QUALIFICATIONS

The following General Objections apply to all of ADTRAN's Requests. To the extent that specific General Objections are cited in response to a specific request, those specific citations should not be construed as a waiver of any other General Objection.

1.      TQ Delta objects to each of ADTRAN's document requests and definitions to the extent that it infers or places a duty to provide discovery or a burden to supplement beyond that provided in the Federal Rules of Civil Procedure.

2.      Any responses made by TQ Delta to ADTRAN's Requests are made without waiver and with preservation of:

(a) all questions as to competency, relevancy, materiality, privilege, and admissibility of the responses and the subject matter thereof of evidence for any purpose and in any further proceeding in this action (including the trial of this action) and in any other action or matter;

(b) the right to object to the use of such responses or the subject matter thereof, on any ground in any further proceeding in this action (including the trial of this action) and in any other action or matter;

(c) the right to object on any ground at any time to a demand or request for further response to these or any other discovery requests or proceedings involved or related to the subject matter of the information/documents provided or the discovery to which these responses are provided; and

(d) the right at any time to review, correct, supplement or clarify any of the responses contained herein or any of TQ Delta's production.

3.      TQ Delta has not yet completed its investigation of the facts pertaining to this

2

action and discovery is ongoing. All responses to the following requests are based on information presently known to TQ Delta after a reasonable effort to locate information called for by these requests. Accordingly, all responses are given without prejudice to TQ Delta's right to produce evidence based on any additional information that may develop or come to TQ Delta's attention at a later time. In addition, TQ Delta's objections as set forth herein are made without prejudice to TQ Delta's right to assert any additional or supplemental objections should TQ Delta discover additional grounds for such objections.

4.      TQ Delta objects to each request and definition to the extent it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. TQ Delta also objects to each request and definition to the extent that it is overly broad, unduly burdensome, indefinite, vague or ambiguous in nature and to the extent it seeks production of documents and information produced by Defendant.

5.      TQ Delta objects to each request and definition to the extent it seeks information protected by any applicable privilege, including without limitation the attorney-client privilege, work product immunity doctrine, or common interest privilege. TQ Delta objects to the introduction into evidence or use of any privileged information that is revealed or produced inadvertently.

6.      By answering ADTRAN's Requests, TQ Delta does not waive any applicable privilege or immunity.

7.      TQ Delta objects to each request and definition to the extent that it seeks information that is proprietary to third parties and subject to a non-disclosure agreement or protective order.

8.      TQ Delta objects to each request and definition to the extent it seeks documents

3

beyond representative examples of documents produced en masse or to the extent it seeks more than a single copy of the same document.

9.      TQ Delta objects to each request and definition to the extent it seeks documents beyond the possession, custody, or control of TQ Delta.

10.     TQ Delta objects to each request which seeks the production of "all" documents on grounds that such a request is overly broad, to the extent such discovery is unreasonably cumulative or duplicative, and to the extent such a request imposes an unduly burdensome or expensive obligation on TQ Delta to search for, gather, and produce documents whose relevancy, if any, is far outweighed by the cost and burden on TQ Delta.

11.     TQ Delta objects to each request and definition to the extent that it calls for a legal conclusion. Production by TQ Delta of a document shall not be construed to be an admission by TQ Delta that such document satisfies any particular legal characterization made by these requests.

12.     TQ Delta objects to each request and definition to the extent that it requests information unbounded in time.

13.     TQ Delta's General Objections to requests as stated herein are hereby incorporated by reference to each and every response to each and every request for documents, and shall not be repeated in every response.

14.     TQ Delta's statement that it "will produce" documents should not be construed as a statement or concession that such documents do in fact exist. The production of documents or disclosure of information should not be deemed a waiver of any objection TQ Delta may have with respect to whether any such documents or information is ultimately relevant or admissible. TQ Delta reserves the right to supplement these responses during the course of discovery. No

4

incidental or implied admissions are intended by the responses contained herein.

15.     TQ Delta objects to each request and definition to the extent that it requires TQ Delta to produce documents and things that comprise the trade secrets or confidential business information of TQ Delta. Subject to TQ Delta's objections, such information will be provided subject to the Protective Order.

16.     TQ Delta objects to the definition of the term "Standard" as overly broad to the extent it encompasses standards that are not at issue in this case. TQ Delta's responses shall be made with the understanding that the term "Standard" means only the standards referenced in TQ Delta's Initial Claim Charts.

17.     TQ Delta objects to each request and definition to the extent that it calls for publicly-available information, including but not limited to information or papers already exchanged between the parties or filed in connection with this proceeding.

18.     TQ Delta objects to ADTRAN's Requests to the extent that they are framed in terms that ADTRAN has not specifically defined or fail to identify with reasonable particularity the information requested. TQ Delta may not interpret the terms used by ADTRAN in the manner that ADTRAN intends. Thus, TQ Delta may not realize or understand what specific information ADTRAN believes would fall within the scope of the request, and TQ Delta will not speculate as to what meaning ADTRAN attributes to such terms. In responding to ADTRAN's Requests, TQ Delta has interpreted the requests as utilizing commonplace meanings for terms included therein. To the extent the requests purport to seek information or documents and things other than as interpreted by TQ Delta, TQ Delta objects to such requests as being vague, ambiguous, and overbroad.

19.     TQ Delta objects to ADTRAN's Requests to the extent that they prematurely seek

5

information that was not contemplated by the Court's Second Scheduling Order, including for example non-summary damages-related information or validity-related information.

20.     TQ Delta objects to ADTRAN's Requests to the extent that they seek email discovery. TQ Delta agrees to meet and confer on the issue of an appropriate scope and protocol for the same.

21.     TQ Delta objects to the definition of the term "Related Litigation" as being overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. By way of example, ADTRAN's definition of the term "Related Litigation" encompasses matters relating to other parties, patents, and products, not related to this action. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to the foregoing general objections and qualifications, TQ Delta answers or otherwise objects to ADTRAN's Requests as follows.

## **RESPONSE TO REQUESTS FOR DOCUMENTS AND THINGS**

**Document Request No. 8:**

All documents sufficient to identify TQ Delta's current and past corporate organizational structures.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta further objects to this request as not proportional

to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

In view of the foregoing, TQ Delta will not search for and/or produce documents responsive to this request, but TQ Delta is willing to meet and confer with Defendant to determine if there is some discrete, reasonable, relevant set of documents that would satisfy this request.

## Document Request No. 9:

All documents sufficient to identify all past and present corporate officers, executives, members, and members of the board of directors of TQ Delta, including their names, positions, titles, duties, and reporting relationships.

## Response:

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta further objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

In view of the foregoing, TQ Delta will not search for and/or produce documents responsive to this request, but TQ Delta is willing to meet and confer with Defendant to determine if there is some discrete, reasonable, relevant set of documents that would satisfy this request.

**Document Request No. 10:**

All documents sufficient to identify TQ Delta's predecessors, past and present affiliates, including parent companies, subsidiaries, partnerships, joint ventures, divisions, and shareholders.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta further objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

In view of the foregoing, TQ Delta will not search for and/or produce documents responsive to this request.

**Document Request No. 11:**

All minutes, memoranda, notes or other documents and things related to TQ Delta's Board of Director meetings that relate to the Defendants or to the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta further objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

In view of the foregoing, TQ Delta will not search for and/or produce documents responsive to this request, but TQ Delta is willing to meet and confer with Defendant to determine if there is some discrete, reasonable, relevant set of documents that would satisfy this request.

**Document Request No. 12:**

All documents and things produced by TQ Delta in any Related Litigation.

**Response:**

TQ Delta further objects to this document request as vague (e.g. "related litigation"), ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. By way of example, this request encompasses matters relating to other patents and products, not related to this action. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

In view of the foregoing, TQ Delta will not search for and/or produce documents responsive to this request, but TQ Delta is willing to meet and confer with Defendant to determine if there is some discrete, reasonable, relevant set of documents that would satisfy this request.

**Document Request No. 13:**

All transcripts of depositions taken of TQ Delta in any Related Litigation.

**Response:**

TQ Delta further objects to this document request as vague (e.g. "related litigation), ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent

it seeks documents and things not relevant to any claim or defense. By way of example, this request encompasses matters relating to other patents and products not related to this litigation. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

In view of the foregoing, TQ Delta will not search for and/or produce documents responsive to this request, but TQ Delta is willing to meet and confer with Defendant to determine if there is some discrete, reasonable, relevant set of documents that would satisfy this request.

**Document Request No. 14:**

All court transcripts in any Related Litigation.

**Response:**

TQ Delta further objects to this document request as vague  (e.g. "related litigation), ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. By way of example, this request encompasses matters relating to other patents and products not related to this litigation. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request to the extent it seeks documents which are publicly available and readily available to Defendant.

TQ Delta will not search for and/or produce documents responsive to this request. TQ Delta is willing to meet and confer with Defendant to determine if there is some discrete,

10

reasonable, relevant set of documents that Defendant is seeking insofar as the documents sought concern the patents at issue in this action.

**Document Request No. 15:**

All expert reports served by TQ Delta in any Related Litigation.

**Response:**

TQ Delta further objects to this document request as vague (e.g. "related litigation), ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. By way of example, this document request relates to expert reports concerning other patents, other actions, and/or other parties not related to this action. TQ Delta objects to this request as not proportional to the needs of the case. By way of further example, the requested documents would implicate matters of third party confidentiality.  TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request to the extent it seeks documents which are publicly available and readily available to Defendant.

In view of the foregoing, TQ Delta will not search for and/or produce documents responsive to this request.

**Document Request No. 16:**

All documents, agreements and things related to the ownership of the Asserted Patents or any interest in the Asserted Patents, including but not limited to any transfers of title, assignments or obligations to assign, joint ownership, liens, mortgage rights, conditional rights, or security interests, in whole or in part, to the extent such documents have not already been produced.

**Response:**

11

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general and specific objections, TQ Delta will produce non-privileged, non-immune responsive documents sufficient to show its ownership of the patents asserted in this action.

**Document Request No. 17:**

All documents and things that relate to the preparation or prosecution of the Asserted Patents, including but not limited to the prosecution history of the Asserted Patents and any invention disclosures or drafts of patent applications or portions of applications relating to the subject matter disclosed or claimed in the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome (e.g. "relating to the subject matter disclosed or claimed in the Asserted Patents"). TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request to the extent it seeks documents which are publicly available and readily available to Defendant.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents involving the prosecution history of the patents asserted in this action, if any, to the extent located after a reasonable search.

**Document Request No. 18:**

All public documents and things that relate to the conception of any subject matter disclosed or claimed in the Asserted Patents, including without limitation, any engineering notebooks, laboratory notebooks, log books, record books, memoranda, design reviews, progress reports, technical reports, drawings, schematics, specifications, diagrams, computer records, diaries, calendars, test results, invention disclosures, patent prosecution records, or any other documents or things which you contend corroborate the conception.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome (e.g. "of any subject matter disclosed or claimed in the Asserted Patents"). TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relating to the conception of the claimed inventions of the patents asserted in this action, if any, to the extent located after a reasonable search.

**Document Request No. 19:**

All public documents and things that relate to any actual reduction to practice of any subject matter disclosed or claimed in the Asserted Patents, including without limitation, any engineering notebooks, laboratory notebooks, log books, record books, memoranda, design reviews, progress reports, technical reports, drawings, schematics, specifications, diagrams,

13

computer records, diaries, calendars, test results, invention disclosures, patent prosecution records, or any other documents or things which you contend corroborate any actual reduction to practice.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome (e.g. "of any subject matter disclosed or claimed in the Asserted Patents"). TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relating to the reduction to practice of the claimed inventions of the patents asserted in this action, if any, to the extent located after a reasonable search.

**Document Request No. 20:**

All public documents and things that relate to any constructive reduction to practice of any subject matter disclosed or claimed in the Asserted Patents, including without limitation, any engineering notebooks, laboratory notebooks, log books, records books, memoranda, design reviews, progress reports, technical reports, drawings, schematics, specifications, diagrams, computer records, diaries, calendars, test results, invention disclosures, patent prosecution records, or any other documents or things which you contend corroborate any constructive reduction to practice.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome (e.g. "of any subject matter disclosed or claimed in the Asserted Patents"). TQ Delta objects to this request to the extent it seeks documents and things not relevant to any

claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request to the extent it seeks documents which are outside the possession, custody, or control of TQ Delta.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relating to the actual or constructive reduction to practice of the claimed inventions of the patents asserted in this action, if any, to the extent located after a reasonable search.

## Document Request No. 21:

All public documents and things concerning the contribution, participation, or involvement of any person in the conception or reduction to practice of the alleged invention claimed in the Asserted Patents.

## Response:

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request to the extent it seeks documents which are publicly available and readily available to Defendant.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relating to the conception and/or reduction to

practice of the claimed inventions of the patents asserted in this action, if any, to the extent located after a reasonable search.

**Document Request No. 22:**

All documents and things that relate to the first disclosure by the inventors to any third party of any of the inventions described or claimed in the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request to the extent it seeks documents which are outside the possession, custody, or control of TQ Delta.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relating to any first disclosure by the inventors to any third party of the claimed inventions of the patents asserted in this action, if any, to the extent located after a reasonable search.

**Document Request No. 23:**

All public documents and things that relate to the diligence of the alleged inventors of the Asserted Patents leading to the actual or constructive reduction to practice of the subject matter of each claim of the Asserted Patents, including, without limitation, any engineering notebooks, laboratory notebooks, log books, record books, memoranda, design reviews, progress reports, technical reports, drawings, schematics, specifications, diagrams, computer records diaries, calendars, test results, invention disclosures, patent prosecution records, or any other documents or things which You contend corroborate any act of diligence leading to the reduction to practice.

16

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request to the extent it seeks documents which are publicly available and readily available to Defendant. TQ Delta further objects to this request to the extent it seeks documents which are outside the possession, custody, or control of TQ Delta.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relating to the diligence leading to the reduction to practice of the claimed inventions of the patents asserted in this action, if any, to the extent located after a reasonable search.

**Document Request No. 24:**

All documents and things that relate to the research, design, development, manufacture, assembly, testing, or operation of any device, prototype, product, or system, that allegedly embodies, falls within the scope of, or is practiced in accordance with the subject matter of any claim of the Asserted Patents, including, without limitation, any engineering notebooks, laboratory notebooks, log books, record books, memoranda, design reviews, progress reports, technical reports, drawings schematics, specifications, diagrams, computer records, diaries, calendars, or test results.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. By way of example, this request imposes a burden to

produce information concerning non-accused products and irrelevant development efforts. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

In view of the foregoing, TQ Delta will not search for and/or produce documents responsive to this request, but TQ Delta is willing to meet and confer with Defendant to determine if there is some discrete, reasonable, relevant set of documents that would satisfy this request.

**Document Request No. 25:**

All engineering notebooks, laboratory notebooks, records, logs, and files generated at or by the direction of any of the named inventors of either of the Asserted Patents, and all engineering notebooks, laboratory notebooks, records, logs, and files in which any of the named inventor(s) of the Asserted Patents made any entries.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request to the extent it seeks documents which are outside the possession, custody, or control of TQ Delta.

Subject to and without waiver of its general or specific objections, TQ Delta will produce reasonably responsive, non-privileged, non-immune responsive documents concerning the

claimed inventions of the patents asserted in this action, if any, to the extent located after a reasonable search.

**Document Request No. 26:**

All engineering notebooks, laboratory notebooks, records, logs, and files relating to the subject matter of the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request to the extent it seeks documents which are outside the possession, custody, or control of TQ Delta.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relating to the conception and/or reduction to practice of the claimed inventions of the patents asserted in this action, if any, to the extent located after a reasonable search

**Document Request No. 27:**

All publications, papers, presentations, or speeches authored, in whole or in part, by the named inventors of the Asserted Patents that relate to the subject matter of the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things

not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request to the extent it seeks documents which are outside the possession, custody, or control of TQ Delta.

In view of the foregoing, TQ Delta will not search for and/or produce documents responsive to this request, but TQ Delta is willing to meet and confer with Defendant to determine if there is some discrete, reasonable, relevant set of documents that would satisfy this request.

## Document Request No. 28:

All documents and things that relate to any attempt by You to sell any object, system, machine, software or other thing embodying any invention claimed in the Asserted Patents, including, without limitation, demonstrations, testing, bug reports, correspondence, sales reports, sales forecast, strategic plans, budgeting documents, pricing policies, lost business reports, advertising or marketing materials, sales training materials, licensing policies, purchase orders, invoices, shipping orders, shipping logs, guarantees, and warranties.

## Response:

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request to the extent it seeks documents which are outside the possession, custody, or control of TQ Delta.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relating to TQ Delta's efforts to sell anything embodying the claimed inventions of the patents asserted in this action, if any, to the extent located after a reasonable search.

**Document Request No. 29:**

All documents and things that relate to any attempt by You or Aware to explore the market or the technical or the commercial viability of any object, system, machine, software or other thing embodying any invention claimed in the Asserted Patents, including, without limitation, demonstrations, testing, bug reports, correspondence, sales reports, sales forecast, strategic plans, budgeting documents, pricing policies, lost business reports, advertising or marketing materials, sales training materials, licensing policies, purchase orders, invoices, shipping orders, shipping logs, guarantees, and warranties.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. By way of example, this request encompasses matters having nothing to do with the products accused in this case. TQ Delta further objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request to the extent it seeks documents which are outside the possession, custody, or control of TQ Delta.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relating to TQ Delta's efforts to assess the market for claimed inventions of the patents asserted in this action relative to possible its commercialization efforts, if any, to the extent located after a reasonable search.

21

**Document Request No. 30:**

All investment prospectuses, business plans, sales or marketing plans, sales or marketing strategies, market projections, and other documents and things relating to any products, devices, or services relating to any subject matter disclosed or claimed in the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta specifically objects to "any subject matter disclosed" as being overly broad and ambiguous. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. By way of example, this request encompasses matters having nothing to do with the products accused in this case. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

In view of the foregoing, TQ Delta will not search for and/or produce documents responsive to this request, but TQ Delta is willing to meet and confer with Defendant to determine if there is some discrete, reasonable, relevant set of documents that would satisfy this request.

**Document Request No. 31:**

All documents and things relating to any product or service offered by You that embodies the subject matter of any claim of the Asserted Patents or that is marked with (or have in the past been marked with) the Asserted Patents including, but not limited to specifications, operation manuals, maintenance manuals, service manuals, user manuals, or schematics.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things

22

not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents sufficient to show the marking of the asserted patents for the time period prior to actual notice of infringement to  ADTRAN, if any, to the extent located after a reasonable search.

### Document Request No. 32:

All documents and things relating to any product or service offered by Your licensee(s) that embodies the subject matter of any claim of the Asserted Patents or that is marked with (or have in the past been marked with) the Asserted Patents including, but not limited to specifications, operation manuals, maintenance manuals, service manuals, user manuals, or schematics.

### Response:

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request to the extent it seeks documents which are outside the possession, custody, or control of TQ Delta.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents sufficient to show the requested information

23

relating to the claimed inventions for the time period prior to actual notice of infringement to ADTRAN, if any, to the extent located after a reasonable search.

**Document Request No. 33:**

All documents and things relating to any effort, instructions, or steps taken by You to insure Your licensee(s) marked any product that embodies the subject matter of any claim of the Asserted Patents, including, but not limited to specifications, operation manuals, maintenance manuals, service manuals, user manuals, or schematics.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents sufficient to show efforts by TQ Delta's efforts to ensure patent marking of the patents asserted in this action, for the time period prior to actual notice of infringement to Defendant, to the extent located after a reasonable search.

**Document Request No. 34:**

All documents or things relating to any communication by You or any predecessor-in-interest to any licensee regarding its failure to mark any product that embodies the subject matter of any claim of the Asserted Patents, including, but not limited to specifications, operation manuals, maintenance manuals, service manuals, user manuals, or schematics.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request as unintelligible. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune communications relating to any licensee's recognized failure to mark any product that embodies the subject matter of any claim of the patents asserted in this action for the time period prior to actual notice of infringement to ADTRAN, if any, to the extent located after a reasonable search.

**Document Request No. 35:**

All documents and things that relate to the first sale, first offer for sale, first disclosure, first demonstration, first promotion, first license, first manufacture of, or first use of any device or system or method which You believe is covered by any claim of the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

25

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents sufficient to show the first sale or disclosure of things embodying the inventions of the patents asserted in this action, if any, to the extent located after a reasonable search.

**Document Request No. 36:**

All documents and things that relate to TQ Delta's basis for the priority dates of the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. By way of example, ADTRAN has not identified any claim or defense that renders relevant the respective priority dates of the patents asserted in this action. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relating to TQ Delta's basis for the priority dates of the patents asserted in this action.

**Document Request No. 37:**

All documents and things relating to any search, investigation, analysis, review, opinion or study relating to the scope, novelty, non-obviousness, patentability, validity, enforceability, and/or infringement of any claim of the Asserted Patents by any party.

26

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. By way of example, this request encompasses matters having nothing to do with the products accused in this case. TQ Delta further objects to this request to the extent it seeks documents which are protected by any applicable privilege, including attorney-client privilege and/or work product immunity doctrine. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents involving novelty, non-obviousness, patentability, validity, and/or enforceability of patents asserted in this action, if any, to the extent located after a reasonable search.

**Document Request No. 38:**

All non-privileged documents, communications and things pertaining to the state of the art at any time prior to the filing date of the Asserted Patents, including without limitation documents dated after such date that refer to the state of the art at any time prior to such date.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed

27

upon TQ Delta in complying with this broad and vague request far outweigh the probative value

of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce

non-privileged, non-immune responsive documents sufficient to show the "state of the art"

relating to the claimed inventions (as a whole) for the asserted claims of the patents asserted in

this action, if any, to the extent located after a reasonable search.

**Document Request No. 39:**

All documents, communications and things relating to the level of ordinary skill in the art to
which the subject matter of the Asserted Patents pertain, including without limitation, all
documents, communications and things that TQ Delta intends to rely upon to establish the level
of ordinary skill in the art in either this action or in any Related Litigation.

**Response:**

Subject to and without waiver of its general or specific objections, TQ Delta will produce

non-privileged, non-immune responsive documents that it intends to rely upon to establish the level

of ordinary skill in the art of the subject matter of any claim of the patents asserted in this action, if

any, to the extent located after a reasonable search.

**Document Request No. 40:**

All public documents and things comprising prior art (including, without limitation, any and all
material prior art patents, publications and/or literature or other documents) to the Asserted
Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and

unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things

not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the

needs of the case. TQ Delta objects to this request to the extent that the costs and burdens

28

imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request to the extent it seeks documents which are outside the possession, custody, or control of TQ Delta.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune prior art relating to the claimed inventions of the patents asserted in this action, if any, to the extent located after a reasonable search.

**Document Request No. 41:**

All documents and things which You contend may relate to the interpretation of any term in any claim of the Asserted Patents.

**Response:**

TQ Delta further objects to the request as seeking information that will be addressed in an expert report that is subject to the order(s) of the court and, accordingly, is premature. outweigh

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents, if any, to the extent located after a reasonable search, at an appropriate time.

**Document Request No. 42:**

All documents and things that relate to the scope of the art and/or the level of ordinary skill in the art, as the term "art" is used in 35 U.S.C. § 103, of the subject matter described and claimed in the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case.

29

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relating to the claimed inventions of the patents asserted in this action, if any, to the extent located after a reasonable search.

**Document Request No. 43:**

All documents and things relating to any differences, as term "differences" is used in 35 U.S.C. § 103, between the prior art and the subject matter described and claimed in the Asserted Patents.

**Response:**

TQ Delta further objects to the request as seeking information that will be addressed in an expert report and, accordingly, is premature. TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relating to the claimed inventions of the patents asserted in this action, if any, to the extent located after a reasonable search.

**Document Request No. 44:**

All documents and things relating to any motivation to combine any prior art teachings to yield the subject matter disclosed or claimed in the Asserted Patents.

**Response:**

TQ Delta further objects to the request as seeking information that will be addressed in an expert report and, accordingly, is premature. TQ Delta further objects to this document request as

30

vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relating to the claimed inventions of the patents asserted in this action, if any, to the extent located after a reasonable search.

**Document Request No. 45:**

All documents and things that relate to, support, demonstrate, or evidence the nonobviousness of any subject matter disclosed or claimed in the Asserted Patents, including but not limited to long-felt need, failures of others, unexpected results or advantages, existing licenses, copying, commercial success, and acceptance in the industry.

**Response:**

TQ Delta further objects to this request as premature to the extent it implicates expert testimony. TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relating to the claimed inventions of the patents asserted in this action, if any, to the extent located after a reasonable search.

31

**Document Request No. 46:**

To the extent not produced in response to the preceding requests, all documents and things relating to any alleged "long-felt but unmet need" as described in *Graham v. John Deere Co. of Kansas City,* 383 U.S. 1 (1966) and its progeny, for the subject matter described and claimed in the Asserted Patents including, without limitation, all documents and things that allegedly establish that the claimed invention satisfied that alleged long-felt but unmet need.

**Response:**

TQ Delta further objects to this request as premature to the extent it implicates expert testimony. TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relating to the claimed inventions of the patents asserted in this action, if any, to the extent located after a reasonable search.

**Document Request No. 47:**

To the extent not produced in response to the preceding requests, all documents and things relating to any alleged "commercial success" as described in *Graham v. John Deere* and its progeny, for the subject matter described and claimed in the Asserted Patents including, without limitation, all documents and things identifying the product(s) alleged to be commercially successful, all sales records for the period of time that such sales were made (including, for example, monthly and year-end sales by customer, by region, and by product), all documents and things allegedly purporting to establish nexus between the claimed invention and the "commercial success," and all documents and things necessary to establish that the claims "read on," cover, or otherwise encompass such products(s).

**Response:**

TQ Delta further objects to this request as premature to the extent it implicates expert testimony. TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome (including to the extent it calls for cross-production of confidential information from other parties or other litigations). TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relating to the claimed inventions of the patents asserted in this action, if any, to the extent located after a reasonable search.

**Document Request No. 48:**

To the extent not produced in response to the preceding requests, all documents and things relating to any alleged "failure of others" as described in *Graham v. John Deere* and its progeny, to arrive at the subject matter described and claimed in the Asserted Patents, including without limitation, all documents that reflect the alleged failures and all documents that allegedly establish that the claimed subject matter solved the problem that others failed to solve.

**Response:**

TQ Delta further objects to this request as premature to the extent it implicates expert testimony. TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens

33

imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relating to the claimed inventions of the patents asserted in this action, if any, to the extent located after a reasonable search.

## Document Request No. 49:

To the extent not produced in response to the immediately preceding requests, all documents and things relating to any alleged "secondary considerations" of the type described in *Graham v. John Deere* and its progeny, for the subject matter described and claimed in the Asserted Patents.

## Response:

TQ Delta further objects to this request as premature to the extent it implicates expert testimony. TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relating to the claimed inventions of the patents asserted in this action, if any, to the extent located after a reasonable search.

## Document Request No. 50:

All documents and things relating to the best mode of practicing the subject matter of any claim of the Asserted Patents contemplated by any of the named inventors at the time of filing any patent application that led to or resulted in the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request to the extent it seeks documents which are outside the possession, custody, or control of TQ Delta.

TQ Delta further objects to this request insofar as proving invalidity is the burden of a defendant, and a patentee is not required to prove validity. TQ Delta further objects to this request as seeking information about the patents' "best mode" of operation, a defense that is no longer available in patent infringement lawsuits. In view of the foregoing, TQ Delta will not search for and/or produce documents responsive to this request.

**Document Request No. 51:**

All documents and things relating to each mode of practicing the subject matter of each claim of the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

35

TQ Delta further objects to this request insofar as proving invalidity is the burden of a defendant, and a patentee is not required to prove validity. TQ Delta further objects to this request as seeking information about the patents' "best mode" of operation, a defense that is no longer available in patent infringement lawsuits. In view of the foregoing, TQ Delta will not search for and/or produce documents responsive to this request.

**Document Request No. 52:**

All documents and things that relate to or describe Your intellectual property licensing policies.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request as not proportional to the needs of the case. outweigh

Subject to and without waiver of its general and specific objections, TQ will produce non-privileged, non-immune responsive documents sufficient to identify TQ Delta's intellectual property licensing policies, if any, to the extent located after a reasonable search.

**Document Request No. 53:**

All documents and things that relate to any offer of, request for, or expression of interest in a license and/or immunity from suit under the Asserted Patents

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value

36

of the information requested. TQ Delta further objects to this request to the extent it seeks documents which TQ Delta is not permitted to produce pursuant to a confidentiality agreement entered with third-parties during past or on-going negotiations in other actions. TQ Delta further objects to this request because it unduly interferes with TQ Delta's ongoing license negotiations and its ability to license its patent portfolio.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune license agreement(s) encompassing the patents asserted in this action, if any, to the extent located after a reasonable search.

**Document Request No. 54:**

To the extent not already produced, all documents and things relating to contracts, understandings and/or agreements between you and any other person relating to the subject matter of the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request to the extent it seeks documents which TQ Delta is not permitted to produce pursuant to a confidentiality agreement entered with third-parties during past or on-going negotiations in other actions. TQ Delta further objects to this request because it unduly interferes with TQ Delta's ongoing license negotiations and its ability to license its patent portfolio.

37

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune license agreement(s) encompassing the patents asserted in this action, if any, to the extent located after a reasonable search.

**Document Request No. 55:**

All agreements and drafts of agreements entered into between TQ Delta and any nonparty relating, in whole or in part, to the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request to the extent it seeks documents which TQ Delta is not permitted to produce pursuant to a confidentiality agreement entered with third-parties during past or on-going negotiations in other actions. TQ Delta further objects to this request because it unduly interferes with TQ Delta's ongoing license negotiations and its ability to license its patent portfolio.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune license agreement(s) encompassing the patents asserted in this action, if any, to the extent located after a reasonable search.

**Document Request No. 56:**

All communications relating to agreements and drafts of agreements entered into between TQ Delta and any nonparty relating to, in whole or in part, the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request to the extent it seeks documents which TQ Delta is not permitted to produce pursuant to a confidentiality agreement entered with third-parties during past or on-going negotiations in other actions. TQ Delta further objects to this request because it unduly interferes with TQ Delta's ongoing license negotiations and its ability to license its patent portfolio.

In view of the foregoing, TQ Delta will not search for and/or produce documents responsive to this request, but TQ Delta is willing to meet and confer with Defendant to determine if there is some discrete, reasonable, relevant set of documents that would satisfy this request.

**Document Request No. 57:**

To the extent not already produced, all agreements and drafts of agreements entered into between TQ Delta and Aware.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens

39

imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune executed agreements and correspondence involving its purchase of the asserted patents from Aware.

**Document Request No. 58:**

All communications relating to agreements and drafts of agreements entered into between TQ Delta and Aware.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune executed agreements and correspondence involving its purchase of the asserted patents from Aware.

**Document Request No. 59:**

All agreements and drafts of agreements entered into between TQ Delta and any inventor of the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request because it unduly interferes with TQ Delta's ongoing license negotiations and its ability to license its patent portfolio.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune copies of agreements(s) between TQ Delta and any inventor of the patents asserted in this action relative to any interest in this case, if any, to the extent located after a reasonable search.

**Document Request No. 60:**

All communications relating to agreements and drafts of agreements entered into between TQ Delta and any inventor of the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

41

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune copies of agreements(s) between TQ Delta and any inventor of the patents asserted in this action, if any, to the extent located after a reasonable search.

**Document Request No. 61:**

All patents held, owned, or licensed by You relating to the subject matter of the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

In view of the foregoing, TQ Delta will not search for and/or produce documents responsive to this request, but TQ Delta is willing to meet and confer with Defendant to determine if there is some discrete, reasonable, relevant set of documents that would satisfy this request.

**Document Request No. 62:**

All documents and things that relate to the practices of any third party related to marking with respect to the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the

needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request to the extent it seeks documents which are outside the possession, custody, or control of TQ Delta.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relating to practices of any third party related to marking with respect to patent marking of the patents asserted in this action, if any for the time period prior actual notice of infringement to ADTRAN, to the extent located after a reasonable search.

**Document Request No. 63:**

All documents and things that relate to any product made, sold, or used by Defendants that TQ Delta believes may infringe the Asserted Patents including, but not limited to, any examination or investigation of the products and any documents and things that formed all or any part of the factual basis for the alleged infringement of claims asserted in this lawsuit.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. By way of example, TQ Delta will not provide copies of documents produced by Defendant. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents sufficient to show the factual basis of infringement by ADTRAN of the patents asserted in this action.

**Document Request No. 64:**

All documents and things relating to the Defendants.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request to the extent it seeks documents which are outside the possession, custody, or control of TQ Delta.

In view of the foregoing, TQ Delta will not search for and/or produce documents responsive to this request, but TQ Delta is willing to meet and confer with Defendant to determine if there is some discrete, reasonable, relevant set of documents that would satisfy this request.

**Document Request No. 65:**

All documents and things relating to the purchase of any product of Defendants, including any Accused Product, by You or on your behalf.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things

44

not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents sufficient to show the factual basis of infringement by ADTRAN of the patents asserted in this action.

**Document Request No. 66:**

All documents and things relating to Your earliest knowledge or awareness of each of the activities, products, methods, or processes of Defendants that you contend have infringed or currently infringe, have constituted or currently constitute contributory infringement of, or have induced or currently are inducing others to infringe, any claim of the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents sufficient to show its earliest knowledge and/or awareness ADTRAN's infringement of the patents asserted in this action.

**Document Request No. 67:**

All documents and things relating to any determination, assertion, conclusion, by TQ Delta that any of Defendants' products and/or services infringe any claim of the Asserted Patents under any of 35 U.S.C. §§ 271 (a), (b), or (c).

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relating to ADTRAN's infringement of the patents asserted in this action.

**Document Request No. 68:**

All documents and things relating to any notification by TQ Delta to Defendants of infringement or alleged infringement of the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

46

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relating to any notification by TQ Delta to ADTRAN regarding ADTRAN's infringement of the patents asserted in this action.

**Document Request No. 69:**

All documents and things relating to any contention by TQ Delta that Defendants' alleged infringement is willful.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relating to ADTRAN's willful infringement of the patents asserted in this action.

**Document Request No. 70:**

All documents and things relating to any tests, measurements, evaluations, studies, analysis or surveys of or that relate to any product or services of Defendants including without limitation as deployed or used by any defendant in any Related Litigation.

**Response:**

TQ Delta further objects to this document request as vague (e.g. "related litigation), ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this

47

request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relating to any of ADTRAN's products or services relating to TQ Delta's assertions of infringement by ADTRAN's in this action.

## Document Request No. 71:

All documents and things that relate to TQ Delta's knowledge, understanding, belief, perception, or apprehension of alleged or potential infringement by Defendants of any claim of the Asserted Patents.

## Response:

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relating to ADTRAN's infringement of the patents asserted in this action.

## Document Request No. 72:

All documents and things that relate to, or contradict, each of Your claims in this action, including without limitation as set forth in the Complaint filed on July 17, 2014, as amended.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relating to ADTRAN's infringement of the patents asserted in this action, if any, to the extent located after a reasonable search.

**Document Request No. 73:**

To the extent not already produced, all documents and things that relate to the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request to the extent it seeks documents which are outside the possession, custody, or control of TQ Delta.

In view of the foregoing, TQ Delta will not search for and/or produce documents responsive to this request, but TQ Delta is willing to meet and confer with Defendant to

49

determine if there is some discrete, reasonable, relevant set of documents that would satisfy this request.

**Document Request No. 74:**

All documents and things relating to any determination, assertion, notification, or conclusion by TQ Delta, regarding any infringement or alleged infringement of the Asserted Patents by any person.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. By way of example, this request encompasses products not at issue in this action. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relating to ADTRAN's infringement of the patents asserted in this action.

**Document Request No. 75:**

All documents and things relating to any determination, assertion, notification, or conclusion by TQ Delta, regarding any infringement or alleged infringement of the Asserted Patents by any defendant in any Related Litigation.

**Response:**

TQ Delta further objects to this document request as vague (e.g. "related litigation), ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent

it seeks documents and things not relevant to any claim or defense. By way of example, this request encompasses products and matters not at issue in this action. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents sufficient to show ADTRAN's infringement of the patents asserted in this action.

### Document Request No. 76:

All documents and things related to any communication regarding this lawsuit, or the anticipated commencement of this lawsuit, to persons not employed by TQ Delta at the time of the communication.

### Response:

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request to the extent it seeks documents which are protected by any applicable privilege, including the attorney-client privilege and/or the work product immunity doctrine.

In view of the foregoing, TQ Delta will not search for and/or produce documents responsive to this request.

51

**Document Request No. 77:**

All documents and things related to any communication regarding this lawsuit, or the anticipated commencement of this lawsuit, to persons not employed by TQ Delta at the time of the communication.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request to the extent it seeks documents which are protected by any applicable privilege, including the attorney-client privilege and/or the work product immunity doctrine.

In view of the foregoing, TQ Delta will not search for and/or produce documents responsive to this request.

**Document Request No. 78:**

All documents and things related to TQ Delta's decision to bring its Claims as set forth in the Complaint, including but not limited to, all documents and things relating to any analysis of the likelihood of success in asserting a patent infringement claim against Defendants or any other party based on the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. By way of example, this request encompasses products not at issue in this action. TQ Delta further objects to this request to the extent it seeks documents

52

which are protected by any applicable privilege, including attorney-client privilege and/or work product immunity doctrine. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents involving its decision to assert against ADTRAN the claims of the patents asserted in this action, if any, to the extent located after a reasonable search.

## Document Request No. 79:

All documents and things related to TQ Delta's decision to bring related litigation, including but not limited to, all documents and things relating to any analysis of the likelihood of success in asserting a patent infringement claim against Defendants or any other party based on the patents asserted in this action

## Response:

TQ Delta further objects to this document request as vague (e.g., "related litigation), ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. By way of example, this request encompasses products not at issue in this action. TQ Delta further objects to this request to the extent it seeks documents which are protected by any applicable privilege, including attorney-client privilege and/or work product immunity doctrine. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the

costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce documents relating to its decision to assert against ADTRAN the claims of the patents asserted in this action, if any, to the extent located after a reasonable search.

**Document Request No. 80:**

All documents and things that relate to any search, investigation, review, opinion or study relating to the patentability, validity, enforceability, or infringement of the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. By way of example, this request encompasses matters having nothing to do with the products accused in this case. TQ Delta further objects to this request to the extent it seeks documents which are protected by any applicable privilege, including attorney-client privilege and/or work product immunity doctrine. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents involving novelty, non-obviousness, patentability, validity, enforceability of the patents asserted in this action, if any, to the extent located after a reasonable search. For clarity, TQ Delta will not produce documents relating to infringement by other defendants.

**Document Request No. 81:**

All documents and things that relate to any search, investigation, review, opinion or study relating to the patentability, validity, enforceability, or infringement of the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. By way of example, this request encompasses matters having nothing to do with the products accused in this case. TQ Delta further objects to this request to the extent it seeks documents which are protected by any applicable privilege, including attorney-client privilege and/or work product immunity doctrine. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents involving novelty, non-obviousness, patentability, validity, enforceability of the patents asserted in this action, if any, to the extent located after a reasonable search. For clarity, TQ Delta will not produce documents relating to infringement by other defendants.

**Document Request No. 82:**

All documents and things that relate to the settlement of any claim of infringement of the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things

55

not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta objects to this requests because it interferes with TQ Delta's ability to license its patent portfolio. TQ Delta further objects to this document request to the extent it seeks settlement discussion information that would not be admissible pursuant to Federal Rule of Evidence 408.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune executed settlement agreements regarding claims of infringement of the patents asserted in this action, if any, to the extent located after a reasonable search. .

**Document Request No. 83:**

All documents and things that relate to TQ Delta's consultation with any other person with respect to the Asserted Patents prior to filing the complaint in any related litigation.

**Response:**

TQ Delta further objects to this document request as vague (e.g. "related litigation), ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta further objects to this request to the extent it seeks documents which are protected by any applicable privilege, including attorney-client privilege and/or work product immunity doctrine. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

In view of the foregoing, TQ Delta will not search for and/or produce documents responsive to this request, but TQ Delta is willing to meet and confer with Defendant to determine if there is some discrete, reasonable, relevant set of documents that would satisfy this request.

**Document Request No. 84:**

All documents and things which support any of Your contentions, positions, or assertions made or to be made concerning YOUR damages theories in this litigation, including, without limitation, contentions, positions, or assertions made or to be made concerning the theories of lost profits, reasonable royalty, established royalty, lost sales, and/or reduced or depressed pricing, and/or any other basis for alleged compensation under 35 U.S.C. § 284.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, speculative ("to be made"), unduly burdensome, and as implicating expert opinion. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta objects to this request as implicating expert opinion.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relating to any determination of reasonable royalty damages for ADTRAN's infringement of the patents asserted in this action.

**Document Request No. 85:**

To the extent not produced in response to the immediately preceding requests, all documents and things concerning any factors listed in *Georgia-Pacific Corp. v. United States Plywood Corp.,* 318 F. Supp. 1116 (S.D.N.Y. 1970) relating to the determination of reasonable royalty, including without limitation all documents concerning:

57

(a) any royalties received pursuant to any licenses or sublicenses of the Asserted Patents;

(b) any royalty rates paid by companies in the United States for the use of patents comparable to the Asserted Patents;

(c) Your policies regarding licensing of any of your patents or patent applications;

(d) Your competition in the United States;

(e) the effect of any of Your products covered by the Asserted Patents in generating sales of products other than the products covered by the Asserted Patents;

(f) the portion of the realizable profit that could be credited to the claimed subject matter covered by the Asserted Patents, as distinguished from non-patented elements; and/or(g) any support for any contention regarding the hypothetical negotiation as described in *Georgia-Pacific.*

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta objects to this request as implicating expert opinion.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relating to any determination of reasonable royalty damages for ADTRAN's infringement of the patents asserted in this action.

**Document Request No. 86:**

To the extent not produced in response to any of the preceding requests, all documents and things relating to any adequate compensation to which You claim You are entitled under 35 U.S.C. § 284 with respect to the subject matter disclosed and claimed in the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta objects to this request as implicating expert opinion.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relating to any determination of compensation for which TQ Delta is entitled due to ADTRAN's infringement of the patents asserted in this action.

**Document Request No. 87:**

All valuations and appraisal reports relating to the valuation of any intellectual property assets owned by You, including but not limited to the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta objects to this request as implicating expert opinion.

Subject to and without waiver of its general and specific objections, TQ Delta will produce copies of non-privileged, non-immune valuations of patents that include any of the patents asserted in this action, if any, to the extent located after a reasonable search.

## Document Request No. 88:

All documents and things relating to the determination of or the calculation of any damages associated with any nonparties associated with infringement of the Asserted Patents.

## Response:

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. By way example, this request is targeted to "nonparties" to this action. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request because it unduly interferes with TQ Delta's ongoing license negotiations and its ability to license its patent portfolio. TQ Delta objects to this request as implicating expert opinion.

In view of the foregoing, TQ Delta will not search for and/or produce documents responsive to this request, but TQ Delta is willing to meet and confer with Defendant to determine if there is some discrete, reasonable, relevant set of documents that would satisfy this request.

## Document Request No. 89:

All documents and things identified, or otherwise requested to be identified, in any interrogatory served by Defendants or any response or supplemental response by You to any interrogatory served by Defendants in this action.

**Response:**

TQ Delta incorporates its objections to in any interrogatory served by defendants or any response or supplemental response by it to any interrogatory served by defendants in the related litigation. TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. By way of example, it improperly seeks to sweep in requests and matters not at issue, violate the limits on interrogatories, and ignores protective order and confidentiality obligations. TQ Delta further objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general and specific objections, TQ Delta will produce copies of non-privileged, non-immune documents to be identified by production no., or to the extent identified in any interrogatory (by production no.) served by ADTRAN, if any, to the extent located after a reasonable search.

**Document Request No. 90:**

All documents and things considered, used, or relied upon in the preparation of any response or supplemental response to any interrogatory served by Defendants in this action.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta further objects to this request to the extent it seeks documents which are protected by any applicable privilege, including attorney-client privilege

61

and/or work product immunity doctrine. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relied upon in TQ Delta's preparation of interrogatory responses served by ADTRAN in this action, if any, to the extent located after a reasonable search.

**Document Request No. 91:**

All documents and things sufficient to identify and describe Your current and past policies and procedures for generating, maintaining, retaining, and disposing documents and things, including, without limitation, procedures and policies regarding patent application files.

**Response:**

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents sufficient to identify any document destruction or retention policy, if any, to the extent located after a reasonable search.

**Document Request No. 92:**

All documents and things reflecting any exception to Your current and past policies and procedures for generating, maintaining, retaining, and disposing of documents and things, including, without limitation, procedures and policies regarding patent application files.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the

62

needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents sufficient to identify any document destruction or retention policy, if any, to the extent located after a reasonable search.

**Document Request No. 93:**

A copy of each document or communication provided to any Standard Setting Organization.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to the subject matter of this litigation. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request to the extent it seeks documents which are publicly available and readily available to Defendant.

TQ Delta is willing to meet and confer with Defendant to determine if there is some discrete, reasonable, relevant set of documents that Defendant is seeking insofar as the documents sought concern the patents asserted in this action.

**Document Request No. 94:**

To the extent not produced in response to Request No. 84, a copy of any other document that You or Aware submitted to the ITU-T that relates to any of the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to the subject matter of this litigation. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request to the extent it seeks documents which are publicly available and readily available to Defendant.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents submitted to the ITU-T that relate to the patents asserted in this action, if any, to the extent located after a reasonable search.

**Document Request No. 95:**

Documents sufficient to show which of the Asserted Patents is or are subject to which documents produced in response to Request No. 86 or Interrogatory No.4.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to the subject matter of this litigation. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents, if any, sufficient to show its determination of compensation for which TQ Delta is entitled due to ADTRAN's infringement of the patents asserted in this action.

**Document Request No. 96:**

All agreements and drafts of agreements entered into between Aware and Lantiq.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta further objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune executed agreements relating to the patents asserted in this action, if any, to the extent located after a reasonable search.

**Document Request No. 97:**

All documents and communication regarding the agreements entered into between Aware and Lantiq.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta further objects to this request as not proportional

to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune executed agreements relating to the patents asserted in this action, if any, to the extent located after a reasonable search.

**Document Request No. 98:**

All documents and communication regarding FRAND rates charged to other licensees for licenses to Standards Essential Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to the subject matter of this litigation. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request to the extent it seeks documents which TQ Delta is not permitted to produce pursuant to a confidentiality agreement entered with third-parties during past or on-going negotiations in other actions.

Subject to and without waiver of its general or specific objections, TQ Delta will produce responsive non-privileged, non-immune executed license agreements encompassing the asserted patents, if any, to the extent located after a reasonable search.

**Document Request No. 99:**

To the extent not produced in response to any of the preceding requests, all documents and communication regarding the agreements entered into between Aware and other licensees for the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request to the extent it seeks documents which are outside the possession, custody, or control of TQ Delta.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune executed license agreements between Aware and licenses encompassing of the patents asserted in this action, if any, to the extent located after a reasonable search.

**Document Request No. 100:**

Documents sufficient to show the relative strength of the patents at issue in this action as determined by TQ Delta and/or Aware.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed

upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general and specific objections, TQ Delta will produce non-privileged, non-immune responsive documents constituting valuations of or reporting on the strength and/or weakness of the patents asserted in this action.

## Document Request No. 101:

All documents that identify any relation between consumer demand and the functions or features of the Accused Products that TQ Delta contends are covered by the Asserted Claims.

## Response:

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents concerning the accused products and the patents asserted in this action, if any, to the extent located after a reasonable search.

## Document Request No. 102:

All documents evidencing any survey, market study, or any other analysis identifying any and all features that affect consumer demand or buying decisions with respect to products having DSL functionality, including but not limited to the Accused Products.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. By way of example, this request encompasses matters having nothing to do with the products accused in this case. TQ Delta further objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents relating to the accused products, if any, to the extent located after a reasonable search

**Document Request No. 103:**

All documents evidencing any study, analysis, or evaluation of the number of patents that are essential to the DSL Standards.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents, if any, to the extent located after a reasonable search.

**Document Request No. 104:**

All documents evidencing any study, analysis, or evaluation of the value of the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta further objects to this request to the extent it seeks documents which are protected by any applicable privilege, including attorney-client privilege and/or work product immunity doctrine. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive valuations encompassing any of the asserted patents, if any, to the extent located after a reasonable search.

**Document Request No. 105:**

All documents evidencing any study, analysis, or evaluation of the value of the Asserted Patents' incorporation into the DSL Standards.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things

not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents, if any, to the extent located after a reasonable search.

**Document Request No. 106:**

All documents evidencing any study, analysis, or evaluation of the contribution of any one or more of the Asserted Patents to the technical capabilities of the DSL Standards.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta further objects to this request to the extent it seeks documents which are protected by any applicable privilege, including attorney-client privilege and/or work product immunity doctrine. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents, if any, to the extent located after a reasonable search.

**Document Request No. 107:**

All documents evidencing any study, analysis, or evaluation of the importance of the Asserted Patents to the DSL Standards.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request to the extent it seeks documents which are protected by any applicable privilege, including attorney-client privilege and/or work product immunity doctrine.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents, if any, to the extent located after a reasonable search.

**Document Request No. 108:**

All documents evidencing any study, analysis, or evaluation of any patents or patent portfolio comparable to the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague (e.g. "comparable"), ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent

72

that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents, if any, to the extent located after a reasonable search.

## Document Request No. 109:

All documents evidencing any study, analysis, or evaluation of any alternatives to the Asserted Patents that were considered by the ITU-T and could have been adopted into the DSL Standards.

## Response:

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested. TQ Delta further objects to this request to the extent it seeks documents which are outside the possession, custody, or control of TQ Delta.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents, if any, to the extent located after a reasonable search.

## Document Request No. 110:

All communications with or between TQ Delta and any investment firms, potential or actual investors, and intellectual property monetization entities (including but not limited to Techquity, LP, TQCAP, LLC, and Techquity Capital Management, LLC) regarding the value of TQ Delta's intellectual property, including the Asserted Patents.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general and specific objections, TQ Delta will produce responsive, non-privileged, non-immune responsive documents constituting valuations of the patents asserted in this action.

**Document Request No. 111:**

All agreements related in any way to TQ Delta's financing of the present litigation.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta further objects to this request to the extent it seeks documents which are protected by any applicable privilege, including attorney-client privilege and/or work product immunity doctrine. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

TQ Delta will not search for and/or produce documents responsive to this request.

74

**Document Request No. 112:**

All documents identifying any person with a financial interest in this litigation or its outcome, including direct or indirect interests, or monetary or non-monetary interests.

**Response:**

TQ Delta further objects to this document request as vague, ambiguous, overly broad, and unduly burdensome. TQ Delta objects to this request to the extent it seeks documents and things not relevant to any claim or defense. TQ Delta further objects to this request to the extent it seeks documents which are protected by any applicable privilege, including attorney-client privilege and/or work product immunity doctrine. TQ Delta objects to this request as not proportional to the needs of the case. TQ Delta objects to this request to the extent that the costs and burdens imposed upon TQ Delta in complying with this broad and vague request far outweigh the probative value of the information requested.

Subject to and without waiver of its general or specific objections, TQ Delta will produce non-privileged, non-immune responsive documents sufficient to identify any fact witnesses who have an interest in this action, if any, to the extent located after a reasonable search.

Dated: August 21, 2017

Respectfully submitted,

FARNAN LLP

/s/Michael J. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, Delaware  19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Peter J. McAndrews (admitted *pro hac vice*)
Timothy J. Malloy (admitted *pro hac vice*)
Thomas J. Wimbiscus (admitted *pro hac vice*)
Sharon A. Hwang (admitted *pro hac vice*)
Paul W. McAndrews(admitted *pro hac vice*)
Anna M. Targowska (admitted *pro hac vice*)
MCANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, Illinois  60661
(312) 775-8000
(312) 775-8100 (Fax)
pmcandrews@mcandrews-ip.com

*Counsel for Plaintiff TQ Delta, LLC*

76

## CERTIFICATE OF SERVICE

I, Michael J. Farnan, hereby certify that on August 21, 2017, a copy of TQ Delta, LLC's

Responses to ADTRAN's Second Set of Requests for Production to TQ Delta, LLC was served

on the following as indicated:

<table>
<tr>
<td>

Via E-Mail
Kenneth L. Dorsney
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801-1494
kdorsney@morrisjames.com

*Attorneys for ADTRAN, Inc.*

</td>
<td>

Via E-Mail
Paul M. Sykes
John E. Goodman
David W. Holt
Bradley Arant Boult Cummings, LLP
psykes@babc.com
jgoodman@babc.com
dholt@babc.com

*Attorneys for ADTRAN, Inc.*

</td>
</tr>
</table>

 /s/ Michael J. Farnan
Michael J. Farnan (Bar No. 5165)

# Exhibit C

EXHIBIT REDACTED IN ITS ENTIRETY

# Exhibit D

EXHIBIT REDACTED IN ITS ENTIRETY

# Exhibit E

EXHIBIT REDACTED IN ITS ENTIRETY

# Exhibit F

EXHIBIT REDACTED IN ITS ENTIRETY

# Exhibit G

EXHIBIT REDACTED IN ITS ENTIRETY

# Exhibit H

# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

(302) 658-9200
(302) 658-3989 FAX

JENNIFER YING
(302) 351-9243
jying@mnat.com

REDACTED -- PUBLIC VERSION
Original Filing Date: October 6, 2016
Redacted Filing Date: October 13, 2016

The Honorable Richard G. Andrews                    *VIA ELECTRONIC FILING*
United States District Court
  for the District of Delaware
844 North King Street
Wilmington, DE 19801

Re:   *TQ Delta, LLC v. Comcast Cable Communications LLC, et al.*,
      C.A. Nos. 15-611; 15-612; 15-613; 15-614; 15-615; 15-616 (RGA)

Dear Judge Andrews:

Pursuant to the Court's Order (D.I. 147), Defendants respectfully submit the following discovery issues for resolution at the hearing scheduled for 9:00 a.m. on October 11, 2016, regarding (1) TQD's failure to respond to Defendants' interrogatories and document requests and (2) deficiencies in TQD's privilege log and its improper withholding of documents as allegedly privileged. Given the fact discovery deadline of December 16, 2016, Defendants respectfully request that TQD be ordered to supplement its interrogatory responses, document production, and privilege log deficiencies by November 1, 2016.

**Common Interrogatory No. 9.** This interrogatory seeks information regarding TQD's disagreements with Defendants' invalidity contentions, including "support for such disagreement, identification of any disclosed references you allege do not qualify as prior art and why, any claim elements you allege are not disclosed by the prior art, and why each of the disclosed references and the disclosed combinations thereof do not anticipate or render obvious the asserted claims." (Ex. 1, TQD's response at 6.) TQD's response consists entirely of objections and does not contain *any* substance. (*Id.* at 6-7.) On August 23, Defendants requested that TQD supplement its response. (Ex. 2, Aug. 23 Letter at 2-3.) Although TQD agreed to supplement its response during a September 7 meet and confer, it has refused to indicate when it will do so or what type of information it will provide. (Ex. 3, Sept. 9 Letter at 1-2.)

Defendants provided detailed invalidity contentions nearly six months ago, including claim charts identifying where in the prior art each and every claim limitation was found. TQD should be required to fully respond to this Interrogatory. *See Pragmatus Telecom LLC v. AT&T,* C.A. No. 12-1533, Tr. at 20 (D. Del. June 26, 2014) (ordering plaintiff to respond to validity contention interrogatory) (Ex. 4); *Pragmatus AV, LLC v. Yahoo!,* C.A. No. 11-902-LPS-CJB, D.I. 164 at 3 (D. Del. June 25, 2013) (same) (Ex. 5).

**Common Interrogatory No. 10.** This interrogatory seeks TQD's contentions as to any secondary considerations of nonobviousness. (Ex. 1, TQD's response] at 7.) Although TQD responded that "[e]ach of the recognized secondary considerations of nonobviousness supports or evidences nonobviousness of the asserted claims" and listed nine different purported

The Honorable Richard G. Andrews
October 6, 2016
Page 2

secondary considerations (*id.* at 7-8), it has not provided the basis for its contentions regarding these factors. For example, TQD did not provide *any* information or evidence regarding why the following secondary considerations it identified apply: (1) "others in the field praised the invention, (2) "surprise or disbelief," and (3) "inventors proceeded contrary to accepted wisdom in the field." (*Id.* at 8.) Nor has TQD provided *any* description or evidence of why a nexus allegedly exists between any secondary considerations and the claimed inventions.

TQD's only basis for refusing to provide this information is that it would be "premature" to do so because TQD might obtain additional information from third parties during discovery that would require it to supplement its response again. (Ex. 3, Sept. 9 Letter at 2.) But this is not a legitimate basis for TQD to withhold any information *it already has*. And TQD has not even served third party discovery regarding secondary considerations. TQD should be required to promptly supplement its response to provide this information.

**Common Interrogatory No. 11.** This interrogatory seeks information on compliance with the notice and marking requirements of 35 U.S.C. § 287. (Ex. 1, TQD's response at 9.) TQD has the burden of proving compliance with these requirements, which go directly to TQD's claim for damages because a patent owner who fails to mark its products, or fails to require (and enforce the requirement) that its licensees mark their products, is not entitled to damages prior to providing notice of infringement. *See Maxwell v. J Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996) ("The duty of alleging, and the burden of proving, either actual notice or constructive notice [under § 287] is upon the patentee.") (alterations omitted). TQD's response merely identifies certain licenses to the asserted patents pursuant to Rule 33(d). (*Id.* at 9-10.) Accordingly, it does not even indicate whether TQD contends that § 287 was satisfied, much less why it was satisfied, whether any licensed products were sold, whether any such products were marked, or what efforts were made to enforce such marking. (Ex. 3, Sept. 9 Letter at 2; Ex. 6, Oct. 4 E-mail at 1.) As TQD is seeking damages from Defendants starting six years before filing these actions—well before actual patent notice to any Defendant—it should be required to either drop its claim for pre-filing damages or articulate its contention and bases regarding whether the requirements of § 287 have been satisfied for the asserted patents.

**Common Interrogatory No. 12.** This interrogatory seeks the identities of individuals who participated in the prosecution of the asserted patents and related patents and applications. (Ex. 1, TQD's response at 10.) TQD's response cites numerous file histories, but names only a single prosecuting attorney. (*Id.*) Defendants asked TQD to confirm that it "is unaware of any involved persons other than those identified by name in the prosecution histories." (Ex. 2, Aug. 23 Letter at 3.) TQD refused to do so on the basis of "proportionality." (Ex. 3, Sept. 9 Letter at 2.) But any burden for providing this information is minimal; on the other hand, it is likely to lead to relevant facts on multiple issues already in the case, including the scope of the patent claims and additional prior art. Further, "additional information that was provide[d] and confirmed through" discovery can give rise to a "new theory" of inequitable conduct that may be presented in an amended pleading. *Roquette Freres v. SPI Pharma, Inc.*, No. C.A. 06-540GMS, 2009 WL 1444835, at *5 (D. Del. May 21, 2009). TQD should be required to promptly supplement its response.

**Value and Valuation Documents.** Defendants seek documents relating to the value of the asserted patents. (Ex. 7, Sept. 27 Letter at 1; Ex. 8, Sept. 30 E-mail at 1.) This includes documents concerning the funding of TQD (whose only assets are patents, a significant portion

The Honorable Richard G. Andrews
October 6, 2016
Page 3

of which are asserted), business plans, financial statements, and investor communications. (*Id.*) The Court has already found several of these types of documents relevant. (*See, e.g.*, 6/13/16 Tr. at 55:19-56:18 ("I gather TQ Delta's entire value is this Aware patent portfolio . . . if you had . . . IP Value firm come in, you know, 2013, or 2015 – I don't know – whatever, some date. And you said, here's our patent portfolio, what do you think it's worth? And they wrote up scientific and all that stuff, and they said, we're at $15 million. It would seem like something that any damages expert would want to know, right?") (Ex. 9).)

Although TQD agreed to search for formal "valuations" of TQD or its patents, it refuses to search for and produce documents "relating to the[ir] value" (Ex. 6, Oct. 4 E-mail at 2), *e.g.*, investor communications concerning value. It is unlikely that TQD could have raised $16 million to purchase the asserted patents from Aware, Inc. (the original owner of the asserted patents) without communicating internally and with investors about the value of those patents. Indeed, TQD's managing director, Mark Roche, testified ███████████████████████████████ ████████████████████████████████████████████████ (Ex. 10, Roche Transcript at 199:1-200:15.) ████████████████████████████████████████████████ ████████████████████████████ (*Id.* at 208:4-13.) In addition to any formal "valuation" documents, TQD should be ordered to produce documents showing how TQD and its investors value the company (and thus its patents).

**TQD's Privilege Logs.**

*Patent Acquisition Log.* During the June 13, 2016, 11:00 a.m. hearing, the Court ordered (1) that TQD either produce or log documents contained in the "package" of information that TQD received from Aware in connection with negotiations to purchase the asserted patents and (2) that the parties submit a joint status report if TQD's privilege claims to these documents were disputed. (11:00 a.m. Tr. at 49:16-21.) Defendants dispute that the documents on TQD's Patent Acquisition Log are privileged, and the parties submitted a Joint Status Report addressing this issue on August 25, 2016. (C.A. No. 15-611, D.I. 121.) The day after the Joint Status Report was submitted, TQD supplemented its log to add dates for two documents. (Ex. 11.) The addition of these dates does not affect whether these documents are privileged. Accordingly, for the reasons set forth in the August 25 Joint Status Report, Defendants respectfully request that the Court order TQD to produce the documents on its Patent Acquisition Log. TQD should also be ordered to produce items 205-268 and 306-380 on its general privilege ████████ ████████████████████████████████████████—for the same reasons. (*See* Exs. 12, 13.)

*General Log.* Apart from items 205-268 and 306-380 discussed above, TQD's general privilege log essentially consists of ████████████████████████████ ████████████████████████████ (*See* Exs. 12, 13.) However, TQD has neither produced nor logged internal documents such as those that TQD's Rule 30(b)(6) witness testified exist, but which TQD's counsel refused to allow questioning about on the basis of privilege. (*See* C.A. No. 15-611, D.I. 77 (June 9 Letter) at 1; Ex. 7, Sept. 27 Letter at 1-2.) These documents include, for example, ████████████████████████████ ████████ Although it is unlikely that these documents would be privileged as TQD claimed, its failure to either produce or log them so that Defendants can challenge any incorrect privilege assertions is improper. TQD should be ordered to promptly produce or log such documents.

The Honorable Richard G. Andrews
October 6, 2016
Page 4

Respectfully,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)

JY/dlw
Enclosures
cc:     Clerk of Court (Via Hand Delivery; w/ encl.)
         All Counsel of Record (Via Electronic Mail; w/ encl.)

# Exhibit I

1        UNITED STATES DISTRICT COURT

2        FOR THE DISTRICT OF DELAWARE

3

4    TQ DELTA LLC,                :    CA NO. 16-611-RGA

5              Plaintiff,         :    15-612-RGA,15-613-RGA

6                                 :    15-614-RGA,15-615-5GA

7        v.                            15-616-RGA

8                                 :

9    COMCAST CABLE COMMUNICATIONS :    October 11, 2016

10   LLC, et al.,                 :

11                                :

12             Defendants,        :    9:06 o'clock a.m.

13   ...........................:

14

15        TRANSCRIPT OF DISCOVERY DISPUTE

16    BEFORE THE HONORABLE RICHARD G. ANDREWS

17        UNITED STATES DISTRICT JUDGE

18

19

20   APPEARANCES:

21

22   For Plaintiff:    FARNAN LLP

23                     BY:  MICHAEL J. FARNAN, ESQ

24                          -and-

25                     MCANDREWS, HELD & MALLOY LLP

```
 1                        BY:  SCOTT P. MCBRIDE, ESQ

 2                        BY:  RAJENDRA A. CHIPLUNKAR, ESQ

 3

 4

 5    For Defendants:     MORRIS, NICHOLS, ARSHT & TUNNELL

 6                        BY:  JENNIFER YING, ESQ

 7                                  -and-

 8                        ORRICK HERRINGTON & SUTCLIFFE LLP

 9                        BY:  ALEX V. CHACHKES, ESQ

10                        Counsel for Defendant DirecTV

11

12                        MORRIS, NICHOLS, ARSHT & TUNNELL

13                        BY:  JENNIFER YING, ESQ

14                                  -and-

15                        DUANE MORRIS LLP

16                        BY:  COREY J. MANLEY, ESQ

17                        Counsel for or Comcast, Cox, Time Warner

18                        Cable & Verizon

19

20                        MORRIS, NICHOLS, ARSHT & TUNNELL

21                        BY:  RODGER D. SMITH, II, ESQ

22                                  -and-

23                        COOLEY LLP

24                        BY:  STEPHEN MCBRIDE, ESQ

25                        Counsel for Dish/Echostar
```

1                ROSS ARONSTAM & MORITZ LLP

2                BY:  BENJAMIN J. SCHLADWEILER, ESQ

3                      -and-

4                DUANE MORRIS LLP

5                BY:  COREY J. MANLEY, ESQ

6                Counsel for Verizon

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Court Reporter:         LEONARD A. DIBBS

25                     Official Court Reporter

1                    P R O C E E D I N G S

2

3              (The proceedings occurred at 9:06 o'clock a.m. as

4    follows:)

:05:52    5              THE COURT:  Good morning.  Please be seated.

6              This is <u>TQ Delta v. Comcast</u>, Civil Action No. 15-611,

7    plus some others.

8              Mr. Farnan, who's here with you?

9              MR. FARNAN:  Good morning, your Honor.

:06:06   10              Scott McBride and Raj Chiplunkar from McAndrews, Held &

11    Malloy out of Chicago.

12              MR. MCBRIDE:  Good morning.

13              THE COURT:  Good morning.

14              Mr. Smith.

15              MR. SMITH:  Good morning, your Honor.

16              Rodger Smith from Morris Nichols for Dish and Echostar.

17              With me today is Stephen McBride from Cooley.

18              THE COURT:  Ms. Ying.

19              MS. YING:  Good morning, your Honor.

20              Jennifer Ying from Morris, Nichols, Arsht & Tunnell on

21    behalf of Comcast, Cox, Time Warner Cable, and DirecTV.

22              I have with me Corey Manley from Duane Morris who

23    represents Comcast, Cox, Time Warner, as well as Verizon.

24              And then we have Alex Chachkes from Orrick in New York,

:06:42   25    who represents DirecTV.

1          THE COURT:  Mr. Schladweiler.

2          MR. SCHLADWEILER:  Good morning, your Honor.

3          Ben Schladweiler from Ross Aronstam on behalf of

4    Verizon along with Mr. McBride.

:06:50    5          THE COURT:  Okay.  All right.

6          So, I got these letters you sent in.

7          So, we don't have an unlimited amount of time here, and

8    I thought the one that came in that was from the defendants, it

9    was a lot easier to figure out, so let's instead do the one that

:07:10   10    comes in from the plaintiff, and we'll see if we can figure out

11    anything at all.

12          So, the first thing that's on plaintiff's list is

13    computer-generated financial reports for the accused products,

14    which apparently only involves Dish.

:07:24   15          And then I see Dish says, Exhibit E provides the

16    information that we want, so we don't even know why they're

17    arguing about this.

18          So, what's up here?

19          MR. SCOTT MCBRIDE:  Your Honor, the financial

:07:40   20    information provided by Dish and Echostar, where we had the

21    meet-and-confer, we were told that that information, the revenue

22    information, was not even tracked.  And, as of the letter, they

23    said everything had been produced, but the day before the

24    letter, they produced information, and then they continued to

:07:56   25    produce information after the letter.

1    It doesn't seem like the information is actually there.

2    And certainly with respect to Hopper and Joey, which are two of

3    the main products, the granularity that is requested is lacking.

4        THE COURT:  All right.

5        I didn't understand too much of that.

6        Who wants to respond?

7        MR. STEPHEN MCBRIDE:  Your Honor, Steve McBride for

8    Dish.

9        So, we had produced -- we produced financial

10   information over the course of the --

11       THE COURT:  Right.  I gathered the main complaint was

12   that it was not related in any particular way to the accused

13   products, whatever they might be.

14       MR. STEPHEN MCBRIDE:  So, I think we have produced

15   information on the accused products for costs and revenues at

16   this point.  One document came in after the meet-and-confer.

17   This shows the revenues broken out by --

18       THE COURT:  Is this Exhibit E?

19       MR. STEPHEN MCBRIDE:  Yes, Exhibit E.  Broken out by

20   Hopper and Joey.  And Hopper and Joey are the classes of the

21   accused products.

22       THE COURT:  All right.

23       What kind of granularity is this lacking, Mr. McBride?

24       MR. SCOTT MCBRIDE:  Yes, your Honor.

25       Mr. Chiplunkar will respond.

|  | 1 | MR. CHIPLUNKAR:  The accused products, there are about, |
|--|---|---|
|  | 2 | I want to say, ten or twelve accused products.  This is broken |
|  | 3 | down by just Hopper and Joey. |
|  | 4 | But there's a Hopper 1, there's a Hopper 2, there's a |
| :09:14 | 5 | Hopper 3.  Some products read on all of the patent claims, and |
|  | 6 | some of them relate only to maybe one of the patent families. |
|  | 7 | So, for damages purpose, we need more granularity so |
|  | 8 | that we can apportion them. |
|  | 9 | THE COURT:  So, this is the kind of information you |
| :09:30 | 10 | need.  Your complaint is that instead have just having a Hopper |
|  | 11 | column and a Joey column, there ought to be ten columns with |
|  | 12 | smaller numbers in each? |
|  | 13 | MR. CHIPLUNKAR:  Yes. |
|  | 14 | THE COURT:  Mr. McBride? |
| :09:40 | 15 | MR. STEPHEN MCBRIDE:  We can certainly go back and look |
|  | 16 | for more granularity on this. |
|  | 17 | THE COURT:  Well, I would imagine, although, I don't |
|  | 18 | know for sure, that if you can do a Hopper column and a Joey |
|  | 19 | column, you can probably do a Hopper 1, and a Hopper 2, and a |
| :09:52 | 20 | Hopper 3, don't you think? |
|  | 21 | MR. STEPHEN MCBRIDE:  I would think so. |
|  | 22 | THE COURT:  Okay. |
|  | 23 | MR. STEPHEN MCBRIDE:  We've had some difficulty |
|  | 24 | breaking this information out. |
| :10:00 | 25 | THE COURT:  All right. |

1    If they get you that, does that then satisfy this one?

2    MR. SCOTT MCBRIDE:  Yes, I believe so, your Honor.

3    THE COURT:  Okay.

4    Mr. McBride, for the defendants, do you think for Dish,

:10:14    5    I guess?

6    MR. STEPHEN MCBRIDE:  This would only be Dish, your

7    Honor.

8    THE COURT:  Dish.

9    When can you get this information?

:10:24    10    MR. STEPHEN MCBRIDE:  Well, like I'm saying, your

11    Honor, it's been very difficult for our client to get this

12    information.  To the extent we have it, I think we can probably

13    get it within three weeks or so.

14    THE COURT:  Okay.  So, three weeks.  Today is October

:10:36    15    11th, so let's say November 1st, because that seems to be a date

16    that was in there somewhere.

17    So, try hard to get your client to produce this.  If

18    you can't produce it by November 1st, because your client

19    actually swears it cannot be done, make sure your client

:10:52    20    actually produces a Declaration to that effect --

21    MR. STEPHEN MCBRIDE:  Yes, your Honor.

22    THE COURT:  -- okay?

23    All right.

24    So, the next things on the list here are the

:11:04    25    Interrogatories No. 3 and 4 seem to go together.

1    And it seems to me that the general gist of the

2  responses to plaintiff's request here are that your contentions

3  are poor, so don't expect a whole lot from the defendants.

4    Is that the general flavor of what we've got here?

:11:28    5    MR. CHACHKES:  With some additional footnotes, but,

6  yes, your Honor.

7    THE COURT:  All right.

8    Mr. McBride, or Mr. Chiplunkar, what do you have to say

9  about this?

:11:36    10    MR. CHIPLUNKAR:  So, with respect to 3, these

11  infringement contentions that are fairly detailed, some of them

12  are up to 60 or 70 pages.

13    THE COURT:  Well, sometimes the length of pages doesn't

14  necessarily actually mean much.

:11:50    15    MR. CHIPLUNKAR:  But with the sections, the important

16  sections highlighted, that's exactly the point of why we believe

17  that the products infringe the claims.

18    THE COURT:  And, so, one of their complaints is, you

19  don't actually do it on the products, you do it on the

:12:04    20  standards?

21    MR. CHIPLUNKAR:  Yes.

22    THE COURT:  Is that right?

23    MR. CHIPLUNKAR:  We have cited to the standards, that's

24  right, your Honor.

:12:12    25    THE COURT:  So, in terms of their hundreds of products,

1    or however many -- I thought I saw that number somewhere, but I

2    could be wrong -- there are no infringement contentions

3    identifying how their particular products read on the claims,

4    right?

:12:32    5          MR. CHIPLUNKAR:  The information is still coming in.

6    We're getting test results from the defendants that actually say

7    that the product practices this portion of the standards.  And

8    we will update our infringement contentions to exact -- to cite

9    to those test results, when we have a complete set of test

:12:48    10    results for each of the accused product.

11          THE COURT:  But right now you don't really have --

12    haven't made contentions for any of the products that are

13    actually products specific, right?

14          MR. CHIPLUNKAR:  We have.  Our other pleading cover

:13:02    15    sheet identifies every product, and sets forth which products

16    infringe which family of patents.  And then because they say

17    that the products comply with MoCA 1 -- 1.0, for example, by

18    virtue of them complying it with MoCA 1.0, for example, they

19    practice the standard, and that's how our infringement

:13:22    20    contentions are set forth today.

21          THE COURT:  All right.

22          Do you ever, in this case, expect to have any

23    infringement theories that are beyond your product says it

24    practices this standard, and this standard reads on the -- on

:13:34    25    the patents cover the same thing as the standard?

1       MR. CHIPLUNKAR:  Yes, we will supplement.  We will

2   point to -- as of now, based on the information that we received

3   from the defendants, and we're getting additional information

4   from the box makers, we intend to -- we plan to update our

:13:54   5   infringement contentions to point to the test results on a

6   product-by-product basis and say, for example, the Joey passes

7   test one, which you know, test one maps to that particular

8   portion of the standard, so we will do it on a product-by-

9   product basis.

:14:10   10       THE COURT:  Okay.

11       So, I think the case is that on whether or not the

12   asserted claims read on the accused products, that they're

13   right.  Until you have contentions that the products identified

14   -- you've got to go first on this.

:14:32   15       And, so, from what you're telling me, you really

16   haven't done that yet.

17       So, I think the main issue here is more the second one,

18   Interrogatory No. 4, which is whether the asserted claims read

19   on the MoCA standard, which is what I understand you have done

:14:46   20   already in your contentions, right?

21       MR. CHIPLUNKAR:  Yes.

22       THE COURT:  All right.

23       Who is addressing this for the defendants?

24       MR. MANLEY:  Your Honor, Corey Manley.

:14:58   25       And you're correct, this does overlap with No. 3, so

1    Mr. Chachkes may have something to contribute as well.

2         But, really, the main issue here is, is you're right.

3    The only relevance of the information being sought in

4    Interrogatory No. 4, which is whether the asserted claims read

:15:16    5    on the MoCA standard is -- goes to infringement in the case.

6         And defendants, in response to Interrogatory No. 3,

7    have provided a list of numerous reasons why the standard is not

8    practiced by the claims.

9         So, we believe that although those -- that information

:15:38    10   isn't set forth in Interrogatory No. 4, it incorporates by

11   reference a response to Interrogatory No. 3, and Interrogatory

12   No. 3 does contain this information.

13        THE COURT:  So it's not -- so what you're saying is,

14   your response as to No. 3, provide the information that's

:15:58    15   requested by No. 4?

16        MR. MANLEY:  Correct.  And Interrogatory No. 4 is

17   really just a subset of the information sought by Interrogatory

18   No. 3, and we've provided that in response to Interrogatory 3.

19        THE COURT:  All right.

:16:12    20        What do you have to say about that?

21        MR. SCOTT MCBRIDE:  Well, Interrogatory 4 and

22   Interrogatory 3 do seek different information.

23        Interrogatory 4 seeks a comparison of the asserted

24   claims with the MoCA standard.  They are refusing to provide

:16:26    25   that information.

THE COURT:  I think he just said that they provided

that in Interrogatory No. 3.

Did I misunderstand what you said, Mr. Manley?

MR. MANLEY:  No, that's exactly right.  We have

:16:34   provided it.  We've identified specific claim limitations that

we believe are not practiced by the standard.

And we found that for each patent and we have provided

that information.

THE COURT:  What do you have to say about that?

:16:48   MR. SCOTT MCBRIDE:  What they don't say is, they don't

say, okay, these products read on the standard, and then they

lack these elements, because the claims don't cover the

standard.

That is what is being sought in Interrogatory 4 is, do

:17:00   the claims read on the standard or not?

And with respect to Interrogatory No. 3, they don't

cite the documents, they just have a litany or a list of claim

elements.

THE COURT:  Okay.  So, let's just try to do this in

:17:12   small pieces.

In response to Interrogatory No. 3, they provide their

positions on whether or not the asserted claims read on the

standards, but they don't provide any backup for that?

MR. MCBRIDE:  I don't think they say whether or not the

:17:34   claims read on the standard on 3.  I think they say whether or

1    not the claims read on the products in Interrogatory No. 3.

2         So, I don't think what they're saying is a hundred

3    percent correct.

4         THE COURT:  Hold on a minute.

:18:14

5         So I'm pointing to Exhibit G with a lot of bullet

6    pointed things in response to Interrogatory No. 3, and lots of

7    things in quotations, which I assume are part of the patents?

8         MR. MANLEY:  Those would be specific claim limitations

9    that are being identified that are not practiced by the standard

:18:36

10   or the products.

11        THE COURT:  All right.

12        So, one of the sentences here -- and maybe it's the way

13   they're written -- actually, I have response to Interrogatory

14   No. 3 in front of me, which is four, five -- about five pages

:18:58

15   long.

16        At least part of it does seem to me maybe that if what

17   you're saying is, it doesn't meet the standards -- actually, let

18   me go back just a second.

19        Mr. Manley, I take it that plaintiffs have provided

:19:28

20   contentions -- and, you know, I don't want to argue about the

21   details -- but they have provided contentions that provide some

22   information as to why they think the patent claims read on the

23   standards, right?

24        MR. MANLEY:  That's correct.

:19:46

25        THE COURT:  And, so, you acknowledge that you should be

1    providing some information as to why, and you -- where you

2    disagree with that, right?

3            MR. MANLEY:  Correct.  And we believe we have.

4            THE COURT:  Okay.

:20:02    5            And, so -- and in the five pages, it appears to me that

6    there's -- can you explain to me that there's -- can you explain

7    to me, or show me in these five pages where it says that where

8    you, the defendants, are explaining what your contentions are,

9    as to why the patents and the standards are not coextensive?

:20:46    10            MR. MANLEY:  Sure.

11            So, because their infringement contentions read

12    exclusively on the standard, we have identified in response to

13    Interrogatory No. 3, which these our are disagreements with

14    their infringement contentions, the specific claim limitations

:21:04    15    for the patents which do not believe are practiced.

16            THE COURT:  Right.  There seem to be a lot of them.

17            MR. MANLEY:  Correct.  We think there are a lot of

18    issues there.

19            And we listed the specific limitations, and it is clear

:21:18    20    from those limitations, and what is in our claim construction

21    briefing, what the issues and arguments are there.  We don't

22    think there is any confusion there.

23            THE COURT:  So, the claim construction briefing is

24    something else.

:21:34    25            It's not a response to an interrogatory, right?

1    MR. MANLEY:  That's correct.

2    THE COURT:  Let's put that aside.

3    Just based on the interrogatory, what's clear here?

4    MR. MANLEY:  So, the interrogatory identifies the

:21:52    5    specific limitations that we believe are not practiced.

6    THE COURT:  Right.

7    How does that relate to the standard?

8    MR. MANLEY:  Because the claim limitations are not

9    practiced by the standard, because that's the only thing they

:22:06    10    cite to this in their infringement contentions.

11    THE COURT:  Okay.  So -- all right.

12    So, I understand what you're saying, which is, it

13    doesn't seem to be perhaps explicitly set forth here.

14    MR. MANLEY:  Yes, I think the confusing part is

:22:22    15    Interrogatory No. 3 goes to their infringement -- well, how we

16    disagree with their infringement contentions.

17    And Interrogatory 4 goes to whether the standard reads

18    on the claims.

19    And they're coextensive really because their

:22:38    20    infringement contentions are, you infringement because of the

21    standard, and they cite only to the standard.

22    THE COURT:  All right.

23    So what you're saying, for example, is on Page 4 when

24    you say the accused products in relation to the '404 patent, do

:22:54    25    not enter quote, "low power mode," unquote.

Case 1:14-cv-09064-RGA Document 874 Filed 04/07/18 Page 157 of 194 PageID #: 62880

1      You're saying the standard dose not require a low power

2   mode?

3      MR. MANLEY:  Both, yes.  The standard doesn't require

4   it, and as a result, the products don't do it either.

:23:14   5      THE COURT:  All right.

6      I believe it's the case -- let's assume for the minute

7   that that is essentially something that one could, you know,

8   essentially amend the response to say, this is what we mean, or

9   -- and I do see this incorporated by reference in Interrogatory

:23:36   10   No. 4 -- but it does seem to me, just looking at it, less than

11   clear that it's doing what you're saying it's doing.

12      Let's assume for a minute they did that.

13      What else is it that you are asking for here that you

14   are unsatisfied by?

:23:50   15      MR. MCBRIDE:  The bases for that argument, the

16   citations to document, since -- okay, we don't think it requires

17   us to do that, or what does it require instead, or what -- how

18   does the product operate?

19      THE COURT:  Because we're talking about the standards

:24:08   20   here, let's try to word it in that.  You've got a claim that

21   says "low power mode."  Presumably, the implication here is the

22   standard doesn't require a low power mode.

23      And what else is it do you expect from them on that?

24      MR. SCOTT MCBRIDE:  Citations to a document and an

:24:30   25   explanation as to why, why they contend that.

1    I think with respect to Interrogatory No. 3, does the

2    claim -- essentially does the claim read on the accused product,

3    and in Interrogatory No. 4, is the claim standard essential?

4    Well, what they said is, okay, we're supposed to

:24:48   5    decipher between their two responses, but we can't determine

6    what are they saying.

7    Does the claim not read on the product because the

8    product doesn't comply with the standard, or because the claims

9    are not standard essential?

:25:02   10    MR. CHACHKES:  If I may, your Honor?

11    THE COURT:  Sure, Mr. Chachkes.

12    MR. CHACHKES:  The plaintiffs haven't even tied the

13    product to the standard, so their contention just says, these

14    are MoCA-compliant products.  No document cites.

:25:16   15    Our -- I'm just going to speak for DTV at this moment,

16    but I'm sure the other defendants have similar issues -- our

17    product don't say, MoCA-compliant on them.  They have MoCA chips

18    in them.  And we dug and it turns out that some of these

19    functionalities don't exist in the chips, and a lot of the

:25:34   20    standard is optional.

21    So, until the plaintiffs tie the actual products to the

22    standard, it's even difficult at that point to say, here's why

23    you're wrong about the standard, because they haven't even made

24    that case yet.

:25:46   25    THE COURT:  Right.  So, part of what I think is going

:26:06

:26:52

:27:20

:27:46

:28:14

1   on, but I could be wrong is, while the two are related, they are

2   not necessarily.  They don't have to be completely

3   interdependent.

4           But you said one thing that caught my attention.

5           Do we have here the plaintiff's contentions that are

6   essentially at issue here?

7           MR. MANLEY:  I believe an exemplary example is Exhibit

8   F.

9           THE COURT:  Right.  I think I looked at this briefly.

10          (Pause)

11          So, I'm looking at plaintiffs, I guess Exhibit F, claim

12   chart 3, that starts off in multi-carrier modulation system, and

13   then there is more.

14          And there are pages -- I'm looking at Page 9, which

15   starts off at the top 4.2.1.1, transmitter reference model.

16          What's the 4.2.1.1 referring to?

17          MR. MCBRIDE:  That's a portion of the standard.

18          THE COURT:  Okay.  All right.

19          Well, so, I can't tell from this -- and I'm not going

20   to be able to tell in the next few minutes -- but it seems to me

21   that as a general principle, which my colleagues have often

22   cited, that the defendants' responses ought to be essentially

23   proportional to whatever the plaintiff's contentions are.

24          I'm not going to figure that out right now, so I'm just

25   going to say that as a general principle -- and I don't really

1  know how it plays out -- we'll figure out what to do about that

2  in a minute, or before you leave here today.

3      But, so, let's -- having said that, you know, I do

4  think based on what's said that the interrogatory, it talks

:28:38   5  about whether the asserted claims read on the accused products.

6      I don't think the standard is met there.  I can't tell

7  whether it's met as to whether the asserted claims read on the

8  MoCA standard.

9      I tend to think that plaintiffs have certainly done

:28:52  10  something in that regard, and, so, there is some response due,

11  but in terms of whether the response is sufficient, I can't

12  tell.

13      All right.

14      Let's go on to Interrogatory No. 6, which I believe is

:29:06  15  actually the last of plaintiffs.

16      And this has to do with, I think just Dish, right?

17      MR. STEPHEN MCBRIDE:  That's correct.

18      THE COURT:  You're the Dish man, Mr. McBride, right?

19      And, so, one of the things that they say is, I've

:29:22  20  already ordered this for four of the six defendants, and the

21  fifth one, DirecTV, one could infer I saw the handwriting on the

22  wall, so they went along with it without being ordered.

23      And, so, what is Dish's -- I forget.  I saw that Dish

24  had some response, but I'm forgetting what it is right now.

:29:48  25      MR. STEPHEN MCBRIDE:  Right, your Honor.

1    I think we're happy to supplement this.

2    THE COURT:  All right.

3    When are you going to do that by?

4    MR. STEPHEN MCBRIDE:  November 1st is fine.

:30:00    5    THE COURT:  All right.

6    And when you say you're going to supplement the

7    response, tell me what kind of information you're going to

8    actually provide.

9    MR. STEPHEN MCBRIDE:  So, we've agreed to provide an

:30:10    10    identification of individuals, and their response to the

11    request.

12    We've agreed to provide citations to do with additional

13    documents, many of which have been produced since the responding

14    question, and to provide more of a narrative about what the

:30:30    15    benefits associated with the MoCA products are.

16    THE COURT:  So, one of the things that I remember

17    vaguely, either from reading the letter or from memory, there

18    was talk about what I guess would be called something other than

19    direct monetary benefits.  And I think there's a reference in

:30:52    20    here to me ordering some sort of search for something that would

21    involve non-monetary benefits.

22    Actually, you know what I'm talking about, right?

23    MR. SCOTT MCBRIDE:  Yes, your Honor.

24    THE COURT:  Why don't you state for the other Mr.

:31:14    25    McBride what it is that you think I ordered before?

1    And I just want to see if they're going to be looking

2    for this, too.

3         MR. SCOTT MCBRIDE:  So, the non-monetary benefits would

4    include benefits associated with customer retention, offering a

:31:30    5    feature that the customers want or need.

6         THE COURT:  And I forget, was this sort of limited to

7    market surveys, or that kind of thing, or was it just any stray

8    e-mail where, you know, some executive says, gee, this is a good

9    thing?

:31:48    10         MR. SCOTT MCBRIDE:  That's a good question, your Honor.

11         The e-mail production is slightly separate and the

12    parties are working through identification issues, but with

13    respect to -- with respect to document production, I believe it

14    was with respect to documents that discussed the benefits of

:32:02    15    MoCA, so that would include benefits associated with MoCA,

16    including whole home DVR and the benefits that that provides.

17         THE COURT:  All right.

18         And, so, Mr McBride, what the other Mr. McBride just

19    said, I'm -- it sort of generally strikes me as probably being a

:32:24    20    fairly accurate statement.

21         I think it came before in the context of, there was

22    talk about why did the defendants sort of get into MoCA line of

23    products.

24         And, so, I think that's the kind of document.  I

:32:52    25    remember some of the defendants said that that took place a long

1    time ago.

2              MR. STEPHEN MCBRIDE:  Yes.

3              THE COURT:  But something where management is figuring

4    out, you know, is this a good product to have or not, that sort

:33:06    5    of thing, right?

6              MR. MCBRIDE:  Yes, your Honor.

7              THE COURT:  If you could include that in what you're

8    looking for.

9              And, otherwise, are you satisfied with the promise that

:33:22    10   they will supplement?

11             MR. SCOTT MCBRIDE:  Yes, your Honor.

12             One of the concerns was that they have already

13   identified 8700 plus pages.

14             THE COURT:  Well, I think Mr. McBride said that they

:33:34    15   were actually going to call out some specific references as to

16   things that were actually relevant to this topic?

17             MR. STEPHEN MCBRIDE:  That's right, your Honor.

18             At the time we had not.

19             MR. SCOTT MCBRIDE:  That sounds adequate to me.  You

:33:46    20   know, as to documents relating to X, look at this range, et

21   cetera.  Things like that would be quite helpful.

22             THE COURT:  All right.

23             So, do you think you can do this by November 1st?

24             MR. STEPHEN MCBRIDE:  Yes, your Honor.  I think we can.

:33:58    25             THE COURT:  All right.

1       Other than the big thing that I've punted on, have I

2   address basically the concerns that are in your letter?

3       MR. CHIPLUNKAR:  Yes, your Honor.

4       MR. SCOTT MCBRIDE:  I believe so, your Honor.

:34:18      5       THE COURT:  Okay.

6       So, in the other letter -- so here's what I thought.

7       There seems to be some back and forth about whether or

8   not plaintiff had to do anything before it had all the

9   information at hand.  And there was a citation to 02 Micro

:34:46     10   International v. Monolithic Power Systems, 467 F.3d 1355,

11   Federal Circuit 2006.

12       And it was talking about the local patent rules in the

13   Northern District of California, but it said, sort of addressing

14   the issues that you've raised, that those rules, quote, "are

:35:04     15   designed to address this problem by requiring both the plaintiff

16   and the defendant in patent cases to provide early notice of

17   their infringement invalidity contentions and proceed with

18   diligence in amending those contentions when new information

19   comes to light in the course of discovery," close quote.

:35:22     20       And I sort of get the sense that that's where we're at

21   with -- I thought with the common Interrogatories 9 and 10.

22       Hold on a minute.

23       And, so, plaintiffs, they say that you basically have

24   not responded to this interrogatory relating to substance, No.

:36:18     25   9, is that right?

1    MR. SCOTT MCBRIDE:  And we've agreed to -- and we've

2    stated it's premature at this time -- in light of the fact that

3    there hasn't been a claim construction -- but also --

4    THE COURT:  Well so, that doesn't make it premature,

:36:34    5    because actually one of the reasons why you do claim

6    construction is it helps to flesh out what your points of

7    dispute are.

8    And, so, that's the reason why, I think, you need to do

9    something.  I understand claim construction is imminent, so it

:36:48    10    may not actually help with that.  Maybe it will make some points

11    moot, so I guess that would be a help.

12    But you can't say, we're not doing an infringement

13    contention until after we get claim constructions.  If you have

14    a particular -- you know, and when I end up construing things

:37:06    15    the way you didn't expect, that's when you perhaps change your

16    infringement contentions or vice-versa, or invalidity

17    contentions.

18    But it's not good enough to just say, no, we're waiting

19    to see how the judge construes these things.

:37:22    20    MR. SCOTT MCBRIDE:  There are more reasons as well,

21    your Honor.

22    The contentions, themselves, don't have -- and this may

23    speak to your issue of proportionality -- don't have any level

24    of detail with respect to obviousness, or how references should

:37:34    25    be combined, or things of that nature.

:37:54

1    So, if we're talking about just saying, okay, which --

2    and also we have a situation where I believe your Honor had

3    ordered, and the parties have been trying to negotiate, but have

4    been unsuccessful so far in reducing the number of prior art

5    references per claim.  We already have four in place with

6    respect to the reduction of asserted claims, and the parties

7    have been following that.

8    But that's something else that is making this more

9    burdensome than it should be.

:38:04

10    But if the answer is to say, okay, with respect to the

11    references they've identified, and proportionally you can

12    identify which references don't include which limitations,

13    that's something that the plaintiff can do.

14    If you are talking about something beyond --

:38:22

15    disproportional to what has been provided, it's not appropriate

16    at this time.

17    THE COURT:  All right.

18    Well, who's speaking for this on the defendants side?

19    MR. CHACHKES:  I am, your Honor.

:38:30

20    THE COURT:  Yes, Mr. Chachkes.

21    MR. CHACHKES:  So, that part I think we're basically on

22    the same page, so we have extensive invalidity contentions.

23    Here's the prior art.  Here's the claim limitation.  Here in the

24    prior art is that claim limitation.

:38:50

25    So, one thing we are looking for, and I think it sounds

1    like that's what we'll be provided is, tell us if you disagree.

2           If we say, claim limitation, you know, first is in this

3    prior art, it tell us if you disagree.

4           So that is most of what we're looking for.

:39:04    5           We do set out a non -- an obviousness case which

6    requires the combining of different references.  If plaintiff

7    disagrees with us as to these two references can be combined for

8    the following reasons, which is set our in our invalidity

9    contentions, we would like to know that as well.

:39:26    10           THE COURT:  To the extent they say, this limitation

11    appears in this reference, you know, that's a target.

12           Either you agree or you disagree, right?

13           MR. MCBRIDE:  Yes, your Honor.  And certainly expert

14    testimony later in the case may help flesh that out, but, yes.

:39:50    15           THE COURT:  Right.  But for various reasons we're not

16    waiting for expert testimony to find out what you think the case

17    is.

18           You know, I'm a little hazier on the obviousness,

19    because, you know, if they say, here's reference A and here's

:40:10    20    reference B, and there's a motivation to combine these, you

21    know, I think that is getting the things pretty much core expert

22    sort of testimony, and, so, I can understand why it's harder to

23    respond to that.

24           In terms of whether limitations appear in prior art

:40:36    25    that they are citing, I think you need to respond on the merits,

1    all right?

2            MR. SCOTT MCBRIDE:  Yes, your Honor.

3            THE COURT:  So when can you do that by?

4            MR. SCOTT MCBRIDE:  November 15th, your Honor.

:40:52    5            THE COURT:  All right.

6            MR. STEPHEN MCBRIDE:  And, your Honor, one additional

7    aspect is the fact of the art being prior art, so the date we've

8    identified would be great if we could get the response to that

9    as well, whether it's actually prior art.  That's something

:41:16    10   we've established in our invalidity contentions.  It's a fact

11   and not something that is subject to expert testimony.

12           THE COURT:  Well, it may or may not be.

13           In any event, I think it's something that is certainly

14   -- it is a factual question, whether or not something is or is

:41:34    15   not prior art.  And most of the time those issues get resolved,

16   because issues are pretty obvious it either is or it isn't.

17           So, to the extent that that is in there, that does seem

18   like something that there could be -- you know, without knowing

19   exactly how you said it, but if you say the priority art date

:42:00    20   is, you know, June 1, 2000, it seems like something that you

21   ought to be able to say, yes, we agree or, no, we don't.  We

22   think the priority date is X, or we don't agree with that date,

23   but we agree it's prior art.

24           MR. CHACHKES:  Or that it's public enough.  There is

:42:20    25   certain prior art --

1      THE COURT:  Whatever it is you've alleged.

2      You know, but that that does -- that is something that

3      again, that is a thing that can be addressed now.  We don't have

4      to wait until the end of case to address it.

5      MR. SCOTT MCBRIDE:  Yes, your Honor.

6      THE COURT:  Okay.

7      So, that's November 15th.

8      On the secondary consideration of non-obviousness, if

9      you are busy asserting that these things exist, you need to say

10     what you have right now that you think supports those

11     assertions.

12     MR. SCOTT MCBRIDE:  Understood, your Honor.

13     THE COURT:  So, November 15th for that, too?

14     MR. SCOTT MCBRIDE:  Yes, your Honor, with the

15     understanding that some of the information is not yet available

16     to dig it up, and actually we would expect to supplement

17     information -- additional information as that becomes available

18     as well.

19     THE COURT:  Yeah, I mean all of this is pretty much

20     without prejudice to supplementation as you get additional

21     information.

22     All right.

23     So, Common Interrogatory No. 11.  I had the impression

24     that was moot, because the defendants say they provided all the

25     marking information they have.  There is no more.

|     |                                                                        |
| --- | ---------------------------------------------------------------------- |
| 1   | MR. SCOTT MCBRIDE:  That's correct, your Honor.  That's                 |
| 2   | definitely plaintiff's position.                                       |
| 3   | THE COURT:  That it's moot?                                             |
| 4   | MR. SCOTT MCBRIDE:  Yes, your Honor.                                    |

:43:38

|     |                                                                        |
| --- | ---------------------------------------------------------------------- |
| 5   | THE COURT:  Oh, I'm sorry.  I'm getting reversed.                       |
| 6   | Who's asking for what?                                                  |
| 7   | You provided all the information?                                       |
| 8   | Okay.                                                                   |
| 9   | Isn't it moot?                                                          |

:43:48

|     |                                                                        |
| --- | ---------------------------------------------------------------------- |
| 10  | MR. CHACHKES:  No, your Honor.                                          |
| 11  | So, the patents used to belong to a company called                     |
| 12  | Aware.  Aware licensed them.  Products were made were made under        |
| 13  | those licenses.  Those products were not marked.  Those products       |
| 14  | were DSL products.  TQ Delta has alleged that DSL infringes             |

:44:06

|     |                                                                        |
| --- | ---------------------------------------------------------------------- |
| 15  | those patents as well, so there's a marketing defense.                 |
| 16  | What -- we got in response -- so marking is also the                    |
| 17  | plaintiff's burden.  This is something they affirmatively have         |
| 18  | to state.                                                               |
| 19  | THE COURT:  Right.  But, I mean, so they say, we                        |

:44:20

|     |                                                                        |
| --- | ---------------------------------------------------------------------- |
| 20  | provided everything we have on this.                                    |
| 21  | MR. CHACHKES:  They haven't provided their contentions.                 |
| 22  | They provided their discovery, and we have discovery from Aware         |
| 23  | as well, but they haven't told us.                                      |
| 24  | So they cited 33D and they said, look at those                          |

:44:34

|     |                                                                        |
| --- | ---------------------------------------------------------------------- |
| 25  | licenses.                                                               |

1      Now, when we read their interrogatory, our conclusion

2  is, you can't make the marking defense, because you have no --

3  nothing to support it.

4      If plaintiffs agree, they can tell us that in their

:44:48   5  contentions.

6      If they disagree, what we're go seeking to avoid is a

7  month from now, or weeks before discovery ends, some new

8  argument why they think they've satisfied their marking

9  requirements that we didn't anticipate, because they didn't

:45:04   10  answer their interrogatory.

11      We literally have nothing from them on that

12  interrogatory whether they think marking is applicable, where

13  they think it breaks down, if it does break down, and whether

14  they've satisfied it.

:45:18   15      THE COURT:  Okay.  You know, one of the disadvantages

16  sometimes of having a fairly limited written submission is you

17  miss a word here and there.

18      Then you say, they should be required to either drop

19  the claim or articulate its contention.

:45:34   20      Whereas, I was thinking it to be more of a production

21  of factual information.

22      So, I also recall -- well, never mind.

23      Do you have a contention that these products have been

24  marked?

:45:50   25      MR. SCOTT MCBRIDE:  I think, without additional

1  information, I'm not sure we can provide that for all the

2  patents, your Honor.

3          THE COURT:  All right.

4          Well, so, I think it's completely fair that you be

:46:06  5  required to make your contentions as to which products have been

6  marked for which patents, and say what it is you're relying

7  upon, because this seems like the sort of information that it

8  ought actually to be already known to you.  It doesn't require

9  expert testimony.

:46:30  10          And it would certainly, I would imagine, help everybody

11  understand where they are in terms of damages, which is that

12  marking is an issue, or is not an issue, all right?

13          So, can you put forth your contentions on that?

14          I understand the factually you have no further

:46:52  15  information, but do you think you can put your contentions forth

16  on that by November 15th?

17          MR. SCOTT MCBRIDE:  Yes, your Honor.

18          THE COURT:  All right.

19          Common Interrogatory No. 12.

:47:04  20          Oh, this is the one that wants everybody in the history

21  of the world who knows anything about the prosecution histories

22  of these.

23          I'm sorry.  I think given over the prosecution file is

24  sufficient, so I'm just going to deny that request.

:47:20  25          MR. CHACHKES:  And I think it does also ask for the

1   people at TQ Delta who wrote claims who were involved in the

2   prosecution.

3         THE COURT:  Yeah, see, I don't understand what that has

4   to do with anything.

:47:32    5         MR. CHACHKES:  I won't belabor the point.

6         THE COURT:  Okay.  All right.

7         So, then the last -- or not actually -- the next to the

8   last thing is value and valuation documents.

9         And, you know, I know we've discuss this before, have

:47:50   10   we not?

11         MR. SCOTT MCBRIDE:  We have.  I believe we have, your

12   Honor.

13         THE COURT:  So, I cannot remember.

14         Presumably, the one good indication of the value here

:48:04   15   is that TQ Delta paid some amount of money to Aware for this

16   patent portfolio, right?

17         MR. SCOTT MCBRIDE:  The parties disagree as to how

18   probative that is, but, yes, your Honor, that's correct.

19         THE COURT:  Right.  So, the parties know how much

:48:16   20   that's -- what that number is, right?

21         MR. SCOTT MCBRIDE:  They do.

22         THE COURT:  Okay.

23         You know, I'm sensitive, I think, to the fact that

24   there is some information, which arguably could be relevant to

:48:38   25   valuation, which at the same time is information that, in my

1    opinion, the defendants shouldn't have, because it sort of gives

2    them an unfavorable litigation advantage.

3        And, so, I saw in the Proposed Order, stuff about

4    including -- this is Proposal No. 5 -- quote, Including

5    plaintiff's funding entities that provided funding as part of

6    what I'm being asked to provide.

7        And I don't think the entities that are providing the

8    funding, or the amount of the funding are relevant, or likely to

9    lead to relevant information.

10       And what's more, I think they are -- I think really

11   they should be off limits unless they are really necessary, and

12   I don't think they are necessary.

13       In terms of these other things you are asking for, it

14   does strike me that if plaintiffs are busy saying to investors,

15   these patents are worth X, Y, or Z, or something else, that

16   plaintiff's evaluation of the patents is certainly something

17   that an expert would want to consider, right?

18       MR. SCOTT MCBRIDE:  It depends, your Honor.

19       If you are talking about valuation in terms of --

20   valuation in terms of, you know, this is how the litigation is

21   going, and these are the funds in the bank.

22       THE COURT:  Right.  But there's -- but there's -- you

23   know, so let's assume that there is somebody at TQ Delta who

24   says, well, let's do this, because probably all of us have done

25   this at one point or another -- you go to get a mortgage on your

1    house.

2           The bank asks you, well, what is the house worth, and

3    you put down a number.

4           That doesn't mean the house is exactly worth that

5    number, but it's a pretty good indication.

6           And, so, it strikes me that it would be the case that

7    when you're trying to raise funds, you make representations

8    about the value of the patents.

9           And, so, I don't think the actual amount of funds you

10   raise is relevant, but I think what you say about it to try to

11   raise them is relevant.

12          So, I'm inclined to say that there could be

13   communications, and other sorts of documents that do have an

14   impact on value, and I don't think it's unfair to make you

15   produce them.

16          And I guess what I'm wondering about is, do you know,

17   are there such documents?

18          MR. SCOTT MCBRIDE:  I don't know if there were such

19   documents, in terms of what we're talking about communications

20   to investors.  I don't know if there are such documents.

21          THE COURT:  Right.  All right.

22          So, I'd be inclined on the No. 5, on the proposal, to

23   order you to produce investor reports, strategic plans,

24   communications with investors or other persons related to the

25   value of plaintiff -- well, actually, I don't care so much about

1    the value of plaintiff -- but to the value of your patents.

2         Do you have an objection to me ordering you to do that?

3         MR. CHIPLUNKAR:  When they say, investor reports, are

4    we looking for -- that's a nebulous term.

:52:44    5         Are we looking for K1s, are we looking for --

6         THE COURT:  Well, presumably -- well, what are you

7    looking for?

8         MR. STEPHEN MCBRIDE:  Your Honor, we don't have any

9    financial information on the value of the patents or -- or the

:52:56    10   entity itself, which is composed of the patent, so that's what

11   we're looking for.

12        The relevant universe of the documents that would

13   provide this kind of valuation information.  It doesn't have to

14   be an investor report, but there is deposition testimony about P

:53:10    15   and L statements, and things like that, that are going out to --

16        THE COURT:  Well, so, you know, I'm not so sure P and L

17   statements are actually it.  I think we've talked before that

18   Aware licensed these patents once upon a time.  You know, that's

19   -- I assume you have that information already -- but I think --

:53:32    20   and profit and loss statements, they're not representations of

21   value.  They're just talking about income.

22        And I think we've also established that, at least since

23   TQ Delta had these patents, it hasn't licensed these to anyone,

24   so presumably it has no income, more or less, right?

:53:52    25        MR. SCOTT MCBRIDE:  That's been discussed in the past,

1    your Honor.

2          THE COURT:  Okay.  That's a good answer.

3          So, I find it hard to believe, though you never know,

4    that TQ Delta has -- I would expect TQ Delta has been making

:54:18    5    representations in some form or fashion.  I don't know what they

6    are, as to the value of the patents.

7          So, I'm going to order you to look for such things and

8    to produce them.  I'm not going to -- you know, I agree investor

9    reports is kind of a nebulous term, and that's the reason why

:54:42    10    I'm trying to tell you what I think it is that you should be

11    looking for.

12          Where you would find these things, I don't know.  I

13    don't think it's a profit and loss statement.  I don't think

14    it's how much people are actually loading or investing in TQ

:54:58    15    Delta in order to fund the company.  You know, I don't think

16    it's your bank account balance, but I do think that you probably

17    have made representations about the value of the patents.

18          And, so, I think you should produce such information --

19    you should find it and produce it.  And if you find it on -- if

:55:28    20    you -- and, so, I'm going to direct that you actually do that.

21          If it turns out that you have nothing, then you can say

22    you have nothing, but I would think you probably have something,

23    okay?

24          MR. SCOTT MCBRIDE:  Understood, your Honor.

:55:42    25          THE COURT:  All right.

1    MR. SCOTT MCBRIDE:  And that's to produce our log?

2    I mean, to the extent -- to the extent we find

3    something that falls in that category that plaintiff contends is

4    privileged, we would have to --

:55:54    5    THE COURT:  Well, the privilege is the next topic.

6    MR. SCOTT MCBRIDE:  Okay.

7    THE COURT:  What I'm saying is -- and I don't know

8    whether it's privileged or not.  But I'm not directing you to --

9    I don't think you should have to produce something that explains

:56:10    10    your financing, okay?

11    MR. SCOTT MCBRIDE:  Okay.

12    THE COURT:  All right.

13    So, then that leaves the last thing, which is the

14    privilege logs.

:56:22    15    And, honestly, I'm pretty sure that this is not

16    something that I can resolved now either.  And, as I understand

17    it, because I did recently have the status report surface on my

18    desk, and I saw that there was talk about seven privileged

19    items, or allegedly privileged items, and now I see 205 to 268,

:56:50    20    which I take to be 63 items, more or less, and 306 to 380, which

21    I take to be 74 items, more or less.

22    Can somebody -- and then there's another thing -- and

23    that's just from the patent acquisitions log -- and then there's

24    another thing about the general log.

:57:06    25    If you -- and, so, what I'd like to do is, rather than

1    talk about the merits of this, just tell me how you think I

2    should go about trying to resolved this, because I -- my belief

3    is right now I have very little information.  And when you're

4    talking about privilege, unlike some of these other things where

:57:38    5    I try to give it my best discretionary cut as to what's the

6    right thing to do, the privilege is a lot more legal question

7    than a specific factual question, and is just not very well

8    resolved in these kinds of conferences.

9          How would you like me to try to go about trying to

:57:58    10   resolve this?

11         MR. SCOTT MCBRIDE:  Aside from one of these great

12   get-togethers, I mean, I'm not sure if your Honor contemplating

13   more paper on this?

14         THE COURT:  Well, that's one possibility.

:58:10    15        MR. SCOTT MCBRIDE:  And then, in which case, the

16   parties would probably develop a factual record with respect to

17   the documents -- the claim charts and the documents in question.

18         THE COURT:  I take it, notwithstanding my assistance

19   here with some amount of the exhibits and things, my impression

:58:30    20   is, when I've done this sort of exercise before, usually people

21   are submitting Declarations, and the facts are important.

22         MR. SCOTT MCBRIDE:  Yes, your Honor.

23         THE COURT:  Do the defendants have anything to say

24   about this?

:58:48    25        MR. CHACHKES:  If there's going to be additional

1    briefing, your Honor, we probably would ask that it be

2    accelerated to some degree, because discovery is fast closing,

3    and TQ Delta has asserted privilege over everything they do;

4    accounting, finance, talking to investors.

5    THE COURT:  This is beyond the scope of what's in this

6    letter here?

7    MR. CHACHKES:  No, we've already -- we've already

8    joined that issue, and that was the subject matter of the thing

9    that was in the status conference.

10   THE COURT:  The status report?

11   MR. CHACHKES:  The status report, I'm sorry.

12   So, it might make sense to have, we could file our sort

13   of omnibus privilege motion, and get the response with the facts

14   and declaration to finish it once and for all.

15   THE COURT:  All right.

16   Well, I think it would good to essentially, quote,

17   "finish it once and for all."

18   MR. MANLEY:  I think that's accurate.  I think one sort

19   of additional point on that is that the general log point was,

20   there's the patent acquisition log, which is one issue, and then

21   the general log issue which is more, we haven't seen TQ Delta's

22   internal documents be produced or logs.

23   And we were essentially in the general log section

24   asking that they be produced, or they be logged, because there

25   has to be internal documents of some kind.

:59:04 (line 5)
:59:16 (line 10)
:59:34 (line 15)
:59:44 (line 20)
:00:04 (line 25)

1     And that may be something we can resolve today.

2          THE COURT:  We're not resolving any privilege things

3     today.

4          MR. MANLEY:  And not -- not in terms of anything could

:00:20    5     be waived, but whether that -- that TQ Delta should have to

6     product or log relevant internal documents.

7          THE COURT:  All right.

8          Well, so, you are the ones that are bringing this.

9          When would you like to file your, so to speak, omnibus

:00:34    10    paper that addresses whatever issues about privilege logs you

11    want to address?

12         MR. MANLEY:  Let me look at the calendar here real

13    quick, if that's okay?

14         THE COURT:  Yes.

:00:48    15         (Pause)

16         MR. CHACHKES:  Yes, maybe the end of next week, your

17    Honor.  We have the Markman Hearing next Tuesday, so that will

18    be a monkey wrench, so maybe at the end of next week?

19         THE COURT:  And just -- today is the 11th, the 22nd?

:01:14    20         MR. MANLEY:  21st.

21         THE COURT:  Oh, yes, today is Tuesday.

22         All right.

23         Do you think I can ask for your response two weeks from

24    then?

:01:26    25         MR. SCOTT MCBRIDE:  Yes, your Honor.

THE COURT:  Okay.  All right.

Ten business days, or two weeks, so whatever the Friday is in early November.

And because of the way these things go, I will need a reply from you all.

Can I get your reply the following Friday?

MR. CHACHKES:  Yes, your Honor.

THE COURT:  So that's what we'll do about that?

Yes, Ms. Ying?

MS. YING:  I think that Friday is Veteran's Day.

THE COURT:  It is.

So, does that mean you all are taking the day off, because I am, but that does not mean -- that does not mean that the electronic filing system will not be open.

So, if you are taking the day off, that's fine, but if you are going to be working that day anyhow, as I sometimes think these private attorneys are, then it's as good as the next day, but don't let me brow beat you one way or the other.

MS. YING:  I'm going to defer to other counsel.  I was just making the point.

MR. CHACHKES:  That's fine.

THE COURT:  Well, if you ever run for president, this will be held against you.

But thank you, Ms. Ying, for bringing that up.

THE COURT:  All right.

| | |
|---|---|
| 1 | So, then, the other thing that I deferred -- |
| 2 | MR. CHIPLUNKAR:  Excuse me, your Honor, one question. |
| 3 | The page limit, is it going -- |
| 4 | THE COURT:  Well, so, what page limit would you like? |
| 5 | (Pause) |
| 6 | MR. CHACHKES:  I think we can do ten, your Honor. |
| 7 | THE COURT:  You can have twenty.  I mean, you don't |
| 8 | have to use it.  If you don't need it, you don't need it, but, |
| 9 | you know, the details matter here. |
| 10 | How much do -- well, if I give them twenty, I'll give |
| 11 | you twenty.  You don't have to use it all either. |
| 12 | MR. SCOTT MCBRIDE:  Yes, your Honor. |
| 13 | THE COURT:  And the reply can be ten, okay? |
| 14 | All right. |
| 15 | What was the other thing that I put off here? |
| 16 | Oh, it was the standards things. |
| 17 | No, what was it? |
| 18 | MR. SCOTT MCBRIDE:  From plaintiffs, I think it was |
| 19 | Interrogatory No. 4. |
| 20 | THE COURT:  All right.  All right. |
| 21 | Is it the case that the plaintiffs have, whether it's |
| 22 | interrogatories, or contentions, or some other way, explain how |
| 23 | the patent claims match up with the standards? |
| 24 | MR. SCOTT MCBRIDE:  Yes. |
| 25 | THE COURT:  Okay. |

:03:04 (line 5)
:03:16 (line 10)
:03:24 (line 15)
:03:38 (line 20)
:04:30 (line 25)

1    MR. CHIPLUNKAR:  Yes, your Honor.

2    MR. MANLEY:  And, your Honor, we've asked a contention

3    interrogatory on that, and they said, here are your infringement

4    contentions.

:04:40  5    And, as we saw earlier, the infringement contentions

6    literally copies some language from the standards and assert it

7    without more.

8    THE COURT:  Well, so, that's a way of saying, they have

9    don't it.  Maybe they haven't done it in enough detail, but they

:05:00  10    have done it.

11    So, and they do, you know, 4.2.1.1, that's a response

12    that is referring to the standard.

13    So, you need to -- I think you need to do two things.

14    One of which is -- and this is probably easy -- but you

:05:22  15    need to make clear in the information you've already provided,

16    what part of that is saying, the patent and the standards are

17    not the same, because I think that's going to help eventually to

18    narrow down what is actually in dispute here.

19    And I guess, in fact -- I mean, that is what I think

:06:00  20    you need to do is, they've cited standards that they say are

21    covered by the patents.

22    And, so, you need to join them in the same level of

23    detail on the issues -- on what they've said.

24    The issues about products, that's for another day, when

:06:26  25    they've provided information about the products -- and you will

1    have to provide information about your view on the products --

2    but right now we're just talking about the standards.  And

3    because I think it is the case that down the road they can have

4    an infringement theory, which is the claims read on the

:06:44    5    standard, you know, a particular standard, your product

6    practices the particular standard.

7            They can connect the dots that way, right?

8            MR. STEPHEN MCBRIDE:  Potentially.

9            THE COURT:  Yeah, as a theoretical matter.

:07:00    10           So, I think getting that issue joined is helpful to the

11   eventual resolution of this.

12           And, so, with that in mind -- and I don't mean to put

13   you on the spot here -- do you understand what I'm saying?

14           MR. MANLEY:  I think so.  That's what, I think, we have

:07:24    15   tried to do, but I understand your point we could make it more

16   clear by setting forth the information in Interrogatory No. 4,

17   and saying it in a way that's clear that we're talking about the

18   standards and whatnot.

19           THE COURT:  Okay.

:07:36    20           Well, so, why don't you do that.  I doubt that this

21   will actually -- but I think that's the first thing.

22           They're saying, for example, you know, one of the

23   claims meets the standard 4.2.1.1 -- and maybe they quote some

24   language, I'm not sure what, I don't have it right in front of

:07:58    25   me -- but you need to do something that says whether or not you

1     think the claim does meet 4.2.1.1 in whatever sort of responsive

2     level of detail to what they've already said, and hopefully that

3     will advance us in the right direction.

4              MR. MANLEY:  Sure.

:08:16    5              THE COURT:  Do you think you can do that by November

6     1st?

7              MR. MANLEY:  I think so.

8              MR. CHACHKES:  I think so.

9              THE COURT:  All right.  Okay.

:08:22   10              So does that -- not may1be in the best fashion -- but

11     that addresses everything that has been raised, and we'll have

12     the privilege things briefed, okay?

13              MR. SCOTT MCBRIDE:  Yes, your Honor.

14              If I could speak to the last point just one time?

:08:36   15              THE COURT:  Yes.

16              MR. SCOTT MCBRIDE:  There was something Mr. Chachkes

17     said earlier that might be helpful to be instructive with

18     respect to our response, and that was Mr. Chachkes said that,

19     you know, some portion of the specification was optional.

:08:48   20              Well, if that's the defendants' contention, then I

21     think that's -- that's something that can be stated that would

22     be helpful.

23              The position that the defendants are taking would be

24     helpful to --

:08:56   25              THE COURT:  Well, for example, if you say meets

1  4.2.1.1., have you said that that's a mandatory portion?

2  MR. SCOTT MCBRIDE:  Not necessarily, your Honor.

3  What we've said is that that is -- that's practiced, so

4  this claim reads on that portion of the standard.

:09:18  5  They might contend, well, our product doesn't comply

6  with that portion of the standard, or our product doesn't need

7  to comply with that portion of the standard, it's optional.

8  THE COURT:  Well, and, so, it's a second there --

9  MR. CHACHKES:  So, this frames an excellent issue,

:09:32  10  which is, they haven't stated in their infringement contentions

11  that Section 1.1.  whatever is mandatory, nor have they tied

12  that section to any accused product.

13  THE COURT:  Right, right we're not talking about

14  accused -- the second part there -- but...

:09:50  15  All right.

16  So, you said that frames an excellent issue.

17  Keep going.

18  MR. CHACHKES:  So -- so, if we're to respond to that

19  issue, it would be great to hear some evidence, their evidence

:10:00  20  that this section is actually mandatory.  Not simply it exists

21  in the standard, or if somebody -- we need to know more.

22  THE COURT:  Well, you know, they're saying -- I

23  understand what you're saying, and that's not an unreasonable

24  thing to say, but in a way, I'm kind of wondering if they're

:10:24  25  saying the claim meets the standard.

1    It seems to me that it's implicit that they're saying

2  the standard is required, because it's optional, they are not

3  really saying much of anything at all.

4    And, so, if you have a view that the claim doesn't,

5  because it's optional --

6    MR. CHACHKES:  I think it's because the way burdens

7  work, because if they haven't satisfied their burden of showing

8  it's mandatory with evidence --

9    THE COURT:  Well, but the evidence would be, isn't the

10  standard -- isn't it -- you know, I understand these thick

11  documents -- don't standards themselves say what's optional and

12  what's mandatory?

13    MR. CHACHKES:  We have found that that's not the case,

14  your Honor.

15    So, for example, we'll just take "low power mode."

16    That's in some 2.0 products I understand out there in

17  the world.  The DTV products don't practice the low power mode.

18    So, whatever the standard says, whether one could or

19  could not make the argument that it's mandatory -- and I would

20  love to hear the evidence that it was -- I don't think we'd do

21  it.

22    So, this should be a two-way street, that we should get

23  an update from plaintiffs on their infringement contentions as

24  to why they think -- not merely by virtue of existing in a

25  standard -- but why they think our products have it, and then we

:10:42

:10:54

:11:08

:11:30

:11:46

1    can response proportionally.

2            THE COURT:  Right.  Well, the products, you know, that

3    would be a good thing to have that, but we don't seem to be

4    there yet.

:11:58   5            (Pause)

6            Well, hold your thought for a minute.

7            What is your response in terms of the mandatory

8    optional thing Mr. Chachkes says is not unreasonable?

9            You just say, here this, here's that.  You don't

:12:22   10   explain why -- you don't say that the standard part is

11   mandatory.  You just say it's there?

12           MR. SCOTT MCBRIDE:  Yes, your Honor.

13           And the point is for them to say that -- excuse me --

14   for the defendants to say the product doesn't comply with that

:12:44   15   portion of the standard.  I mean, for two different reasons for

16   Mr. Chachkes.

17           One is, even though the structure is there, it's not

18   actually enabled to practice, and I think that was just stated

19   with respect to 2.0.

:12:56   20           THE COURT:  Well, okay, so --

21           MR. SCOTT MCBRIDE:  We can characterize it differently,

22   but if you publish something that says it's a 2.0 product,

23   that's what plaintiffs going to contend is that you've

24   identified this is a 2.0 product.

:13:08   25           You contend that functionality is not practiced.

1   That's one reason.  A different reason would be we practice the

2   standard, but the portion you've identified is optional, and

3   that portion is not practiced by us.

4   Those are two different reasons for them to say why it

5   is that they contend that the claims, or the standard doesn't

6   read on their product.  It doesn't matter what plaintiff has

7   alleged with respect to it.  Plaintiff has alleged this is the

8   claim, it covers a standard, this is why it covers the standard.

9   Why is it that you contend you don't comply with the

10  standard that the products have been declared to be complying

11  with?

12  MR. CHACHKES:  And, so, what I heard was first, you

13  published something that says you comply with 2.0.

14  I don't believe we do, but you haven't identified it.

15  So, if they would like us to -- so, the burden is not

16  on us to say that we don't do something.  The burden is on them

17  to say, you do it, and then we respond.

18  So, if the position is, you publish something that says

19  you're MoCA-compliant, and that's all the plaintiffs are going

20  to rely on, I would like to see that document, because I know

21  DTV doesn't advertise MoCA-compliant.  So I would be interested

22  in hearing what that is, and then we can respond.

23  Until then all we can respond is, to the best of our

24  knowledge, this is not mandatory, because this is all done by

25  third parties, incidentally.

Case 1:14-cv-09064-RGA Document 74 Filed 04/07/16 Page 51 of 54 PageID #: 6329

1    And, so, it would be kind of a generic response.

2    We'd like to hear what their evidence is, then we can

3    respond.

4    MR. SCOTT MCBRIDE:  May I respond, your Honor?

:14:44    5    THE COURT:  All right.

6    MR. SCOTT MCBRIDE:  The parties have earlier in this

7    case, I think all the parties have identified to the plaintiffs

8    they've identified defendants, these are their products.  They

9    -- tell us which products comply with 1.0, tells us which

:14:58    10   products are 2.0, et cetera, and I think we got responses from

11   all the defendants.

12   So, discovery has been taken in this case that provides

13   that level of information.

14   THE COURT:  All right.

:15:06    15   That's not really, I think, notwithstanding you both

16   talked about, that's not what we're -- actually, that is not

17   actually what I was talking about right now.

18   How would one -- if the -- is the problem that the

19   standards that sort developed over time, there is some body out

:15:40    20   there, and they don't put in the standards themselves

21   necessarily, which ones are mandatory, and which ones are

22   optional, you have to figure that out from some other things

23   that they do?

24   MR. CHACHKES:  I think one of the problems here, your

:15:54    25   Honor is, there are standards and there are standards.

1    So, wireless, for example, I need my Intel router to

2    talk to a linksys something or other, and everybody has to do

3    the same thing.

4    This is a standard where one company does something

:16:12    5    internally in the home where only their own devices are talking

6    with their own devices.

7    So, everything in that sense is optional, because the

8    entertainment company, the provider of digital services, doesn't

9    need to do anything.  They don't have to talk to somebody else's

:16:32    10    devices.

11    So, the more we dig -- and we don't make our own boxes,

12    which is one of the big problems here -- so, it's very difficult

13    for us to say categorically this happens, and this happens in

14    the devices.

:16:42    15    But the more we dig the more we find, well, you know,

16    there's a chip, and there are some aspects of MoCA that were

17    complied with on the chip -- and that's all our interrogatory

18    said.  We didn't say the pieces that are involved in this case

19    are complied with on this chip.

:17:00    20    We don't know.  They don't know.  And the more we dig,

21    the more we find there's a great deal of flexibility in the

22    standard, so that's a different kind of standard case.

23    THE COURT:  All right.

24    Hold on a minute.

:17:16    25    So, in your contentions, everyplace where you've cited

1  a standard, are you contending all those standards are

2  mandatory?

3          MR. CHIPLUNKAR:  Yes, without phase scrambling those

4  boxes, it would not work.  And -- and Mr. Chachkes just

:17:30  5  mentioned that, you know, the boxes are developed specifically

6  for one vendor, if you will, but that's not the case, that's why

7  they do MoCA.

8          THE COURT:  All right.

9          So, it seems to me from the little that I've seen in

:17:48  10  the contentions that, as I said earlier, I think implicitly

11  they're saying they're mandatory.  You know, they don't cite

12  anything.

13          And you seem to have a general view as to which ones

14  are and which ones aren't.  You don't need to cite anything as

:18:14  15  to why your views are what they are, but I think that you --

16  where you think something is not mandatory, you ought to say

17  that.

18          And, you know, the parties trying to hone in on why Mr.

19  Chiplunkar says, won't work without it -- and I don't know if

:18:36  20  that is the same thing as saying it's mandatory or not -- that's

21  for another day.

22          But at the very superficial level that they've said

23  they're mandatory, so superficial, I have to read into what they

24  said.

:18:46  25          I think you should say what you think is not mandatory,

1     and the details are something, you know, would benefit from

2     further refinement down the road, but we're not at that point

3     yet, all right?

4            MR. CHACHKES:  Thank you, your Honor, yes.

:19:06    5            THE COURT:  Okay.

6            So thank you.  The transcript will serve as the Order

7     of the Court here, and I look forward to more reading from you,

8     and you say that I have some hearing with you shortly?

9            MR. CHIPLUNKAR:  A Markman.

:19:22   10            THE COURT:  When is that?

11            MR. CHIPLUNKAR:  A week from today.

12            THE COURT:  All right.

13            Well, I will read your stuff.

14            MR. SCOTT MCBRIDE:  Thank you, your Honor.

:19:28   15            MR. CHACHKES:  Thank you, your Honor.

16            MR. STEPHEN MCBRIDE:  Thank you, your Honor.

17            (The proceedings adjourned at 10:19 o'clock a.m.)

18                         *  *  *  *  *

19

20

21

22

23

24

25