IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TQ DELTA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ADTRAN, INC.,<br><br>Defendant. | Civil Action No. 1:14-cv-00954-RGA |
| ADTRAN, INC.,<br><br>Plaintiff,<br><br>v.<br><br>TQ DELTA, LLC,<br><br>Defendant. | Civil Action No. 1:15-cv-00121-RGA |

MEMORANDUM ORDER

Presently before me is Plaintiff's Motion for Reconsideration of the Court's May 21, 2018 Memorandum Opinion regarding Defendant's Motion for Summary Judgment on the License Issue (D.I. 414) and related briefing (D.I. 428, 438-1).[1]

For the reasons that follow, **IT IS HEREBY ORDERED THAT** Plaintiff's Motion for Leave to File a Reply Brief in Support of its Motion for Reconsideration (D.I.

---

[1] All citations to the docket are to No. 14-954. The Memorandum Opinion may be found at D.I. 398. I refer to Adtran, Inc. as "Defendant," and TQ Delta, LLC as "Plaintiff." However, TQ Delta is the plaintiff in its patent infringement action against Adtran (No. 14-954), and Adtran is the plaintiff in its declaratory judgment action against TQ Delta (No. 15-121).

1

438) is **GRANTED**; and Plaintiff's Motion for Reconsideration (D.I. 414) is **DENIED**, as to the new evidence, and **GRANTED**, as to the May 21, 2018 Memorandum Opinion. (D.I. 398). Plaintiff's Motion is also **DENIED**, as to overbreadth, because there is nothing to reconsider. As Defendant notes, "The Court's ruling says nothing about Broadcom chips, and does not suggest or imply that those chips are licensed," and Defendant "does not contend that the Broadcom chips are licensed under the Lantiq/Aware license." (D.I. 428 at 10).

## I. Legal Standard

The purpose of a motion for reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999). "A proper Rule 59(e) motion . . . must rely on one of three grounds: (1) an intervening change in law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010).

## II. New Information

Plaintiff argues, "Newly discovered evidence indicates . . . that the Accused Products that use a Lantiq chipset, use an unlicensed Adtran-created chip to provide the core DSL bonding functionality claimed by the Family 2 patents." (D.I. 414 at 1-2).

In a September 1, 2016 response to Plaintiff's request to produce source code, Defendant stated, "Source Code directed to 'DSL functionality' is chip-level Source Code" that should "be obtained from such third party xDSL chip manufacturers[.]" (D.I. 415 at ¶¶ 28-29). Similarly, in a September 29, 2015 response to Plaintiff's Interrogatory No. 2, which asked Defendant, "For

2

each Accused Product, state and explain with particularity each reason why Defendant contends that such Accused Product does not infringe . . . ," Defendant stated,

> Further, [Plaintiff's] allegations regarding infringement of the Patents-in-Suit . . . are directed towards internal structures, methods, processes, functions, and capabilities of DSL transceivers, which are not designed or manufactured by [Defendant] and the internal structures, methods, processes, functions, and capabilities of which are not known or largely not known by [Defendant].

(D.I. 415 at ¶ 25) (emphasis omitted). Additionally, in its September 2015 non-infringement contentions for claim 17 of the '881 patent, Defendant asserted that Defendant "ha[d] no information in its possession, custody, or control regarding whether [the 'plurality of bonded transceivers'] limitation is met by any accused . . . product." (*Id.* at ¶ 26).

On February 26, 2018, Plaintiff's counsel asked Defendant's counsel, "whether [Defendant] will produce, in accordance with the provisions of the Protective Order, the requested source code." (D.I. 415 at ¶ 30). The parties then held a meet and confer on March 7, 2018, where Defendant informed Plaintiff for the first time that Defendant had in its possession Defendant-created source code "related to the DSL bonding functionality of the Accused Products." (*Id.* at ¶ 32).

"On May 8, 2018, [Defendant] produced a listing of code required by the Protective Order that identified over 100 source code files." (D.I. 414 at 3 (citing D.I. 415 at ¶ 41)). As a result, Plaintiff argues that it only learned on May 11, 2018, that Plaintiff "created its own code to perform the accused DSL bonding functions."[2] (D.I. 414 at 3 (citing D.I. 416 at ¶ 6)). More specifically, Plaintiff says it learned that "ADTRAN-created source code is used to program a

---

[2] Defendant says it made this ADTRAN-created bonding code available to Plaintiff by April 25, 2018. (D.I. 428 at 4 (citing D.I. 415, Exh. 12)). Plaintiff says Defendant produced the code on May 8, 2018. (D.I. 414 at 3 (citing D.I. 415 at ¶ 41, Exh. 15)). Defendant cites to an email sent on April 12, 2018 indicating that it "will commit to making the bonding code available . . . by April 25." (D.I. 415, Exh. 12). Plaintiff cites to an email sent on May 8, 2018, identifying the code. (D.I. 415, Exh. 15). Accordingly, I find that Plaintiff obtained access to the code on May 8, 2018.

3

field programmable gate array ('FPGA') chip to provide 'DSL bonding' capability," and "[n]either the FPGA nor the DSL Bonding Code used to program is made or sold by Lantiq." (*Id.*). Plaintiff argues that this information means Defendant's "Accused Products are not 'licensed' to at least the Family 2 patents." (D.I. 414 at 3).

However, Defendant argues that Plaintiff "first hinted at" its theory "more than two years ago in May 2016" by asserting that the Accused Products were licensed "only to the extent" that the "functionality [is] provided by such Lantiq chipset." (D.I. 428 at 2) (emphasis omitted). Thus, says Defendant, Plaintiff waived the argument that the Family 2 patents are not licensed because the Lantiq chips do not provide the infringing functionality. (*Id.*). Defendant also argues, "Since March 2015, [Defendant] has produced numerous documents showing that its products perform bonding with the involvement of FPGAs." (D.I. 428 at 3 (citing D.I. 431-1, Exh. 3; D.I. 431-2, Exh. 4-8)). Defendant does not argue that these documents show FPGAs programmed with Defendant-created source code. (*See generally* D.I. 428).[3],[4]

Plaintiff does not account for the nearly-18-month gap between Defendant's September 1, 2016 communication, and Plaintiff's February 26, 2018 communication asserting for the first time that Defendant's response was deficient. Even though Plaintiff did not receive access to the "new evidence" until May 8, 2018, that delay is primarily the result of Plaintiff's own actions.[5]

---

[3] Defendant also argues, "Even if this [new information] was relevant on reconsideration, [Plaintiff's] argument fails on the merits," because the Family 2 patents are exhausted. (D.I. 428 at 6). In light of my conclusion, I need not consider Defendant's argument.

[4] Defendant cites *Proctor & Gamble Co. v. Paragon Trade Brands, Inc.*, 15 F. Supp. 2d 406, 415 (D. Del. 1998), for the proposition that under Rule 59(e), evidence is "new" only if it (1) was discovered after the ruling, and (2) "could not have been discovered [earlier] through the exercise of due diligence." (D.I. 428 at 4). However, that case involved evidence discovered before trial, rather than during discovery. Accordingly, *Proctor & Gamble* does not apply.

[5] I will grant Plaintiff's Motion for Leave to File a Reply Brief in Support of its Motion for Reconsideration. (D.I. 438). The Court may allow a reply brief where "new evidence, facts, or arguments [are] presented" in the response to the Motion to Reconsider. *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 2017 WL 3888228, at *1 (D. Del. Sep. 6, 2017). Plaintiff notes that Defendant made new arguments and cited five new documents in its response. (D.I. 438 at 2). I therefore consider Plaintiff's reply brief. (D.I. 438-1). However, the arguments laid out in Plaintiff's reply brief about Defendant's FPGA

4

The time to claim that Plaintiff's relevant discovery production has not been provided is before the Court rules, not after. I will therefore **DENY** Plaintiff's Motion for Reconsideration (D.I. 414), as to the "new evidence."[6]

### III. May 21 Summary Judgment Opinion

In the May 21, 2018 Memorandum Opinion, I found,

> In sum, any patent that applies to one of the seven listed xDSL standards is licensed. Any patent that does not apply to one of the seven listed xDSL standards is unlicensed. Any patent that applies to both listed and unlisted xDSL standards is licensed.

(D.I. 398 at 10). Plaintiff agrees that the Court "correctly interpret[ed] the relevant provisions" of the Lantiq License. (D.I. 415 at 7). However, Plaintiff argues that the Disputed Patents[7] do not "apply to" listed xDSL standards. For example, Plaintiff asserts that Defendant "infringes Claim 30 of U.S. Patent No. 8,595,577, by making, using and selling a Central Office . . . product with the model name TA 5000 VDSL2 32-Port AM." (D.I. 415 at 7). However, argues Plaintiff, no claim of the '577 patent applies to VDSL2, a listed xDSL standard. Therefore, even though the product against which the '577 patent is asserted complies with both VDSL2 (a listed xDSL standard) and G.inp (a non-listed xDSL standard), the '577 patent does not itself apply to one of the seven listed xDSL standards. Defendant does not contest Plaintiff's factual

---

disclosures do not impact my conclusion. Furthermore, even if Plaintiff is correct in "believ[ing] that [Defendant] still has not produced all of the code that runs on the FPGAs," that fact does not explain Plaintiff's 18-month delay. (D.I. 438-1 at 2).

[6] Plaintiff objected to Defendant's Motion for Leave of Court to File a Motion for Summary Judgment on the License Issue, but not on the basis that Plaintiff needed more discovery or anything other than parol evidence relating to contract interpretation. (D.I. 193). Plaintiff also made no objection in its merits briefing. (D.I. 255). Therefore, the Court properly considered Defendant's Motion for Summary Judgment on the License Issue (D.I. 231). Fed. R. Civ. P. 56(d).

[7] The "Disputed Patents" are U.S. Patent Nos. 7,453,881, 7,809,028, 7,978,706, 8,422,511, 7,796,705, 8,335,956, 8,407,546, 8,468,411, 8,645,784, and 8,595,577. (D.I. 232 at 6). These patents constitute Families 2, 8, and 9. (D.I. 335; D.I. 390).

5

representations in its response. (D.I. 428 at 8-10). Rather, Defendant re-argues issues of contract construction. (*Id.*).

I agree with Plaintiff. The '577 patent does not itself apply to one of the seven listed xDSL standards, and I understand the Disputed Patents not to apply to any of the seven listed xDSL standards. In the May 21, 2018 Memorandum Opinion, I took the Disputed Patents to apply to at least one of the seven listed xDSL standards. (D.I. 398 at 10-11). Therefore, there was an error of apprehension in the Memorandum Opinion. The '577 patent and the rest of the Disputed Patents have not been shown to be licensed.

Accordingly, the Court will **GRANT** Plaintiff's Motion for Reconsideration (D.I. 414). Having reconsidered the motion, for the reasons stated, I **DENY** Defendant's Motion for Summary Judgment on the License Issue (D.I. 231), but only as to the "Disputed Patents."[8]

Entered this 3 day of July, 2018.

United States District Judge

---

[8] Plaintiff does not ask the Court to reconsider the Court's grant of Defendant's Motion for Summary Judgment on the License Issue, as to the twenty-eight Patents-in-Suit asserted against products that comply with the G.992.3 [ADSL2], G.992.5 [ADSL2+], and/or G.993.2 [VDSL2] standards.