IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TQ DELTA, LLC,<br><br>       Plaintiff,<br><br>v.<br><br>ADTRAN, INC.,<br><br>       Defendant. | Civil Action No. 14-954-RGA |
| ADTRAN, INC.,<br><br>       Plaintiff and<br>       Counterclaim Defendant,<br><br>v.<br><br>TQ DELTA, LLC,<br><br>       Defendant and<br>       Counterclaim Plaintiff. | Civil Action No. 15-121-RGA |

MEMORANDUM OPINION

Brian E. Farnan and Michael J. Farnan, FARNAN LLP, Wilmington, DE; Peter J. McAndrews (argued), Timothy J. Malloy, Thomas J. Wimbiscus, Sharon A. Hwang, Paul W. McAndrews, and Anna M. Targowska, MCANDREWS, HELD & MALLOY, LTD., Chicago, IL, attorneys for Plaintiff TQ Delta LLC.

Kenneth L. Dorsney, MORRIS JAMES LLP, Wilmington, DE; Garland Stephens (argued), Melissa L. Hotze, Justin L. Constant and Rene E. Mai, WEIL, GOTSHAL & MANGES LLP, Houston, TX, attorneys for Defendant Adtran, Inc.

August 15, 2019

*[signature]* 
ANDREWS, U.S. DISTRICT JUDGE:

Currently pending before the Court are Defendant's Motion for Summary Judgment on License of the Disputed Patents (D.I. 518)[1] and Plaintiff's Cross-Motion for Summary Judgment on the License Issue. (D.I. 526). The parties have fully briefed the issues. (D.I. 519, 527, 536, 546). I heard oral argument on June 14, 2019. (D.I. 617). After clarifying my construction of the License, I asked the parties to provide letters addressing the effect of the clarified construction on the remaining summary judgment issues. (D.I. 674, 675). The parties have submitted their letters. (D.I. 688, 689, 709, 715).

## I. BACKGROUND

The motions arise from an ongoing dispute between the parties as to ten of the Patents-In-Suit (the "Disputed Patents").[2] I summarized the relevant background in my May 21, 2018 and July 23, 2019 memorandum opinions on the license issue and incorporate that background here. (D.I. 398 at 1-2; D.I. 674 at 2-4).

In my July 23, 2019 Memorandum Opinion, I clarified my construction of the license, stating,

> any patent that falls within the scope of the positive license grant that is used for or could be used in conjunction with one of the seven listed xDSL standards is licensed. Any patent that cannot be used for or in conjunction with one of the seven listed xDSL standards is unlicensed. Any patent within the scope of the positive license grant that is used for or can be used in conjunction with both listed and unlisted xDSL standards is licensed.

---

[1] All docket item citations refer to C.A. No. 14-954 unless otherwise noted.
[2] The parties refer to these ten patents as the "Disputed Patents," because they involve a dispute about contract construction. I adopt this terminology. The Disputed Patents are U.S. Patent Nos. 7,453,881, 7,809,028, 7,978,706, 8,422,511, 7,796,705, 8,335,956, 8,407,546, 8,468,411, 8,645,784, and 8,598,577. (D.I. 232 at 6).

1

(D.I. 674 at 11). The parties have now responded to this construction and addressed its impact on the remaining summary judgment issues, including whether the Disputed Patents are licensed under the License Agreement.

The Disputed Patents can be subdivided into two groups based on which ITU-T standard, if complied with, is alleged to require infringement. The G.bond patents-in-suit are U.S. Patent Nos. 7,453,881, 7,809,028, 8,422,511, and 7,978,706. (D.I. 689 at 2). The G.inp patents-in-suit are U.S Patent Nos. 7,796,705, 8,468,411, 8,595,577, 8,407,546, 8,645,784, and 8,335,956. (*Id.* at 3).

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

## III. DISCUSSION

### A. G.bond Patents-In-Suit

The parties agree that the G.bond patents-in-suit are not carved out of the license grant under the clarified construction, i.e., they are licensed. (D.I. 688 at 3-4; D.I. 689 at 2). However, Plaintiff argues that Defendant has failed to prove that the license exhausts Plaintiff's patent rights with respect to Defendant. (D.I. 689 at 2).

Plaintiff attempts to revive an argument that I have already rejected. (D.I. 448 at 2-5; D.I. 496 at 3 n.2). I declined to reconsider my original opinion on Defendant's summary judgment motion based on the purported new information relating to exhaustion. Plaintiff's initial opposition to Defendant's motion for summary judgment did not mention exhaustion. (D.I. 255). In addressing Plaintiff's motion for reconsideration, I determined that the delay in receiving the "new evidence" related to exhaustion was "primarily the result of Plaintiff's own actions" and refused to reconsider the original motion on those grounds. (D.I. 448 at 4-5). Moreover, when I ordered further briefing on the license issue, I made clear that I solely vacated my prior opinions and orders (D.I. 398, 399, 448) "insofar as they address whether the Disputed Patents apply to at least one of the seven listed xDSL standards" (D.I. 496 at 3) and that I did "not vacate the portion of the Memorandum Order that addresses 'new information.'" (*Id.* at 3 n.2). Plaintiff may not now have the exhaustion issue reconsidered.

Thus, the G.bond patents-in-suit are not subject to the Carve-Out and are licensed under the License Agreement.

### B. G.inp Patents-In-Suit

The parties continue to dispute whether the G.inp standard is used in conjunction with any one of the listed xDSL standards. (D.I. 688 at 3-4; D.I. 689 at 3). Plaintiff asserts that "when a

3

DSL connection is made using the G.inp standard, that DSL connection is not also using an ADSL2 or VDSL2 compliant connection" because "retransmission is used instead of convolutional interleaving," a mandatory requirement of ADSL2/VDSL2. (D.I. 689 at 3). Defendant argues that the G.inp patents-in-suit "could be used in conjunction" with ADSL and VDSL because (1) Plaintiff has previously used "operate in conjunction with" language in its briefing on this issue,[3] (2) Plaintiff's infringement contentions rely on listed xDSL standards to prove infringement of each asserted claim, and (3) the G.inp standard states that it can or must be used in conjunction with at least one of the listed xDSL standards. (D.I. 688 at 3-4).

There is a genuine dispute of material fact. I will not take Plaintiff's previous use of "in conjunction with" to be an admission because the previous briefs were not written in the context of the clarified construction. The remainder of the evidence, if taken in the light most favorable to Plaintiff, would allow a reasonable jury to determine that the G.inp patents-in-suit are not licensed. However, taken in the light most favorable to Defendant, the evidence would also permit a reasonable jury to determine that the G.inp patents-in-suit are licensed.

Thus, I will deny both parties' motions for summary judgment as to the G.inp patents-in-suit.

### C. Whether Lantiq Chips are DSL Products

Plaintiff asserts that regardless of whether the Patents-In-Suit are licensed, the license is not applicable to all products made by Intel or Lantiq. (D.I. 689 at 3). Plaintiff argues that Defendant must prove that each accused product is a "DSL Product" under the License Agreement.

---

[3] Defendant also challenges Plaintiff's argument that G.inp is not used in conjunction with ADSL/VDSL because it (1) "cannot be reconciled with the statements by TQ Delta and its expert in multiple rounds of summary judgment briefing" and (2) that this is a contrary position taken solely to survive summary judgment. (D.I. 709 at 1-2). However, I agree with Plaintiff that its previous briefing could not have taken the current construction of the License Agreement into account. Additionally, I do not believe that Dr. Cooklev's previous sworn testimony clearly contradicts his deposition testimony. If it does, Defendant may highlight these contradictions at trial. (D.I. 715 at 1).

4

(*Id.*). Defendant argues that Plaintiff has "already conceded this point by its admission that ADTRAN products containing Lantiq chips are licensed under all of its other asserted patents." (D.I. 688 at 4).

I agree with Defendant. As I previously determined, "Plaintiff's interrogatory response and admission to this Court amount to Plaintiff's agreement that the accused products themselves are licensed to the twenty-eight patents" asserted against products that implement ADSL2, ADSL2+, and/or VDSL2. (D.I. 398 at 12). The accused products are therefore "DSL Products" within the meaning of the License Agreement. Thus, the G.bond patents-in-suit are licensed for the accused products.

## IV. CONCLUSION

For the foregoing reasons, I will GRANT Defendant's Motion as to the G.bond patents-in-suit, DENY Defendant's Motion as to the G.inp patents-in-suit, and DENY Plaintiff's cross-motion in its entirety.

An accompanying order will be entered.