IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TQ DELTA, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>ADTRAN, INC.,<br><br>    Defendant. | Civil Action No. 14-954-RGA |
| ADTRAN, INC.,<br><br>    Plaintiff and<br>    Counterclaim Defendant,<br><br>v.<br><br>TQ DELTA, LLC,<br><br>    Defendant and<br>    Counterclaim Plaintiff. | Civil Action No. 15-121-RGA |

## MEMORANDUM OPINION

Brian E. Farnan and Michael J. Farnan, FARNAN LLP, Wilmington, DE; Peter J. McAndrews, Timothy J. Malloy, Thomas J. Wimbiscus, Sharon A. Hwang, Paul W. McAndrews, and Anna M. Targowska, MCANDREWS, HELD & MALLOY, LTD., Chicago, IL, attorneys for Plaintiff TQ Delta LLC.

Kenneth L. Dorsney, MORRIS JAMES LLP, Wilmington, DE; Garland Stephens, Melissa L. Hotze, Justin L. Constant and Rene E. Mai, WEIL, GOTSHAL & MANGES LLP, Houston, TX, attorneys for Defendant ADTRAN, Inc.

September ___, 2019


ANDREWS, U.S. DISTRICT JUDGE:

Currently pending before the Court are the parties' various motions for summary judgment. (D.I. 635, 637, 640, 643, 645, 647).[1] This opinion will address TQ Delta's Motion for Summary Judgment of Infringement of Claims 30, 53, and 55 of U.S. Patent No. 8,595,577 (D.I. 643) and ADTRAN's Motion for Summary Judgment of Non-Infringement of U.S. Patent Nos. 8,595,577 and 8,645,784 (D.I. 640). The parties have fully briefed the issues. (D.I. 641, 644, 679, 680, 681, 700, 704). After full consideration of the briefing, the motions are resolved as follows.

I. **BACKGROUND**

Plaintiff TQ Delta filed this lawsuit against Defendant ADTRAN on July 17, 2014 asserting infringement of thirty-two patents. (D.I. 1). ADTRAN has countersued. (C.A. 15-121, D.I. 1). I have divided the case into separate trials based on families of patents. (D.I. 369). For the Family 9 trial, TQ Delta currently asserts claims 30, 53, and 55 of U.S Patent No. 8,595,577 ("the '577 patent"), claim 31 of U.S. Patent No. 8,335,956 ("the '956 patent"), claim 10 of U.S. Patent No. 8,468,411 ("the '411 patent"), and claim 7 of U.S. Patent No. 8,645,784 ("the '784 patent"). The Accused Products are those products containing the BCM65300 chipset. (D.I. 644 at 1 n. 1).

The Family 9 patents are "directed to various aspects of packet retransmission and memory sharing in communications systems." (D.I. 447 at 1). The asserted claims of the '577 patent read as follows:

> 30. An apparatus comprising:
> a multicarrier transceiver operable to receive at least one packet using deinterleaving, and transmit at least one message without using interleaving, wherein the at least one message includes information that indicates an acknowledgement (ACK) or a negative acknowledgement (NACK) of the at least

---

[1] All docket item citations are to C.A. 14-954 unless otherwise noted.

1

one packet, wherein the at least one packet comprises one or more Reed-Solomon codewords.

53. An apparatus comprising:

a multicarrier transceiver operable to transmit at least one packet using interleaving, and receive at least one message without using interleaving, wherein the at lest one message includes information that indicates an acknowledgement (ACK) or a negative acknowledgement (NACK) of the at least one packet, wherein the at least one packet comprises one or more Reed-Solomon codewords.

55. The apparatus of claim 53, wherein the transceiver is operable to retransmit at least one packet using interleaving.

('577 patent, cls. 30, 53, 55). The asserted claim of the '784 patent reads as follows:

7. A multicarrier communications transceiver with a shared memory, the transceiver operable to:

share the memory between a packet retransmission function and one or more of interleaving and deinterleaving functions; and

transmit or receive a message indicating how the shared memory in the transceiver is to be allocated to the packet retransmission function and to the one or more of interleaving and deinterleaving functions.

('784 patent, cl. 7).

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most

favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

## III. DISCUSSION

TQ Delta has filed a motion for summary judgment of infringement of the '577 patent. (D.I. 643). ADTRAN has filed a motion for summary judgment of non-infringement of the '577 and '784 patents. (D.I. 640). It appears from the briefing that the sole dispute is one of claim construction. (D.I. 641 at 7; D.I. 681 at 7-8). Specifically, the parties dispute the scope of the term "operable to." TQ Delta asserts that "operable to" should be given its plain and ordinary meaning, "capable of." (*Id.*). ADTRAN argues that "operable to" has a narrower meaning than "capable of" and requests that I construe the term consistent with this narrower meaning. (D.I. 641 at 7).

### A. Claim Construction

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415 F.3d at 1324) (alteration in original). When construing patent claims, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotation marks omitted).

3

"[T]he words of a claim are generally given their ordinary and customary meaning. . . . [Which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312–13 (citations and internal quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

When a court relies solely upon the intrinsic evidence—the patent claims, the specification, and the prosecution history—the court's construction is a determination of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). The court may also make factual findings based upon consideration of extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317–19 (internal quotation marks omitted). Extrinsic evidence may assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art, and how the invention works. *Id.* Extrinsic evidence, however, is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

"A claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GMBH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (citation and internal quotation marks omitted).

4

ADTRAN argues that the claim language "operable to" should be construed to have a narrower meaning than the claim language "capable of." (D.I. 641 at 7). While ADTRAN does not put forward an explicit claim construction for the term "operable to," it argues that "the patentee's decision to use 'operable to' clearly claims only modes of operation that are actually configured in the device," without requiring further action by the user. (*Id.* at 10). Thus, it appears that ADTRAN is requesting that "operable to" be construed to mean "in operation to." TQ Delta asserts that "operable to" should be given its plain and ordinary meaning, which is the same as "capable of." (D.I. 681 at 2).

ADTRAN's primary argument is that the claims of the '577 and '784 patents use both phrases—"operable to" and "capable of"—thereby creating a presumption that there is a difference in meaning between the two phrases.[2] (D.I. 641 at 8). As the Federal Circuit has held, "[W]hen different words or phrases are used in separate claims, a difference in meaning is presumed." *Nystrom v. TREX Co.*, 424 F.3d 1136, 1143 (Fed. Cir. 2005). This presumption does not end the matter as "[d]ifferent terms or phrases in separate claims may be construed to cover the same subject matter where the written description and prosecution history indicate that such a reading of the terms or phrases is proper." *Id.* However, "[i]n the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings." *CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000).

The specification does not contain much helpful direction. ADTRAN argues that the patentee defined the term "capable of" in the following passage:

---

[2] TQ Delta argues that ADTRAN is improperly applying the "claim differentiation" doctrine. (D.I. 681 at 12). None of the cases ADTRAN cites, however, are focused on claim differentiation. Instead, they support the basic premise that when a patentee uses the same word, it should generally be interpreted to mean the same thing, and that when a patentee uses different words, they should generally be interpreted to have different meanings. This is not claim differentiation.

5

> In general, any device capable of implementing a state machine that is in turn capable of implementing the methodology illustrated herein can be used to implement the various communication methods, protocols and techniques according to this invention.

(D.I. 641 at 10 (citing '577 patent, col. 22:48-53). In ADTRAN's view, the failure to provide a definitional statement for "operable to" supports a determination that the phrases have different meaning. (D.I. 641 at 10). However, the passage ADTRAN cites is not lexicography as it does not expressly define the term "capable of." Nor does the specification use the term "operable to" at any point. (*See* '577 patent). Thus, the best indication of the meaning of "operable to" is the claim language. It appears that the claims consistently use the term "operable to" when describing the "multicarrier transceiver" that is part of the claimed apparatus. (*See, e.g.*, '577 patent, cls. 53, 55). In contrast, the claims use "capable of" when defining the apparatus itself, i.e., "The apparatus of claim 53, wherein the apparatus is a linecard that is *capable of* transporting video, voice, and data." (*id.*, cl. 56; *see also*, *id.*, cls. 19-20, 26-27, 33-34, 40-41, 48-49, 56-57). The claims of the '784 patent do not use the term "capable of." (*See, e.g.*, '784 patent, cl. 7).[3] The difference in usage indicates that the patentee intended for "operable to" and "capable of" to have different meanings. While the apparatus itself needs only to be capable of certain functionalities (transporting video, voice, and data), the transceiver needs to operate in a manner that performs the functions stated in the claim (transmit at least one packet using interleaving, and receive at least one message without using interleaving).

TQ Delta asserts that I should follow rulings from other courts where claim terms including the phrase "operable to" were construed in a manner that treated "operable to" and "capable of" as

---

[3] Unlike the '577 patent, the claims of the '784 patent describe "The transceiver of claim 7, wherein the transceiver is located in a linecard that is operable to transport video." ('784 patent, cl. 9). I do not think this affects the analysis. The same logic applies here: the linecard must be configured to transport video. The specification repeatedly uses the "capable of" language, but the patentee chose not to use that same language in the claims of the '784 patent.

6

interchangeable in meaning. (D.I. 681 at 8-9). However, as ADTRAN correctly notes, none of the cases cited involved a direct dispute of the meaning of the phrase "operable to." (D.I. 704 at 9). Additionally, other cases cited by TQ Delta support ADTRAN's contention that "operable to" should be construed to have a different meaning than "capable of." In both *Finjan, Inc. v. Secure Comput. Corp.*, 626 F.3d 1197 (Fed. Cir. 2010) and *Intel Corp. v. U.S. Intern. Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991), the Federal Circuit relied on the claim language in determining that capability and not operation was the relevant inquiry for infringement. *See Finjan,* 626 F.3d at 1204-05 (In discussing claim limitations reciting "engines" the court stated "to infringe a claim that recites capability and not actual operation, an accused device 'need only be capable of operating' in the described mode. . . . In this case, Finjan's non-method claims describe capabilities without requiring that any software components be "active" or "enabled.""); *see also Intel*, 946 F.2d at 832 ("Because the language of claim 1 refers to 'programm*able* selection means' and states 'whereby *when* said alternate addressing mode is selected' [], the accused device, to be infringing need only be capable of operating in the page mode. Contrary to GI/M's argument, actual page mode operation in the accused device is not required."). Here, ADTRAN argues that the claim language "operable to" requires that the multicarrier transceiver actually operates "to receive at least one packet using deinterleaving, and transmit at least one message without using interleaving," and thus, that the claims recite actual operation. I agree.

Thus, I will construe "operable to" to mean "in operation to."

## B. Infringement

There does not appear to be any genuine dispute of material fact between the parties as to how the accused devices operate. The Accused Products each contain at least one chipset that executes software that controls the functionality of the Accused Products. (D.I. 641 at 3; D.I. 681

7

at 6). The parties agree that the chipsets in the Accused Products contain code that, when executed, can operate in accordance with the G.inp standard. (D.I. 641 at 3; D.I. 644 at 9). It is also undisputed that an end user must affirmatively enable the G.inp functionality for the Accused Products to operate in accordance with the G.inp standard. (D.I. 641 at 4-5; D.I. 681 at 18).

The question is thus whether a chipset that is capable of operating in an infringing manner if the customer enables pre-programmed settings satisfies a claim reciting actual operation. TQ Delta asserts that *Radware, Ltd. v. F5 Networks, Inc.*, 147 F. Supp. 3d 974 (N.D. Cal 2015) has already decided this question when the court stated, "If the infringer . . . sells a computer preloaded with infringing software code, the computer is 'configured,' or 'operable,' to perform the claims and may be infringing under *Finjan* and *Fantasy Sports*." *Id.* at 1004. However, in *Radware*, the court had determined that the asserted claims only required capability, not actual operation. *Id.* at 1003. Here, it appears that the Accused Products, as sold, do not have a multicarrier transceiver that operates "to receive at least one packet using deinterleaving, and transmit at least one message without using interleaving." The transceiver will only operate in the infringing manner if an end user enables the G.inp functionality. Thus, as a matter of law, the Accused Products do not directly infringe the asserted claims.

## IV. CONCLUSION

For the foregoing reasons, I will grant ADTRAN's motion for summary judgment of noninfringement and deny TQ Delta's motion for summary judgment of infringement.

An accompanying order will be entered.