IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TQ DELTA, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>ADTRAN, INC.,<br><br>    Defendant. | Civil Action No. 14-954-RGA |
| ADTRAN, INC.,<br><br>    Plaintiff and<br>    Counterclaim Defendant,<br><br>v.<br><br>TQ DELTA, LLC,<br><br>    Defendant and<br>    Counterclaim Plaintiff. | Civil Action No. 15-121-RGA |

MEMORANDUM ORDER

Pending before the Court are ADTRAN's Motion to Strike New Infringement Contentions (D.I. 570)[1] and TQ Delta's Motion to Strike Portions of the Family 9 Invalidity Expert Reports (D.I. 627). I have reviewed the parties' briefing associated with the motions. (D.I. 571, 584, 602, 628, 677, 693). TQ Delta has also submitted a letter regarding ADTRAN's § 282 Notice. (D.I. 806).

---

[1] All docket items citations refer to C.A. No. 14-954 unless otherwise noted.

1

## I. BACKGROUND

Plaintiff TQ Delta filed this lawsuit against Defendant ADTRAN on July 17, 2014 asserting infringement of one or more patents from ten patent families. (D.I. 1). I have divided the case into separate trials based on families of patents. (D.I. 369). The motions at issue herein address the inclusion of purported new infringement and invalidity contentions in the parties' opening expert reports. Fact discovery closed on October 1, 2018. TQ Delta served final infringement contentions for Lantiq-based products on December 8, 2016. (D.I. 91; *see* D.I. 584 at 4-5). ADTRAN served its final invalidity contentions on August 15, 2018. (D.I. 472). Opening expert reports were exchanged on April 15, 2019. The pretrial conference is scheduled for September 27, 2019 and trial is scheduled for October 7, 2019. (D.I. 369 at 9, 11).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 37(c)(1) provides, "If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." To determine whether a failure to disclose was harmless, courts in the Third Circuit consider the *Pennypack* factors: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the possibility of curing the prejudice; (3) the potential disruption of an orderly and efficient trial; (4) the presence of bad faith or willfulness in failing to disclose the evidence; and (5) the importance of the information withheld. *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d Cir. 1977)). "[T]he exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court

2

order by the proponent of the evidence." *Id.* The determination of whether to exclude evidence is within the discretion of the district court. *Id.*

## III. DISCUSSION

### A. ADTRAN's Motion to Strike

ADTRAN moves to strike TQ Delta's new infringement contentions in the expert report of Dr. Rudnick and the related portion of Dr. Cooklev's report. (D.I. 571 at 1). These new infringement contentions assert claim 31 of U.S. Patent No. 8,335,956 ("the '956 patent") against ADTRAN's Lantiq-based products. (*Id.*). ADTRAN asserts that these belated contentions are a prejudicial untimely disclosure. (*Id.* at 2). TQ Delta argues that a *Pennypack* analysis is not necessary as no court order was violated (D.I. 584 at 1-3), and that the *Pennypack* analysis does not warrant exclusion (*id.* at 11).

I address the first two *Pennypack* factors together. There is significant surprise or prejudice to ADTRAN. The Lantiq products were not accused of infringing the '956 patent before the service of the expert reports. TQ Delta had previously provided a claim chart during discovery for the asserted claim of the '956 patent. (D.I. 585-2). TQ Delta also provided claim charts for other asserted claims that were said to be representative of the '956 patent. (D.I. 585-6). These charts related to ADTRAN's Broadcom-based products. (D.I. 571 at 2). TQ Delta's 2016 infringement contentions accused the Lantiq products of infringing other Family 9 patents but did not disclose a claim of infringement under the '956 patent. The late disclosure of the disputed infringement allegation deprived ADTRAN of "the opportunity to investigate this claim with its supplier Lantiq [and] to develop non-infringement theories for Lantiq-based products prior to the service of TQ Delta's expert report." (D.I. 571 at 5-6). Discovery taken from third-party Lantiq in 2018 was limited to the source code cited in TQ Delta's 2016 infringement contentions against the Lantiq

3

products under other Family 9 patents. ADTRAN has had the opportunity to depose Dr. Rudnick and/or Dr. Cooklev and to respond to TQ Delta's expert's opinions on infringement with answering reports of their own experts. This does not eliminate the prejudice to ADTRAN, however, because ADTRAN did not have the opportunity to conduct independent discovery. While the prejudice occurring from TQ Delta's opening expert reports could theoretically have been cured by further subpoena and supplemental expert reports, there would not be sufficient time to cure the prejudice before the trial date. ADTRAN's motion was filed on May 6, 2019, and briefing concluded on June 19. (D.I. 570; D.I. 602). I do not believe, even if immediate steps had been taken at the time opening expert reports were filed, that there was sufficient time to cure the prejudice to ADTRAN. Nor is there sufficient time now. Thus, the first two factors weigh in favor of exclusion.

The third factor weighs in favor of exclusion. As noted above, the necessary steps to cure the prejudice to ADTRAN would not be able to be completed before the trial. To properly cure the prejudice, the trial would need to be delayed.

The fourth factor weighs against exclusion. I do not believe that TQ Delta's omission of the '956 patent from their final infringement contentions was done in bad faith or willful disregard of a court order. The discovery in this case was done in stages due to the volume of patents and involvement of two third-parties (Broadcom and Lantiq). At the time TQ Delta provided its final infringement contentions for the Lantiq products in 2016, representative claims were still permitted. (D.I. 91). On March 3, 2017, when discussing infringement contentions for the Broadcom products, I instructed the parties that representative claims would no longer be appropriate. (D.I. 592, Ex 3 at 26:9-14). It was ambiguous from my statements whether updated infringement contentions were required for the Lantiq products.

4

Finally, the fifth factor weighs against exclusion. TQ Delta's rights under the '956 patent are separate from its rights under U.S. Patent No. 8,468,411. Additionally, the testimony ADTRAN seeks to have struck will be offered "to show how the accused devices infringe TQ Delta's patented technology." (D.I. 584 at 16). Thus, it appears that the information is critical to a fraction of TQ Delta's case.

Taken as a whole, the *Pennypack* factors weigh in favor of exclusion of the infringement contentions on the '956 patent in Dr. Rudnick's and Dr. Cooklev's reports. *See Galderma Labs., L.P. v. Amneal Pharma., LLC*, 2018 WL 508876, at *1 (D. Del. Jan. 22, 2018) (determining that prejudice, lack of explanation for timing of new theory, and inability to remedy prejudice without disrupting trial supported striking late disclosed infringement contentions). Opening expert reports are not the appropriate time to disclose new infringement allegations. *Cf. id.* at *2 (striking new infringement allegations disclosed two weeks before opening expert reports were due); *ASUS Comp. Int'l v. Round Rock Research, LLC*, 2014 WL 1463609, at *1 (N.D. Cal. Apr. 11, 2014) (Under the Northern District's local rules, a "party may not use an expert report to introduce new infringement theories [or] new infringing instrumentalities . . . not disclosed in the part[y's] infringement contentions."). Thus, I will grant ADTRAN's Motion to Strike.

### B. TQ Delta's Motion to Strike

TQ Delta moves to strike various paragraphs from Dr. Wesel's invalidity report for Family 9. (D.I. 627; D.I. 628 at 1). TQ Delta asserts that the report improperly relies on new references and physical products to support invalidity arguments under 35 U.S.C. § 103. (D.I. 628 at 2-3). ADTRAN asserts that the alleged new references are "background art that illustrates the very mature state of the art as of the priority date of the asserted patents." (D.I. 677 at 1).

The *Pennypack* factors do not weigh in favor of exclusion.

5

I address the first two *Pennypack* factors together. TQ Delta has not been prejudiced by the disclosures of new references and products where Dr. Wesel uses them as background for his invalidity theory. *See Finjan, Inc. v. Symantec Corp.*, 2018 WL 620156, at *4 (N.D. Cal. Jan. 30, 2018); *Verinata Health, Inc. v. Sequenom, Inc.*, 2014 WL 4100638, at *8 (N.D. Cal. Aug. 20, 2014) (experts "should be able to rely on [prior art not disclosed in invalidity contentions] as foundational or background material"). ADTRAN produced all but two of the "new" references[2] to TQ Delta and represents that all the references are publicly available. (D.I. 677 at 5-6). To the extent that TQ Delta has suffered any prejudice from the inclusion of the new references for background, it has been able to depose Dr. Wesel on his opinions and has its own expert to respond to these theories.

TQ Delta also argues it has been irreparably prejudiced because Dr. Wesel has used some of these new references to supply missing elements in his obviousness combinations. (D.I. 628 at 2-3). TQ Delta has identified over 100 paragraphs that it would like me to strike. (*Id.* at 3). While some paragraphs appear to use an undisclosed reference to support claim elements (*see, e.g.*, D.I. 629-2, Ex. B ¶ 337), others appear to use these references to establish the background knowledge of a person of ordinary skill in the art (*see, e.g., id.* ¶ 336). It is unclear based upon the briefing the extent to which the cited paragraphs merely cite the undisclosed references for background or to support the existence of a specific claim element in the prior art. ADTRAN has represented that it is only relying upon its identified obviousness combinations to prove all elements of the asserted claim obvious. (D.I. 677 at 3). I do not believe that ADTRAN's § 282 Notice indicates any differently. The Notice states that it lists "the patents and publications that [ADTRAN] may rely

---

[2] ADTRAN has represented that the failure to produce the two references was inadvertent. (D.I. 677 at 5-6).

upon to . . . render obvious *or show the state of the art*" with respect to the asserted patents. (D.I. 806-1 at 1). ADTRAN will be held to its representation.

To the extent that the undisclosed references are used to support a motivation to combine rather than the background of the art, TQ Delta has had the opportunity to respond to Dr. Wesel's theories and to depose Dr. Wesel on his report. TQ Delta asserts that further steps are necessary to cure the prejudice resulting from the late disclosure. (D.I. 628 at 17-18). However, this necessarily admits that any remaining prejudice can be remedied. Thus, the first two factors weigh against exclusion for the references as used to support the knowledge of a person of ordinary skill in the art and a motivation to combine.

The third *Pennypack* factor weighs slightly in favor of exclusion. TQ Delta alleges that the steps necessary to remedy the prejudice cannot occur before the trial date of October 7, 2019. (*Id.*). However, as previously determined, TQ Delta has been able to address ADTRAN's contentions and "thereby largely cured the prejudice to it." *Abbott Labs. v. Lupin Ltd.*, 2011 WL 1897322, at *5 (D. Del. May 19, 2011). I agree with TQ Delta, however, that to the extent ADTRAN uses the new references to support specific claim elements, the prejudice cannot be remedied before trial. The extent of the discovery needed for TQ Delta to put on an adequate rebuttal case as to new combinations cannot be completed before trial.

The fourth *Pennypack* factor weighs against exclusion. TQ Delta has not asserted that ADTRAN acted in bad faith or in willful violation of a court order. (D.I. 628).

Finally, the fifth factor weighs against exclusion. The level of skill and knowledge of a person of ordinary skill in the art is a crucial piece of the obviousness analysis. *See Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013) ("In recognizing the role of common knowledge and common sense [in the obviousness analysis], we have emphasized the importance of a factual

foundation to support a party's claim about what one of ordinary skill in the relevant art would have known.").

Thus, on balance, the *Pennypack* factors weigh against the exclusion of portions of Dr. Wesel's invalidity report when used to show the level of skill and knowledge of a person of ordinary skill in the art. However, to the extent Dr. Wesel offers the new references and products to support claim elements, he may not offer those opinions at trial.

## IV. CONCLUSION

Thus, ADTRAN's Motion to Strike (D.I. 570) is GRANTED and TQ Delta's Motion to Strike (D.I. 627) is GRANTED-IN-PART and DENIED-IN-PART.

IT IS SO ORDERED this 12 day of September, 2019.

Richard G. Andrews
United States District Judge