IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TQ DELTA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ADTRAN, INC.,<br><br>Defendant. | Civil Action No. 14-954-RGA |
| ADTRAN, INC.,<br><br>Plaintiff and<br>Counterclaim Defendant,<br><br>v.<br><br>TQ DELTA, LLC,<br><br>Defendant and<br>Counterclaim Plaintiff. | Civil Action No. 15-121-RGA |

MEMORANDUM ORDER

Pending before the Court is ADTRAN's Motion for Reargument and Claim Construction in light of the Court's Opinion (D.I. 804) on ADTRAN's Motion for Claim Construction and

1

Summary Judgment on the '956 and '411 Patents. (D.I. 831).[1] I have reviewed the parties' briefing and related papers. (D.I. 831, 859).

I. BACKGROUND

The motion arises from an ongoing dispute between the parties as to ten of the patents-in-suit (the "Disputed Patents").[2] I summarized the relevant background in my September 11, 2019 Summary Judgment Opinion and incorporate that background here. (D.I. 804 at 1-2).

II. DISCUSSION

### A. "[T]he [first/second] allocated portion of the shared memory" in '956 patent, claim 31

ADTRAN requests that I construe the term "the [first/second] allocated portion of the shared memory" in claim 31 of the '956 patent to mean "the total amount of the shared memory allocated during the allocating to the [deinterleaving/packet retranmission] function." (D.I. 831 at 3). ADTRAN argues that because TQ Delta disagrees with exactly what is included in the "shared memory," I must construe the term. (*Id.* at 2). This dispute, however, is not one of claim scope, but instead about how the term is applied to the accused products. (*See* D.I. 804 at 7-8). This fact question is reserved for the jury, thus ADTRAN's motion is DENIED as to this term.

### B. "[T]he memory" in '411 patent, claim 10

ADTRAN asks that I construe the term "the memory" in claim 10 of the '411 patent to mean the "total amount of memory allocated during the allocating of the memory." (D.I. 831 at 4). Similar to above, the issue here is not of the scope of "the memory" but rather how "the

---

[1] All docket items citations refer to C.A. No. 14-954 unless otherwise noted.
[2] The parties refer to these ten patents as the "Disputed Patents" because they involve a dispute about contract construction. I adopt this terminology. The Disputed Patents are U.S. Patent Nos. 7,453,881, 7,809,028, 7,978,706, 8,422,511, 7,796,705, 8,335,956, 8,407,546, 8,468,411, 8,645,784, and 8,598,577. (D.I. 232 at 6).

2

memory" applies to the accused products. (*See* D.I. 804 at 8). This too is a question of fact for the jury and ADTRAN's motion is DENIED as to this term.

### C. "[H]as been allocated" in '411 patent, claim 10

In my September 11, 2019 Memorandum Opinion, I construed the term "memory . . . allocated" to have its plain and ordinary meaning. (D.I. 804 at 7). Because the phrase has multiple plain and ordinary meanings, the instant meaning must be ascertained from the context of the particular claim. (*Id.* at 6). The parties now contend that there is a dispute as to what the plain and ordinary meaning of "memory . . . allocated" is in the context of '411 patent, claim 10. (D.I. 831 at 4-5; D.I. 859 at 7). "[T]he plain and ordinary meaning may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *O2 Micro Int'l Ltd. V. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008). This dispute is over claim scope, not of the surrounding facts, and so I must resolve it.

Claim 10 of the '411 patent reads:

> *10. A transceiver capable of packet retransmission comprising:*
>
> *a transmitter portion capable of: transmitting a plurality of packets, identifying at least one packet of the plurality of packets as a packet that should be retransmitted and <u>allocating a memory</u> between a retransmission function and an interleaving and/or deinterleaving function, wherein at least a portion of the <u>memory may be allocated</u> to the retransmission function or to the interleaving and/or deinterleaving function at any one particular time, and wherein a message transmitted during initialization indicates how the <u>memory has been allocated</u> between the retransmission function and the interleaving and/or deinterleaving function in the transceiver.*

(emphasis added).

ADTRAN asks me to explain which of the plain and ordinary meanings apply to the different limitations of claim 10 of the '411 patent similarly to the example I gave in my September 11, 2019 Opinion about claim 31 of the '956 patent. (D.I. 831 at 4-5). To resolve the parties' dispute, I will do so.

Claim 10 of the '411 patent uses "allocate" in three different contexts. First, claim 10 describes "allocating a memory between a retransmission function and an interleaving and/or deinterleaving function." ('411 patent, cl. 10). In this context, the plain and ordinary meaning of "allocating" is "partitioning." *See* '411 patent at col. 18:44-47 ("Associated with the ability to allocate or partition memory between one or more of the interleaving/deinterleaving/RS coding/RS decoding functionality and retransmission functionality . . .").

Second, claim 10 states that "at least a portion of the memory may be allocated to" one function or another. ('411 patent, cl. 10). Here, "allocated" means "used." *See* '411 patent at col. 17:55-63 ("a first portion of the memory can be used for one function and a second portion of the memory for some other function. For example, if the configuration and noise conditions are such that the interleaving/RS coding would not provide good error correction/coding gain, then all the available memory *could be used* for the retransmission function and none *allocated* to the interleaving/deinterleaving/RS coding/RS decoding functionality, e.g., the interleaving/deinterleaving could be disabled.") (emphasis added). Rather than a static assignment of memory to a function for a future purpose, this part of the claim describes a dynamic "use" of the memory, where the portion of the memory "allocated to" or "used by" each function can change depending on the instant requirements.

Third, claim 10 describes "a message transmitted during initialization [which] indicates how the memory has been allocated" between the functions. ('411 patent, cl. 10). ADTRAN

4

argues that, in the context of claim 10, "has been allocated" must mean that the "message relates to an actual allocation that has already happened." (D.I. 831 at 6). Inserted into the claim this reads: "a message . . . indicates how the memory [has been ultimately assigned or used]." (*Id.* at 6-7). Conversely, TQ Delta argues that, in light of the specification, the term "has been allocated" means "setting an upper bound." (D.I. 859 at 8).

The key context of this use of "allocated" rests in the "initialization" limitation. Because the information about "how the memory has been allocated" is transmitted in a message during initialization, it cannot mean how the memory "has been ultimately assigned or used" as ADTRAN suggests. (*See* D.I. 831 at 6-7). This would mean that the functions have already completed and that this message would contain after-the-fact reporting on how the memory was actually assigned or used as between the functions. But this is not what is claimed in claim 10. Opposite of a post hoc report, the claim describes an initialization message. This initialization message indicates "how the memory has been allocated" between the functions at the start of the operation. *See Initialize*, Oxford English Dictionary Online, Third Edition ("To set to the value, or put in the condition, appropriate to the start of an operation."). Thus, "has been allocated" must mean "how the memory has been set aside" for the various functions.

### III. CONCLUSION

ADTRAN's Motion for Reargument and Claim Construction is DENIED-in-part and GRANTED-in-part.

IT IS SO ORDERED this 4 day of October, 2019.

/s/ Richard G. Andrews
United States District Judge

5