IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TQ DELTA, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>ADTRAN, INC.,<br><br>    Defendant. | Civil Action No. 14-954-RGA |
| ADTRAN, INC.,<br><br>    Plaintiff and<br>    Counterclaim Defendant,<br><br>v.<br><br>TQ DELTA, LLC,<br><br>    Defendant and<br>    Counterclaim Plaintiff. | Civil Action No. 15-121-RGA |

## MEMORANDUM ORDER

Pending before the Court are seven motions submitted by TQ Delta and ADTRAN regarding Family 10. This opinion will address ADTRAN's Motion to Preclude Expert Testimony Inconsistent with the Court's Claim Construction for Family 10. (D.I. 727).[1] I have reviewed the parties' briefing and related papers. (D.I. 729, 771, 787). After full consideration of the briefing, the motion is resolved as follows.

---

[1] All docket items citations refer to C.A. No. 14-954 unless otherwise noted.

1

## I. BACKGROUND

Plaintiff TQ Delta filed this lawsuit against Defendant ADTRAN on July 17, 2014 asserting infringement of one or more patents from ten patent families. (D.I. 1). I have divided the case into separate trials based on families of patents. (D.I. 369). This motion relates to the Family 10 patent. ADTRAN moves to exclude the opinions of TQ Delta's technical expert Dr. Arthur Brody that the asserted claims of the '660 patent require a "purpose," which ADTRAN states would contradict the Court's claim construction order and opinion, are unreliable and unhelpful to the jury, and render the claims indefinite. (D.I. 729 at 1).

## II. LEGAL STANDARD

"[T]he district court acts as a gatekeeper" to ensure that expert testimony is reliable and helpful. *Schneider v. Fried*, 320 F.3d 396, 404 (3d. Cir. 2003). "The primary locus of this obligation is [Federal Rule of Evidence] 702." *Daubert v. Merrell Dow Pharma, Inc.*, 509 U.S. 579, 589 (1993). Rule 702 codified the Supreme Court's holding in *Daubert*. *Daubert* imposes a "trilogy" of requirements: (1) qualification, (2) reliability, and (3) fit. *Schneider*, 320 F.3d at 404.

Claim construction is a legal question within the province of the court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). "No party may contradict the court's construction to a jury." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009). "As expert testimony inconsistent with the Court's claim construction is unreliable and unhelpful to the finder of fact," it should be excluded under the *Daubert* standard. *Personalized User Model, L.L.P. v. Google, Inc.*, 2014 WL 807736, at *1 (D. Del. Feb. 27, 2014); *see also Exergen*, 575 F.3d at 1321. Expert testimony based on an impermissible claim construction is properly excluded as irrelevant and on the basis that the evidence could confuse the jury. *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).

2

When a court does not construe a term or orders that the ordinary meaning applies, expert testimony on the understanding of a skilled artisan is appropriate to assist the jury. *Avid Tech., Inc. v. Harmonic, Inc.*, 2014 WL 7206301, at *4 (D. Del. Dec. 17, 2014); *Cave Consulting Grp., LLC v. OptumInsight, Inc.*, 2015 WL 740379, at *15 (N.D. Cal. Feb. 20, 2015).[2] Expert testimony regarding whether an accused device falls within the scope of a court's claim construction is appropriate and raises a factual issue for the jury to resolve. *In re Maxim Integrated Products, Inc.*, 2015 WL 5311264, at *4 (W.D. Pa. Sept. 11, 2015).

## III. DISCUSSION

In my claim construction opinion, I ruled that "the purpose of the invention does not justify" limiting the claim scope to expected noise increases based on impairments, "because the asserted claims are apparatus claims." (D.I. 375 at 7). Based on that opinion, ADTRAN asserts that Dr. Brody should be precluded from offering any opinions that the asserted claims require "purposeful assignment," "purposeful division," or any other "purpose." (D.I. 729 at 1). ADTRAN argues that in addition to contradicting the Court's claim construction, Dr. Brody's testimony should be excluded because it is unreliable, unhelpful to the jury, and renders the claims indefinite. (*Id.*).

TQ Delta states that Dr. Brody's opinions that discuss or use the word "purpose" were offered in response to ADTRAN's expert, Dr. Zimmerman, who opined that the assignment of SNR margins or the grouping of carriers consistent with the asserted claims could be "arbitrary." (D.I. 771 at 2). Therefore, TQ Delta argues, these descriptions are not in conflict with the Court's claim construction. (*Id.*). Dr. Brody did not import a particular "purposeful" limitation in the

---

[2] Such expert testimony, however, cannot amount to claim construction. *Cordis Corp. v. Bos. Scientific Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009); *see generally EMC Corp. v. Pure Storage, Inc.*, 2016 WL 775742, *3-4 (D. Del. Feb. 25, 2016).

3

asserted claims. Instead, he described that the assignment in the Accused Products of a first SNR margin and second SNR margin to a respective first and second plurality of carriers as purposeful, as opposed to being random or accidental. *See, e.g.*, D.I. 760-1, Ex. 24 at ¶¶ 77-80, 91, 163, 168, 170, 175, 177-78, 180, 182.

In Dr. Zimmerman's Opening Expert Report, he argues that the grouping of bits onto a first and second plurality of carriers with the same SNR margin is "arbitrary." (D.I. 760-1, Ex. 23 at ¶¶ 55, 56, 123, 124, 166, 171, 175, 176, 214). ADTRAN explains that this designation refers to the nomenclature used to describe the groups of modulated carriers. (D.I. 787 at 4). Even if it is true that Dr. Zimmerman uses the term "arbitrary" only to describe the division of carriers, to the extent that Dr. Brody responds to this contention in his Rebuttal Report, he does so without arguing that the asserted claims are limited to a specific purpose. (D.I. 760-1, Ex. 24). Dr. Brody states, "A POSITA would understand that the margins are assigned in a 'purposeful' manner," and "the designation to which plurality each carrier belongs is purposefully determined based on which one of two different SNR margins is assigned to the carrier." (*Id.* at ¶¶ 34, 37). Dr. Brody also offers examples of how the margins assigned in carriers might be assigned in order to increase the data rate while maintaining a robust system (*id.* at ¶ 35), but I do not find that he improperly limits the claims to any specific additional "purpose" in doing so. I also do not find that these examples render his testimony unreliable or render the claims indefinite.

TQ Delta also asserts, "[T]he only reason Dr. Brody would need to discuss this topic at trial is if Dr. Zimmerman intends to offer his 'arbitrary' opinions at trial." (D.I. 771 at 4). Dr. Brody's testimony relating to the "purposeful" assignment of SNR margins and dividing of carriers, if offered at trial narrowly to respond to any assertion from ADTRAN's expert that

4

these processes are "arbitrary," appears further to resolve ADTRAN's concern about Dr. Brody's "unmoored" testimony being unhelpful to the jury. (D.I. 729 at 9).

When I refused to limit the scope of the claims to a preferred embodiment, I did not reject the idea that the invention might be configured in a non-arbitrary manner. Consistent with the Court's claim construction, Dr. Brody's testimony does not purport to limit the claims to any particular purpose, would not be unhelpful to the jury, and would not render the claims indefinite.

## IV. CONCLUSION

Thus, ADTRAN's Motion to Preclude is DENIED.

IT IS SO ORDERED this 31 day of October, 2019.

*[signature]*
United States District Judge