# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TQ DELTA, LLC, <br>     Plaintiff, <br> v. <br> ADTRAN, INC. <br>     Defendant. | Civil Action No. 14-cv-954-RGA |
| ADTRAN, INC, <br>     Plaintiff, <br> v. <br> TQ DELTA, LLC. <br>     Defendant. | Civil Action No. 15-cv-121-RGA |

**DEFENDANT ADTRAN, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF THE FAMILY 6 PATENTS UNDER 35 U.S.C. §§ 103 & 112 (No. 14-cv-954, D.I. 1090; No. 15-cv-121, D.I. 1087)**

OF COUNSEL:
Paul M. Sykes (admitted *pro hac* vice)
Benn C. Wilson (admitted *pro hac vice*)
Jake M. Gipson (admitted *pro hac vice*)
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 5th Avenue N
Birmingham, AL 35203
Phone: 205-521-8000
psykes@bradley.com
bcwilson@bradley.com
jgipson@bradley.com

Dated: June 26, 2020

Kenneth L. Dorsney (#3726)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Phone: 302-888-6800
Fax: 302-571-1750
kdorsney@morrisjames.com

*Attorneys for Defendant, Plaintiff, and Counterclaim Defendant ADTRAN, Inc.*

**Table of Contents**

**I.** The Asserted Claims of the 835 Patent Are Obvious over the Combination of G.992.1 and SC-060 .................................................................................................................................. 1

    **A.** The combination discloses a "transceiver" ........................................................... 1

    **B.** The combination discloses a "flag signal" ........................................................... 2

    **C.** The combination discloses "switch to using for a transmission, a second FIP setting following transmission of the flag signal" ................................................... 3

    **D.** A POSITA would be motivated to combine G.992.1 and SC-060 .................................... 3

**II.** The Asserted Claims of the 162 Patent Are Obvious over the Combination of G.992.1 and SC-060 .................................................................................................................................. 6

**III.** TQ Delta's Position That the Asserted Claims Are not Obvious Establishes That They Are Invalid for Lack of Enablement ................................................................................... 6

**IV.** The Claims of the 835 Patent Are Invalid for Lack of Written Description Because the Family 6 Specification Does Not Provide Written Description of Switching During Initialization Using a Flag Signal ................................................................................................................. 7

**V.** The Claims of the 835 Patent Are Invalid for Lack of Written Description and/or Enablement Because the Specification Does not Enable or Provide Written Description of Adapting One FEC Parameter Value ....................................................................................... 7

**VI.** The Claims of the 835 Patent Are Invalid as Indefinite ..................................................... 10

**VII.** Conclusion ........................................................................................................................ 10

## Table of Authorities

**Cases**
*AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*, 759 F.3d 1285 (Fed. Cir. 2014)8
*Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336 (Fed. Cir. 2010) ......................................... 8
*In re Fulton*, 391 F.3d 1195 (Fed. Cir. 2000) ............................................................................ 4, 5
*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007) ................................................................ 1, 4, 6
*Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371 (Fed. Cir. 2007) ......................................... 8
*McRO, Inc. v. Bandai Namco Games Am. Inc.*, 959 F.3d 1091 (Fed. Cir. 2020) .......................... 8
*Sitrick v. Dreamworks, LLC*, 516 F.3d 993 (Fed. Cir. 2008) .......................................................... 8
*Tobinick v. Olmarker*, 753 F.3d 1220 (Fed. Cir. 2014) ................................................................. 8
*Uber Techs., Inc. v. X One, Inc.*, 957 F.3d 1334 (Fed. Cir. 2020) .................................................. 4
*Web Technologies, Inc. v. InfoUSA, Inc.*, 587 F.3d 1324 (Fed. Cir. 2009) .................................... 5

To avoid the inescapable conclusion that the Asserted Claims are obvious, TQ Delta constricts and distorts the law of obviousness and supports its argument with illogical, unsupportable interpretations of the prior art. Based on undisputed facts, the claims are obvious.

As to the § 112 grounds of invalidity, the theme remains the same. TQ Delta ignores the requirements for enablement and written description while offering unsupported opinions contrary to the Family 6 specification and the known technology.

## I. The Asserted Claims of the 835 Patent Are Obvious over the Combination of G.992.1 and SC-060

TQ Delta raises no factual disputes regarding whether G.992.1 and SC-060 disclose the elements. It claims to have done so, but it presents no expert testimony or other evidence contradicting Mr. McNair's opinions. The issue of obviousness boils down to motivation to combine, and undisputed facts show this a paradigmatic case of obviousness. When claims "simply arrange[] old elements with each performing the same function it had been known to perform and yield[] no more than one would expect from such an arrangement, the combination is obvious." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007) (internal quotation marks omitted). And that is precise the case here where the proposed combination is nothing more than "a structure already known in the prior art"—an ADSL transceiver described in G.992.1—"that is altered by the mere substitution of one element"—the AOC-based message to coordinate the switching of parameter values in an online reconfiguration in G.992.1—"for another known in the field"—a sync flag to coordinate the switching of parameter values. *KSR*, 550 U.S. at 416.

### A. The combination discloses a "transceiver"

It is unfortunate (and telling) that any space or time must be spent on this argument. From the beginning TQ Delta argued the Court's construction was the "generally accepted definition"

1

of the "well-understood" term transceiver. D.I. 180 at 24.[1] Consistent with that definition, Mr. McNair opined that the disclosure of an ADSL transceiver satisfies this claim element, including the shared circuitry requirement, D.I. 1107, Ex. A ¶¶ 135-37, 184, 214, and in reply he identified specific shared circuitry, *id.*, Ex. C ¶¶ 69-73, 174-78. TQ Delta identifies no evidence to the contrary from either SC-060 or G.992.1. Instead it baselessly attacks Mr. McNair's background. No *Daubert* motion has been filed, and Mr. McNair is qualified to testify as to the meaning of the DSL transceivers in the references. That should end the matter.

Over two years ago, ADTRAN warned that TQ Delta might pointlessly challenge the disclosure of a transceiver in a DSL reference. D.I. 370 at 11:9-12:11.[2] That it has now chosen to do so underscores the weakness of its position. The Court correctly suggested this argument should fail two years ago. *Id.* 12:2-6. Nothing has changed.

B.     The combination discloses a "flag signal"

TQ Delta identifies no factual disputes, so it is unrebutted that the combination discloses this element. Instead, it inaccurately suggests that Mr. McNair offered a new theory in his reply and then concludes this was improper or evidence of a factual dispute. D.I. 1128 at 8-9. Mr. McNair's entire analysis is based on the *combination* of G.992.1 and SC-060—and specifically the use of SC-060's Synch Flag-based technique to coordinate the switch in parameters with G.992.1's dynamic rate adaptation (DRA) procedure. D.I. 1107, Ex. A ¶¶ 209-42. Dr. Madisetti's decision to myopically and unreasonably interpret Mr. McNair's reference to SC-060's Synch Flag without reference to the proposed combination in his rebuttal report is not

---

[1] The argument began with Family 1, and TQ Delta repeated it in Family 6. D.I. 298 at 25. All docket cites are to No. 14-cv-954 unless otherwise noted.
[2] TQ Delta's purported concern was excluding references with separate or unrelated transmitters and receivers. D.I. 180 at 24. TQ Delta has not argued this is the case in G.992.1 or SC-060.

2

grounds to deny summary judgment.³

### C. The combination discloses "switch to using for a transmission, a second FIP setting following transmission of the flag signal"

Again, TQ Delta does not offer any factual dispute, so it is undisputed that the combination discloses this element. Confusingly, TQ Delta quotes a lengthy excerpt from Dr. Madisetti's report discussing motivation to combine, not the disclosure of this element. D.I. 1128 at 9-10. It then incorrectly argues that Mr. McNair offered "new contradictory opinions" in reply. In reply, Mr. McNair reiterated that his proposed combination included the additional Synch Flag Superframe and Superframe Delay parameters.⁴ D.I. 1107, Ex. C ¶ 174. He then explained that Dr. Madisetti's opinion that a POSITA would not know how to use the Synch Flag without the additional parameters was also wrong because, at the least, the G.992.3 standard and Mr. Tzannes's prior art 410 patent use a sync flag without the additional parameters. *Id.* ¶ 175. There is no inconsistency. Instead, the references affirmatively show that an inverted sync symbol can be used as a flag signal for online reconfiguration with or without the parameters. More importantly, nothing in TQ Delta's incorrect argument challenges the disclosure of this element.

### D. A POSITA would be motivated to combine G.992.1 and SC-060

The undisputed facts establish a straightforward case of obviousness as a matter of law. When the prior art discloses a "a finite number of identified, predictable solutions"—here, either a message or a flag⁵—to a known design need—here, coordinating the timing of switching parameters in an online reconfiguration—then those solutions are obvious choices to a POSITA.

---

³ TQ Delta has not been shy about offering improper, untimely arguments in its response and Dr. Madisetti's declaration (D.I. 1129). That it offered nothing for this element is telling.
⁴ The additional parameters are not required by the claims, so whether they are used is irrelevant to whether the element is disclosed.
⁵ In addition to being the alternatives in the prior art, these are also the two alternatives disclosed in the Family 6 patents. D.I. 1093, Ex. 1 at 11:10-12:37.

*Uber Techs., Inc. v. X One, Inc.*, 957 F.3d 1334, 1339 (Fed. Cir. 2020). And, "if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond that person's skill." *KSR*, 550 U.S. at 401. Here, multiple references, including a prior art reference from the inventor Mr. Tzannes, establish that a flag was not simply a known alternative, but a known better one. D.I. 1092 at 10-15.

Dr. Madisetti's argument for teaching away, D.I. 1128 at 10-11, does not meet the standard. While SC-060 recognizes that FIP setting adaptations have "complex interactions," SC-060 encourages a POSITA by explaining that the issue was "for further study." D.I. 1107, Ex. C ¶ 185. Suggesting that a combination be studied does not teach away. *In re Fulton*, 391 F.3d 1195, 1201 (Fed. Cir. 2000) (prior art did not teach away "because such disclosure does not criticize, discredit, or otherwise discourage the [claimed] solution"). Similarly, silence does not teach away, so the absence of DRA from G.992.3 does not support Dr. Madisetti's conclusion.

Dr. Madisetti's warm restart argument, D.I. 1128 at 11, is also legally and factually deficient. Even assuming his proposal was a possible (and, according to Dr. Madisetti, preferable) alternative design, alternative designs do not negate a motivation to combine. Federal Circuit "case law does not require that a particular combination must be the preferred, or the most desirable, combination described in the prior art." *In re Fulton*, 391 F.3d at 1200. But Dr. Madisetti's restart alternative does not even logically follow from the references. G.992.1's suggestion of a warm restart as an "augment[ation]" does not suggest that a POSITA would drop the well-known technique of online reconfiguration and instead use a warm restart failsafe as the primary or exclusive way to reconfigure FIP settings. D.I. 1107, Ex. C ¶ 186. It teaches the opposite: a POSITA would look for a more reliable way to coordinate the transition while

maintaining the widely recognized benefits of online reconfiguration. *Id.*[6]

Dr. Madisetti's new, untimely opinions do not change the outcome.[7] Dr. Madisetti first argues that using the additional parameters with SC-060's Synch Flag "militates against" a motivation to combine because the parameters are communicated via a message. D.I. 1128 at 12-13. His point is both wrong and, more importantly, legally irrelevant. The use of a sync flag—either with or without additional parameters—is one of the limited number of known techniques to coordinate the timing of an online reconfiguration. That design choice between known alternatives is obvious. *Uber Techs.*, 957 F.3d at 1339.[8] It is not necessary to establish that use of the Synch Flag with additional parameters is the optimal design or even superior to G.992.1's message-based technique. *In re Fulton*, 391 F.3d at 1200. And Dr. Madisetti's argument is also factually unsupported because it is directly contradicted by, for example, the inventor's own disclosures. Mr. Tzannes's prior art 410 patent taught the benefit of a sync flag technique, D.I. 1107, Ex. A ¶ 242; D.I. 1093, Ex. 6 at 19:17-40, while still using overhead messages to communicate other information, D.I. 1093, Ex. 6 at 18:23-28. By focusing only on the *additional* benefits of the additional parameters, Dr. Madisetti ignores the undisputed benefit of a sync flag.

Dr. Madisetti's claim that the use of a Synch Flag would be inoperable without SC-060's additional parameters, D.I. 1128 at 13-14, is irrelevant and demonstrably wrong. It is irrelevant

---

[6] Although G.992.3 sets out the short initialization on which Dr. Madisetti relies, it does not use a short initialization to coordinate online reconfiguration. D.I. 1107, Ex. C ¶ 127.

[7] TQ Delta's claim that Dr. Madisetti's new opinions respond to "new" opinions offered by Mr. McNair is inaccurate and does not justify these untimely opinions. And, even assuming Dr. Madisetti's intentional ignorance in his rebuttal report can justify supplementation, it certainly does not justify waiting two months to offer those opinions in an unexamined declaration offered with a summary judgment response. ADTRAN will move to strike these opinions. But even considered, summary judgment in ADTRAN's favor is still required.

[8] The known techniques need not be limited to two for the design choice to be obvious. *See Web Technologies, Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1331 (Fed. Cir. 2009) (three options).

because that is not the primary combination that Mr. McNair proposed. It is demonstrably wrong because G.992.3 and the 410 patent demonstrate that a POSITA would be able to use SC-060's Synch Flag without the additional parameters. D.I. 1107, Ex. C ¶ 175. The same is taught by SC-060: the transceiver would monitor for a Synch Flag on all sync frames rather than a particular one indicated by the Synch Flag Superframe parameter and would switch settings at a fixed time following the Synch Flag rather than a programmable time indicated by the Superframe Delay parameter. D.I. 1093, Ex. 4 at 6. Dr. Madisetti's argument assumes a POSITA who not only lacks "ordinary creativity," *KSR*, 550 U.S. at 421, but even a basic grounding in the art. In the end, Dr. Madisetti's opinions on motivation to combine are legally deficient and supported by nothing other than his desire to avoid summary judgment.

## II. The Asserted Claims of the 162 Patent Are Obvious over the Combination of G.992.1 and SC-060

For the 162 patent, TQ Delta only incorporates its argument on motivation to combine and does not challenge the disclosure of any elements. D.I. 1128 at 14. For the reasons set out above, that argument fails.

## III. TQ Delta's Position That the Asserted Claims Are not Obvious Establishes That They Are Invalid for Lack of Enablement

ADTRAN has presented clear and convincing evidence that the Asserted Claims are obvious. To get around this, TQ Delta takes the position that Mr. McNair's straightforward combination of known elements performing their established function is beyond the skill of a POSITA. But if that's true, the Asserted Claims are not enabled. Specifically, Dr. Madisetti argues that a POSITA would be discouraged from pursuing Mr. McNair's proposed combinations because the prior art references allegedly describe online reconfiguration of FIP settings as complex, difficult, undesirable, or even impossible. If accepted, Dr. Madisetti's

opinions prove that all Asserted Claims are invalid for lack of enablement because the Family 6 patents disclose nothing to resolve these alleged complexities. D.I. 1107, Ex. A ¶¶ 313-15, Ex. C ¶¶ 271-72. To be clear, Mr. McNair's opinion is that the claims are obvious because a POSITA would have been motivated to make the proposed modifications and combinations and would have had a reasonable likelihood of success in doing so. But if TQ Delta continues to argue to the contrary, then its own expert opinions establish that the claims are not enabled.

### IV. The Claims of the 835 Patent Are Invalid for Lack of Written Description Because the Family 6 Specification Does Not Provide Written Description of Switching During Initialization Using a Flag Signal

TQ Delta and Dr. Madisetti's reliance on the O-P-ISYNCHRO2 and R-P-ISYNCHRO2 signals, D.I. 1128 at 15-16, cannot create written description that does not exist. The specification—and Mr. McNair's unrebutted testimony based on it—show that the O-P-ISYNCHRO2 or R-P-ISYNCHRO2 signals indicate that the transceivers should transition to a state where new (currently unknown) FIP settings can be negotiated, not a state where new FIP settings are used for transmission. D.I. 1107, Ex. A ¶¶ 297-300, Ex. C. ¶¶ 261-62. TQ Delta elides that critical distinction and relies only on the fact that the O-P-ISYNCHRO2 and R-P-ISYNCHRO2 signals occur before a second FIP setting is used. D.I. 1128 at 15-16. A temporal relationship alone does not satisfy the "indicat[ing]" function required by the claims. D.I. 1107, Ex. C ¶¶ 263-64. Thus, the claims are invalid for lack of written description.

### V. The Claims of the 835 Patent Are Invalid for Lack of Written Description and/or Enablement Because the Specification Does not Enable or Provide Written Description of Adapting One FEC Parameter Value

TQ Delta's responses are based on incorrect legal understandings and flawed, conclusory technical positions. The full scope of the claims must be enabled and described, and it is undisputed that the specification does not enable or describe changing a single FEC parameter.

7

First, TQ Delta's argument that "the claim does not *require* that one and only one FIP value change," D.I. 1128 at 16, is irrelevant. The claims are not *limited* to changing one and only one FIP value, but as TQ Delta admits, the claims explicitly cover that scenario. *Id.* That scenario must be enabled and described because the full scope of the claims must be enabled and have proper written description. *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999 (Fed. Cir. 2008); *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1353–54 (Fed. Cir. 2010).

TQ Delta's reliance on changing interleaver depth is neither legally nor factually sufficient to save the claims. First, TQ Delta's claim that not every variant of the claims must be explicitly described and that describing a single embodiment is sufficient written description, D.I. 1128 at 18-19, distorts those standards. While every possible embodiment need not be explicitly found in the specification, the embodiments in the specification must still enable the "full scope" of the claims. *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 959 F.3d 1091, 1100 (Fed. Cir. 2020). And while a single embodiment can provide adequate written description, that embodiment must convey possession of the claimed invention. *Tobinick v. Olmarker*, 753 F.3d 1220, 1226 (Fed. Cir. 2014). Enabling and describing an alternate embodiment is not enough if that disclosure does not enable and describe the *full scope* of the claims. *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1380 (Fed. Cir. 2007); *AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1299 (Fed. Cir. 2014). An embodiment where only interleaver depth is changed (which is not described in the specification) does not enable and describe the impossible embodiment of changing only a single FEC parameter value.

TQ Delta's argument is also not factually supported. TQ Delta cites to no evidence from its experts that the specification describes an embodiment where only interleaver depth changes. And the portion of the specification TQ Delta cites shows exactly the opposite D.I. 1128 at 17

8

("D could *also be modified in addition*" (quoting 835 patent at 13:43-45) (emphasis added)).[9] Mr. McNair did not agree such an embodiment was described. His testimony discusses whether changing interleaver depth changes a FIP value, not the disclosure of the specification.

Finally, it is undisputed that it is not possible to change a single FEC parameter value in FEC block coding. TQ Delta mischaracterizes Mr. McNair's opinion as improperly limited to R-S coding. D.I. 1128 at 18. That is wrong. He properly limited the claims to FEC block coding. D.I. 1107, Ex. A ¶ 290. That opinion is undisputed. And TQ Delta's belated reliance on "puncturing" does not save the claims. "Puncturing" appears nowhere in the specification. Changing a single FEC value (by puncturing or otherwise) is not described in the specification. The specification explicitly describes changing *combinations* of parameters, not a single FEC parameter. D.I. 1128 at 19 (citing 835 patent at 13:43-45). Contrary to TQ Delta's suggestion, Mr. McNair did not testify that puncturing permits N alone to change. Instead, he plainly stated that when puncturing is applied "you haven't changed the underlying code." D.I. 1108, Ex. F at 176:13-14, 177:16-20. Mr. McNair's testimony is consistent with his expert report and does not create a dispute on this technical point.[10] There is no dispute that the full scope of the claims covers a scenario where only one FEC parameter value changes. The inventor did not invent, and the specification did not enable or describe, something known to be technologically impossible.

---

[9] Similarly, changing combinations of parameters, not interleaver depth D alone, is described. In the only instance where the specification contemplates changing D, N is also changed. D.I. 1093, Ex. 1 at 13:43-53. There is no disclosure of changing D alone.

[10] TQ Delta's brazen attempt to create a factual issue with untimely testimony from Dr. Madisetti should be rejected. There is no justification for offering opinions on "puncturing" for the first time in a declaration accompanying TQ Delta's brief. ADTRAN will move to strike this improper testimony. His conclusory opinions also do not create a factual dispute. He never disputes that N = K + R and offers no explanation for how the codeword size can be changed without eliminating a corresponding portion of either the information or redundancy bytes that make up that codeword for transmission.

## VI. The Claims of the 835 Patent Are Invalid as Indefinite

TQ Delta argues that ADTRAN's argument on indefiniteness is too short and based on a misapplication of the term "FIP setting." D.I. 1128 at 20. Neither is true.

The first point barely merits response. ADTRAN's argument was short because it is simple: if a FIP setting can be constructed arbitrarily, then a POSITA would not be reasonably certain of the scope of the claims. Mr. McNair illustrated the point with an example that took less a page of his expert report. That example did not need to be copied word for word to apprise the Court of the argument.[11]

The second point fares no better. TQ Delta does not point to any expert testimony to contradict Mr. McNair's point. More revealing, it also still does not clearly state whether the claimed FIP setting must include all FEC parameter values or whether it can be comprised of a subset of those values. TQ Delta cannot have it both ways. The claim term "FIP setting" either includes all FEC parameters, or it does not. If TQ Delta is unwilling or unable to state what FIP setting means—or contends that FIP setting is reasonably susceptible to both interpretations—then that itself underscores the indefiniteness of the claims.

## VII. Conclusion

For the reasons set forth above, the Court should grant ADTRAN's motion for summary judgment of invalidity under 35 U.S.C. §§ 103 & 112.

---

[11] That TQ Delta's only legal support for the point is an appellate court's rejection of a petitioner's attempt in an extradition case to incorporate by reference into an appellate brief an Emoluments Clause argument made only in a district court filing speaks volumes.

Dated: June 26, 2020

| | |
|---|---|
| OF COUNSEL:<br>Paul M. Sykes (admitted *pro hac* vice)<br>Benn C. Wilson (admitted *pro hac vice*)<br>Jake M. Gipson (admitted *pro hac vice*)<br>BRADLEY ARANT BOULT CUMMINGS LLP<br>One Federal Place<br>1819 5th Avenue N<br>Birmingham, AL 35203<br>Phone: 205-521-8000<br>psykes@bradley.com<br>bcwilson@bradley.com<br>jgipson@bradley.com |    */s/ Kenneth L. Dorsney*<br>Kenneth L. Dorsney (#3726)<br>MORRIS JAMES LLP<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Phone: 302-888-6800<br>Fax: 302-571-1750<br>kdorsney@morrisjames.com<br><br>*Attorneys for Defendant, Plaintiff, and*<br>*Counterclaim Defendant ADTRAN, Inc.* |