## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TQ DELTA, LLC, | | |
| | Plaintiff, | Civil Action No. 14-cv-954-RGA |
| v. | | |
| ADTRAN, INC. | | |
| | Defendant. | |
| ADTRAN, INC, | | |
| | Plaintiff, | Civil Action No. 15-cv-121-RGA |
| v. | | |
| TQ DELTA, LLC. | | |
| | Defendant. | |

## ADTRAN, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO STRIKE UNDISCLOSED EXPERT OPINIONS FROM DR. MADISETTI'S FAMILY 6 DECLARATION (D.I. 1129)

OF COUNSEL:

Paul M. Sykes (admitted *pro hac* vice)
Benn C. Wilson (admitted *pro hac vice*)
Jake M. Gipson (admitted *pro hac vice*)
BRADLY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 5th Avenue N
Birmingham, AL 35203
Phone: 205-521-8000
psykes@bradley.com
bcwilson@bradley.com
jgipson@bradley.com

Dated: July 8, 2020

Kenneth L. Dorsney (#3726)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Phone: 302-888-6800
Fax: 302-571-1750
kdorsney@morrisjames.com

*Attorneys for Defendant, Plaintiff, and Counterclaim Defendant ADTRAN, Inc.*

## Table of Contents

I.   Summary of the Argument ........................................................................... 1

II.  Nature and Stage of the Proceedings .......................................................... 2

III. Factual Background ..................................................................................... 2

     A.   The Court's Final Scheduling Order provided three opportunities to disclose expert testimony........................................................................... 2

     B.   Dr. Madisetti served three expert reports............................................. 3

     C.   Dr. Madisetti submitted a declaration containing new, previously undisclosed expert opinions during dispositive motion briefing. ................................. 3

          1.   Dr. Madisetti's Declaration discloses new opinions about the combination of G.992.1 and SC-060. ............................................ 3

          2.   Dr. Madisetti's Declaration discloses new opinions about the constraints of forward error correction coding............................. 6

     D.   TQ Delta is gaming its expert disclosures. ........................................... 8

IV. Legal Standards............................................................................................ 9

V.   Argument ................................................................................................... 10

     A.   TQ Delta has plainly violated the Federal Rules, the Court's Final Scheduling Order, and the Court's local rules. ....................................... 10

     B.   The appropriate sanction is exclusion. ............................................... 12

          1.   The surprise and prejudice support exclusion of new expert opinions..... 12

          2.   ADTRAN cannot cure the prejudice...................................... 14

          3.   TQ Delta's tactics are likely to disrupt the trial schedule......................... 15

          4.   TQ Delta was at least willful in violating the disclosure rules. ............... 15

          5.   The withheld opinions are not important. ................................. 17

VI. Conclusion................................................................................................. 18

## Table of Authorities

**Cases**

*Apotex, Inc. v. Cephalon, Inc.*, 2014 WL 4933009 (E.D. Pa. 2014).......................................14, 17

*Apotex, Inc. v. Cephalon, Inc.*, 2015 WL 12645734 (E.D. Pa. 2015)....................................12, 17

*Bridgestone Sports Co. Ltd. v. Acushnet Co.*, 2007 WL 521894...............................................9, 12

*Chase Manhattan Mtg. Corp. v. Advanta Corp.*, 2004 WL 912949 (D. Del. 2004) ...................18

*Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312 (Fed. Cir. 2016) .........................11

*In re TMI Litig.*, 193 F.3d 613 (3d Cir. 1999) .........................................................................9, 16

*INVISTA N. Am. S.a.r.l. v. M & G USA Corp.*, 2013 WL 3216109, at *3
(D. Del. June 25, 2013)...........................................................................................................14, 16

*Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977). 9, 11, 12

*Opengate Capital Grp. LLC v. Thermo Fisher Sci. Inc.*, 2016 WL 8488409
(D. Del. 2016) ........................................................................................................................14, 17

*Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 248 F.3d 29
(1st Cir. 2001) .............................................................................................................................10

*Praxair, Inc. v. ATMI, Inc.*, 231 F.R.D. 457 (D. Del. 2005).........................................................9

*R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262 (6th Cir. 2010)...................................10

*Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735 (7th Cir. 1998) .................................10

*Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc.*, 109 F.3d 739 (Fed. Cir. 1997) ...........15

**Rules**

D. Del. L.R. 7.1.3(c)(2).............................................................................................8, 9, 11, 15

Fed. R. Civ. P. 16(f)............................................................................................................................9

Fed. R. Civ. P. 26(a) ...........................................................................................................1, 9, 10, 15

Fed. R. Civ. P. 37(c) .........................................................................................................................9

## I.      Summary of the Argument

The Final Scheduling Order permitted three rounds of expert reports and required leave of Court to serve any new opinions. D.I. 369 ¶ 9.a. Dissatisfied (again) with that schedule, TQ Delta (again) had Dr. Madisetti prepare a declaration with new invalidity opinions in the middle of dispositive motions. D.I. 1129 (Madisetti Declaration); *see* D.I. 1015, 1016 (moving to strike Dr. Madisetti's new declarations submitted in the midst of Family 4 dispositive motions).

Withholding these opinions from Dr. Madisetti's expert reports violates Rule 26(a), and serving these new opinions without leave of Court violates the Final Scheduling Order.

This tactic is not new. TQ Delta has continually engaged in self-help through untimely, unilateral supplementation of its experts' opinions. TQ Delta's calculus is clear: In a calculated decision to ignore Rule 26 and the Scheduling Order, TQ Delta continues to serve new expert opinions without leave because TQ Delta believes *Pennypack* exempts it from the Rules and the Court's orders. This is not conjecture. TQ Delta has stated this rationale during the many meet-and-confers on these and other out-of-turn expert disclosures.

But this calculation should not be endorsed; instead, the new opinions should be stricken. ADTRAN is severely prejudiced by these untimely opinions, including opinions that seek to dispute previously undisputed facts. Too little time remains to cure the prejudice. And most important, TQ Delta's conduct is willful. In every other patent family, TQ Delta has engaged in similar conduct. The alternative—allowing the new opinions—will incentivize TQ Delta to continue its tactic of withholding expert opinions during expert discovery and then dribbling them out as TQ Delta sees fit—for every upcoming trial.

## II.     Nature and Stage of the Proceedings

This motion relates to the Family 6 patents. Opening expert reports were due February 28, 2020, rebuttal expert reports were due April 10, 2020, and reply expert reports were due April 24, 2020. D.I. 928; D.I. 948, 1013.[1] All expert discovery closed on May 29, 2020, and summary judgment and *Daubert* motions were due June 5, 2020. D.I. 1061, 1084. Roughly two months after reply expert reports were served, and two weeks after the dispositive motion deadline, Dr. Madisetti submitted his Declaration on June 19, 2020 (D.I. 1129). A pretrial conference is scheduled for August 21, 2020. Trial is set for August 31, 2020.

ADTRAN certifies that it has made a reasonable effort to resolve this issue before filing this motion. Counsel for ADTRAN and TQ Delta, including the parties' respective local counsel, met and conferred on June 29, 2020, but were unable to reach agreement.

## III.    Factual Background

The Court permitted three opportunities to serve expert reports. Dr. Madisetti went beyond those reports and submitted a declaration that contains wholly new expert opinions related to invalidity. As evidenced by both a long line of similar willful conduct and TQ Delta's admission during the meet and confer on this motion that Dr. Madisetti possessed at least one of his new opinions months before preparing his Rebuttal Report, the decision to withhold these opinions was willful.

### A.     The Court's Final Scheduling Order provided three opportunities to disclose expert testimony.

Under the Court's Final Scheduling Order, the parties had three opportunities to disclose expert testimony: opening reports, rebuttal reports, and reply reports. D.I. 369 ¶ 9.a. In two different ways, the Final Scheduling Order plainly stated that further disclosure of expert testimony

---

[1] Unless otherwise noted, all D.I. citations are to case no. 14-cv-954.

was not permitted without leave of Court: "No other expert reports will be permitted without either the consent of all parties or leave of the Court. . . . Any supplementation of expert reports may only be made after leave is granted by the Court for good cause shown." *Id.*

**B.      Dr. Madisetti served three expert reports.**

TQ Delta's primary expert on infringement and invalidity is Dr. Madisetti. During expert discovery, Dr. Madisetti served three expert reports:

- Expert Report of Vijay Madisetti, Ph.D., on Infringement of the Family 6 Patents (D.I. 1101, Ex. 3)

- Expert Report of Vijay Madisetti, Ph.D on Validity of U.S. Patent Nos. 8,462,835 and 8,594,162 (Family 6) (D.I. 1089, Ex. 3)

- Reply Expert Report of Vijay Madisetti, Ph. D., on Infringement of the Family 6 Patents (D.I. 1101, Ex. 10)

**C.      Dr. Madisetti submitted a declaration containing new, previously undisclosed expert opinions during dispositive motion briefing.**

Without consent or leave of Court, Dr. Madisetti submitted a declaration during briefing on dispositive motions that contains new opinions on invalidity. He could have and should have, but failed to, disclose these opinions during expert discovery.

**1.      Dr. Madisetti's Declaration discloses new opinions about the combination of G.992.1 and SC-060.**

In his Declaration, Dr. Madisetti offers two new opinions about the combination of prior art references G.992.1 and SC-060—specifically motivation to combine the references. D.I. 1129 ¶¶ 8-21. In his Opening Expert Report, ADTRAN's expert Bruce McNair opined that the Asserted Claims of the Family 6 patents were rendered obvious by the combination of G.992.1 and SC-060. D.I. 1107, Ex. A ¶¶ 209-42, 271-84. There is no excuse for Dr. Madisetti withholding his new opinions until submitting his Declaration during summary judgment briefing.

As a threshold matter, Dr. Madisetti's Declaration purports to be responding to opinions offered nearly two months earlier in Mr. McNair's reply expert report. D.I. 1129 ¶¶ 13-15, 17. Even assuming that is true—and it is not for the reasons discussed next—that alone shows TQ Delta withheld these opinions until *after* Dr. Madisetti's deposition (which was taken four weeks after reply report), until *after* dispositive and *Daubert* motions were due, and until the midst of briefing those motions. Thus, although not justified, TQ Delta could have sought leave to supplement Dr. Madisetti's opinions with his untimely, new opinions after receiving Mr. McNair's Reply Report. Yet it sat on them. TQ Delta chose never to seek leave at all and instead waited nearly *two months* (from April 24 to June 19) to offer those untimely, new opinions during summary judgment briefing.  This is willful violation of the Court's Final Scheduling Order.

Moreover, any assertion that Dr. Madisetti was responding to new opinions raised in Mr. McNair's Reply Report is wrong. Dr. Madisetti's first new opinion is that a POSITA would not be motivated to combine G.992.1 and SC-060 if SC-060's additional Synch Flag Superframe and Superframe Delay parameters were used in the combination because those parameters are communicated in a message. D.I. 1129 ¶¶ 15-16. Dr. Madisetti did not offer this opinion in his Rebuttal Report, nor does he claim that he did. Instead, he claims he was confused about Mr. McNair's opinion and did not understand that Mr. McNair was proposing the use of the additional parameters until Mr. McNair issued his Reply Report.  D.I. 1129 ¶¶ 11-13, 15. Dr. Madisetti's professed confusion is a veiled attempt to manufacture an excuse to withhold his rebuttal to opinions explicitly stated in Mr. McNair's Opening Report. Specifically, in providing his opinions on motivation to combine in his Opening Report, Mr. McNair explicitly relied on SC-060's explanation that its signaling technique would be particularly desirable as it is more robust and flexible than using a Synch flag alone *because of the use of the additional parameters*. D.I. 1107,

Ex. A ¶ 241. In other words, Mr. McNair identified the further benefits of the additional parameters as strengthening a POSITA's motivation to combine G.992.1 and SC-060. At the least, that opinion demonstrated that Mr. McNair contemplated that the additional parameters may be used, and Dr. Madisetti should have responded to that scenario in his rebuttal report.

Dr. Madisetti's second new opinion is that a POSITA would not have a reasonable expectation of success in combining SC-060's Synch Flag technique without the additional parameters. D.I. 1129 ¶¶ 17-21. Dr. Madisetti admits that he opined in his rebuttal report that "'it is clear that merely the Synch Flag cannot be used to effectuate SC-060's OLR.'" D.I. 1129 ¶ 12 (quoting Madisetti Validity Report ¶ 120). But his opinion stopped at that conclusory statement. Only in his Declaration did he expand his opinion to discuss the specific features of the additional parameters and how they related to his opinion. D.I. 1129 ¶¶ 17-20. Dr. Madisetti attempts to excuse his late disclosure as responding to Mr. McNair's opinion that it would have been well within the skill of a POSITA to implement SC-060's Synch Flag without the additional parameters. D.I. 1129 ¶ 14. But at the time of his rebuttal report, Dr. Madisetti had formed the opinion that "merely the Synch Flag cannot be used to effectuate SC-060's OLR," and it was incumbent on him to provide his support for that conclusory assertion at that time.

Dr. Madisetti's claim of confusion is not credible in light of Mr. McNair's Opening Report. Even assuming that Dr. Madisetti was confused about Mr. McNair's proposed combination, Dr. Madisetti's Declaration makes clear that at the time he issued his rebuttal report he understood there were two possibilities: using SC-060's Synch Flag either with or without the additional parameters. Yet, Dr. Madisetti chose not to offer his full opinions on either and instead: 1) to unilaterally withhold his opinion regarding the use of SC-060's Synch Flag with the additional

5

parameters and 2) to offer only a conclusory opinion without any supporting explanation regarding the use of SC-060's Synch Flag without the additional parameters in his rebuttal report.

## 2.   Dr. Madisetti's Declaration discloses new opinions about the constraints of forward error correction coding.

Dr. Madisetti's Declaration also contains new opinions about the use of "puncturing" in forward error correction (FEC) coding. D.I. 1129 ¶¶ 22-23. Specifically, Dr. Madisetti opined that when puncturing is used in conjunction with R-S coding (a specific type of FEC coding), the size of the codeword can be varied without changing the number of information or redundancy bytes of the codeword. *Id.* ¶ 23. Dr. Madisetti did not offer this specific opinion, any opinion about puncturing generally, or even any opinion about the relationship between the number of information and redundancy bytes and codeword size in R-S coding in his rebuttal report.

Dr. Madisetti claims this untimely, new opinion was offered to respond to "unclear" testimony in Mr. McNair's deposition. *Id.* That is far from what happened. Instead, TQ Delta and Dr. Madisetti are attempting to leverage TQ Delta's tactical choice to wait until Mr. McNair's deposition to raise the issue of puncturing and, when that failed, claim that Mr. McNair's testimony created an opening to provide new opinions that should have been offered in Dr. Madisetti's rebuttal report. That TQ Delta and Dr. Madisetti affirmatively chose to withhold his opinion regarding puncturing cannot be denied. During his deposition on his Family 6 reports against the ZyXel defendants, Dr. Madisetti unilaterally raised puncturing (which, true to form, he had not identified in his report in that instance either) when questioned on this issue. No. 1:13-cv-2013 (D. Del.), D.I. 671, Ex. 8 at 186:11-20.[2] Dr. Madisetti had formed this opinion by at least October 2019, but chose not to include it in a report issued in April 2020.

---

[2] Dr. Madisetti's failure to even offer a consistent opinion on puncturing demonstrates the lack of merit in this opinion. In October 2019, he claimed that when puncturing is applied the number of

Dr. Madisetti was obligated to do so. In Mr. McNair's opening report on invalidity, he opined that the claims of the 835 patent are invalid for lack of enablement and written description because the specification does not enable or describe changing the value of a single FEC parameter. D.I. 1107, Ex. A ¶¶ 285-95. Specifically, Mr. McNair explained that FEC block coding is characterized by three parameters (codeword size N, information bytes K, and redundancy bytes R), that the three parameters are related by the equation N=K+R, and that, as a result, it is impossible to change the value of a single FEC parameter in FEC block coding. *Id.* ¶¶ 289, 291-93.

In his rebuttal report, Dr. Madisetti *did not respond* to any of these opinions. Instead, Dr. Madisetti's entire rebuttal to Mr. McNair's argument under § 112 was limited to his opinion that the scope of the claims encompassed but did not require a single FEC parameter, and his (demonstrably incorrect) opinion that Mr. McNair was limiting the scope of the claims to R-S coding specifically. D.I. 1093, Ex. 3 ¶¶ 149-52; D.I. 1107, Ex. C ¶¶ 247-57.

 Regardless of whether Mr. McNair's deposition testimony about puncturing was "unclear" (or just not helpful to TQ Delta), Mr. McNair's opening report unequivocally raised the issue of the relationship between N, K, and R in FEC block coding. If Dr. Madisetti intended to dispute Mr. McNair's opinions on that technical point, he was required to do so in his rebuttal report. Dr. Madisetti (or TQ Delta) chose not to raise the issue of puncturing in Dr. Madisetti's rebuttal report and to withhold it until the deposition of Mr. McNair. That tactical choice is not a license to offer untimely, new opinions when it did not yield the answers TQ Delta was hoping for.

---

redundancy bytes R is varied. No. 1:13-cv-2013 (D. Del.), D.I. 671, Ex. 8 at 186:11-20. Here, he claims that when puncturing is applied the number of redundancy bytes R is maintained, but the codeword size N is varied. D.I. 1129 ¶¶ 22-23.

**D.      TQ Delta is gaming its expert disclosures.**

TQ Delta continues its strategy of gaming its expert disclosures. This fact is evidenced by TQ Delta's long line of similar conduct and its own admissions during the meet and confer on this motion.

As it did with Family 4, TQ Delta withheld the full scope of Dr. Madisetti's invalidity opinions until the parties were in the midst of summary judgment briefing. Its goals are both clear and impermissible. By withholding these opinions and offering them without leave and outside of expert discovery, TQ Delta hopes to manufacture a chance to have the last word on invalidity and to spin this unexamined testimony as creating a factual issue that precludes summary judgment in ADTRAN's favor, D.I. 1128 at 12-14 (relying on Dr. Madisetti's untimely opinions regarding the combination of G.992.1 and SC-060), 19 n.6 (relying on Dr. Madisetti's untimely opinions regarding puncturing in FEC coding), or even worse as supporting summary judgment in TQ Delta's favor, D.I. 1149 at 8-10 (relying on Dr. Madisetti's G.992.1 and SC-060 opinions); D.I. 1150 at 5 (relying on Dr. Madisetti's FEC opinion).[3] By withholding these opinions until the parties were in the middle of summary judgment briefing, TQ Delta also waited until after the deadline for *Daubert* motions to disclose these opinions.

That TQ Delta is gaming its expert disclosures is not conjecture. During the meet and confer on this motion, TQ Delta's counsel asserted that there was no prejudice because, as discussed above, months before serving his Rebuttal Report against ADTRAN, Dr. Madisetti volunteered a new opinion about puncturing during a deposition related to TQ Delta's Family 6 case against the ZyXel defendants. That is, TQ Delta admits that Dr. Madisetti possessed an opinion about puncturing *months before* serving his Rebuttal Report. If Dr. Madisetti and TQ Delta

---

[3] Local Rule 7.1.3(c)(2) prohibits the reservation of materials for reply that should have been offered in an opening brief.

wished to rely on that opinion in the case against ADTRAN, it was incumbent on Dr. Madisetti to disclose it. TQ Delta's deliberate withholding of that opinion has only one explanation—TQ Delta believes that the deadlines in the Federal Rules and the Court's Final Scheduling Order do not apply to it.

## IV.   Legal Standards

The Federal Rules require a party to adhere to the Court's scheduling orders. Fed. R. Civ. P. 16(f). If a party "fails to obey a scheduling or other pretrial order," the Court may issue any sanction authorized by Rule 37(b)(2)(A)(ii)–(vii), to include excluding evidence at trial.

The Rules also require an expert to provide a report containing "*a complete statement of all opinions*" and to provide the report "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(B)(i), (D) (emphasis added). If a party fails to comply, the withheld information may be excluded at trial. Fed. R. Civ. P. 37(c)(1).

The Court's local rules prohibit a party from "reserv[ing] material for the reply brief which should have been included in a full and fair opening brief." D. Del. L.R. 7.1.3(c)(2). A violation of this rule may also be punished by exclusion under Rule 16(f). *Praxair, Inc. v. ATMI, Inc.*, 231 F.R.D. 457, 464 (D. Del. 2005), *rev'd in part on other grounds*, 543 F.3d 1306 (Fed. Cir. 2008).

To determine if a violation of a scheduling order, Rule 26(a), or the local rules warrants striking undisclosed opinions, this Court considers the five *Pennypack* factors:

> (1) the prejudice or surprise to a party against whom the evidence is offered; (2) the ability of the injured party to cure the prejudice; (3) the likelihood of disruption to the trial schedule; (4) bad faith or willfulness involved in not complying with the disclosure rules; and (5) the importance of the evidence to the party offering it.

*Bridgestone Sports Co. Ltd. v. Acushnet Co.*, 2007 WL 521894, at *4 (D. Del. 2007) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977)); *In re TMI Litig.*, 193 F.3d 613, 721 (3d Cir. 1999).

## V.      Argument

The Court should strike the new opinions in Dr. Madisetti's Declaration and preclude TQ Delta from offering at trial any evidence related to such opinions. D.I. 1129 ¶¶ 8-23. As just the starting point, there is no dispute that TQ Delta's tactics are a trifecta of sanctionable conduct: (1) TQ Delta violated the Federal Rules; (2) TQ Delta violated the Court's Final Scheduling Order; and (3) TQ Delta violated the local rules. The only question is the appropriate sanction. In light of TQ Delta's track record of blatant violations of the Court's Final Scheduling Order, TQ Delta's calculated choice in withholding disclosure of these opinions until the midst of summary judgment briefing, and the significant prejudice that ADTRAN continues to suffer in this never-ending-game of "Whack-a-Mole" (D.I. 1001 at 2), the answer should be clear—strike these new opinions.

### A.      TQ Delta has plainly violated the Federal Rules, the Court's Final Scheduling Order, and the Court's local rules.

TQ Delta has plainly violated Federal Rule 26(a), the Court's Final Scheduling Order, and the Court's local rules. Each violation is sanctionable, and collectively, they are inexcusable.

First, TQ Delta violated the disclosure and timing requirements of Rule 26(a). The Rules do not permit expert disclosure by ambush, nor do they permit selectively disclosing only the opinions that a party is inclined to disclose at that time. *See, e.g.*, *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998); *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010); *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 248 F.3d 29, 35 (1st Cir. 2001). Yet TQ Delta did precisely that when it served a rebuttal invalidity report that failed to include a complete statement of Dr. Madisetti's opinions.

Second, TQ Delta violated the Court's Final Scheduling Order. In unambiguous terms, the Court's order required TQ Delta to seek "leave of the Court" before serving new expert opinions.

D.I. 369 ¶ 9.a. Regardless of any excuse TQ Delta may use to explain away the untimeliness of Dr. Madisetti's opinions, no excuse can fix its blatant disregard of the Court's Final Scheduling Order. *Cf. Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312, 1324 (Fed. Cir. 2016). Particularly because expert discovery had been closed for three weeks[4] (and over four weeks had elapsed following Dr. Madisetti's deposition) when Dr. Madisetti submitted his declaration, it was incumbent on TQ Delta to seek leave of Court. TQ Delta unquestionably did not.

To the extent that TQ Delta may try to use the *Pennypack* factors to sweep this violation under the rug, TQ Delta is (again) turning burdens on their head. *See* D.I. 988 at 4, 8 (arguing that late disclosure of infringement theories is okay because of the high burden under Third Circuit law on motions to strike). TQ Delta seemingly makes the calculated decision—time and time again— that it will get away with openly disregarding the Court's Final Scheduling Order and the Federal rules because it believes it can defeat a motion to strike under the *Pennypack* factors. But it is TQ Delta's burden in the first instance to establish good cause for its ever-expanding theories and opinions. ADTRAN should not be saddled with the burden of policing whether some good cause might exist. And the existence of the *Pennypack* factors does not render the Court's Final Scheduling Order merely advisory. "[W]illful deception or 'flagrant disregard' of a court order" is precisely when the *Pennypack* factors give way to enforcing the Court's Final Scheduling Order. 559 F.2d at 906.

Third, TQ Delta violated Local Rule 7.1.3(c)(2) by offering Dr. Madisetti's new opinions in support of its summary judgment reply briefs when, in all fairness, such evidence should have been included, at the very latest, in opening briefs. Although the Madisetti Declaration was

---

[4] The parties extended the deadline for expert discovery from May 22 to May 29 to accommodate the deposition of another of TQ Delta's experts, Dr. Almeroth. D.I. 1082 & 1084. Dr. Madisetti's deposition occurred May 21.

submitted contemporaneously with TQ Delta's opposition to ADTRAN's motion for summary judgment of invalidity, TQ Delta relied on the Declaration in its reply briefs in support of its motions for summary judgment of no invalidity as well. D.I. 1149 at 8-10 (relying on Dr. Madisetti's G.992.1 and SC-060 opinions); D.I. 1150 at 5 (relying on Dr. Madisetti's FEC opinion). As discussed above (§ III.D, *supra*), TQ Delta's tactic appears to be part of a larger strategy to game and sandbag its expert disclosures.

### B.      The appropriate sanction is exclusion.

As a sanction for TQ Delta's late disclosure of new expert opinions without leave of Court, the opinions should be struck and TQ Delta should be precluded from offering any testimony or evidence related to the opinions. At the outset, it bears emphasizing that this litigation (involving over 30 asserted patents) is "sophisticated" and "complex" and involves "parties represented by competent counsel." *Bridgestone*, 2007 WL 521894, at *4. As a result, "a strict showing [for] each of the *Pennypack* factors" is not required and the Court should be "less indulgent" of TQ Delta's failure to disclose. *Id.* But regardless, each *Pennypack* factor supports exclusion of the opinions. ADTRAN addresses each factor in turn.

### 1.      The surprise and prejudice support exclusion of new expert opinions.

The surprise and prejudice to ADTRAN support exclusion of Dr. Madisetti's new expert opinions. "Prejudice is inherent when deadlines are disregarded in complex cases with extensive discovery, particularly when supplemental expert reports are submitted following that expert's deposition." *Apotex, Inc. v. Cephalon, Inc.*, 2015 WL 12645734, at *2 (E.D. Pa. 2015).

First, it is surprising and prejudicial for Dr. Madisetti to offer new opinions on whether there is a motivation to combine G.992.1 and SC-060 in the midst of summary judgment briefing. § III.C.1, *supra*. To begin, withholding these opinions for two months until the middle of summary judgment briefing is severely prejudicial, as it presents ADTRAN with unpalatable choice of,

absent further supplementation, proceeding through summary judgment with an unbalanced record or acquiescing in TQ Delta's improper behavior and rushing to supplement Mr. McNair's opinions in the seven days between opposition and reply briefs. ADTRAN should not be put to that choice in family after family. Yet TQ Delta did wait two months. Moreover, Dr. Madisetti's claims of confusion are not credible in light of Mr. McNair's opinions that indicated that use of the additional parameters was at least a possibility, if not a requirement. Finally, Dr. Madisetti understood Mr. McNair's opinion to span two possibilities—the Synch Flag of SC-060 used with the additional parameters or without the additional parameters. Rather than address either of those two discrete possibilities, Dr. Madisetti claimed confusion in a transparent attempt to ensure that he could have the final word on the issue instead of Mr. McNair. That in and of itself shows that TQ Delta intended to surprise and prejudice ADTRAN with this new opinion.

Second, it is surprising and prejudicial for Dr. Madisetti to provide a new opinion on the technical issue of the impact of puncturing on FEC block coding when he never even challenged Mr. McNair's underlying opinion that it is impossible to change a single FEC parameter value in his rebuttal report. § III.C.2, *supra*. Dr. Madisetti had more than ample opportunity to offer this opinion in his rebuttal report. Dr. Madisetti does not even claim to be responding to an allegedly new opinion offered by Mr. McNair in reply. Instead, he and TQ Delta engaged in a naked attempt to leverage the tactical choice to wait until Mr. McNair's deposition to raise the issue and, when that failed, contort Mr. McNair's deposition testimony into a path for offering untimely opinions. The implications of permitting this strategy are clear: it incentivizes TQ Delta to withhold questionable positions from its reports and then manufacture a basis to offer unexamined testimony on the issue under the guise of responding to its own trial balloons floated at ADTRAN's expert deposition.

13

### 2.      ADTRAN cannot cure the prejudice.

At this late juncture, ADTRAN cannot cure the prejudice associated with TQ Delta's new expert opinions. As this Court has observed in a similar circumstance, "[t]o allow these new expert opinions, in the middle of summary judgment briefing and just prior to trial, would unduly prejudice [ADTRAN]." *INVISTA N. Am. S.a.r.l. v. M & G USA Corp.*, 2013 WL 3216109, at *3 (D. Del. June 25, 2013).

Simply offering Dr. Madisetti for deposition will not cure the prejudice. "What this offer does not take into account, though, is that plaintiffs' [invalidity] expert is not the only [such] expert in this case. Plaintiffs have made no provision for the additional time that would be required to allow defendants to [reply to] the [new expert opinions] (and the inevitable necessity of a deposition of the [reply] expert)." *Opengate Capital Grp. LLC v. Thermo Fisher Sci. Inc.*, 2016 WL 8488409, at *3 (D. Del. 2016). An additional deposition also would not account the expiration of the deadline for *Daubert* motions. *See Apotex, Inc. v. Cephalon, Inc.*, 2014 WL 4933009, at *1 (E.D. Pa. 2014) (finding prejudice where "the court structured its scheduling orders to give the parties assurance that the contemplated *Daubert* motions could and would be predicated upon . . . the orderly submission of [their] expert reports").

Trial is less than two months away. Curing the prejudice associated with the new opinions would require not only a deposition of Dr. Madisetti, but a supplemental expert report from Mr. McNair, and an opportunity for ADTRAN to file *Daubert* motions.[5] (Presumably, TQ Delta would also demand a deposition of Mr. McNair.) At this late stage, there is too little time left and too much work required to address the issues that TQ Delta has unilaterally injected into the case.

---

[5] The possibility that TQ Delta will feel entitled to respond with a further report from Dr. Madisetti (whether authorized or not) also cannot be ruled out.

### 3. TQ Delta's tactics are likely to disrupt the trial schedule.

TQ Delta's belated disclosure of new expert opinions on invalidity, if allowed, is likely to disrupt the trial schedule. Dr. Madisetti offers new opinions on two different invalidity bases. If allowed, the inclusion of these opinions would require a supplemental response from Mr. McNair, deposition of one or both experts, and potentially supplementation of already completed briefing. Moreover, all of this work would have to be completed simultaneous with final submissions and final preparations for trial. Such a schedule would be manifestly unfair to ADTRAN. A continuance may be necessary to remedy TQ Delta's untimely disclosures. This factor therefore weighs strongly in favor of striking the opinions because "grant of a continuance would not deter future dilatory behavior, nor serve to enforce local rules or court imposed scheduling orders." *Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc.*, 109 F.3d 739, 745 (Fed. Cir. 1997) (affirming exclusion of new opinions under similar Fifth Circuit standard).

### 4. TQ Delta was at least willful in violating the disclosure rules.

TQ Delta acts at least willfully in its repeated violations of the rules. TQ Delta knows its obligation to serve expert reports containing a complete statement of its expert's opinions in accordance with the Court's schedule (Fed. R. Civ. P. 26(a)), TQ Delta knows its obligation to seek leave of Court before serving new expert opinions (D.I. 369 ¶ 9.a), and TQ Delta knows that it is not permissible to withhold expert evidence until summary judgment replies and after the *Daubert* motion deadline (D. Del. L.R. 7.1.3(c)(2)). None of these violations is a one-off mistake; they are repeated and flagrant violations of the rules. And TQ Delta's brazenness is only escalating.

In every single patent family that TQ Delta has litigated so far, it has employed the tactic of serving new expert opinions first and making the defendants ask questions later. TQ Delta first proceeded against 2Wire on Families 1, 2, and 3. For every one of those families, TQ Delta served unauthorized supplemental reports and new expert declarations with its summary judgment reply

15

briefing. *See* No. 13-cv-1835, D.I. 738 at 1; D.I. 744, Exs. C–E (Putnam Supplemental Reports for Families 1, 2, and 3); D.I. 971 (Dr. Almeroth Declaration in support of Family 2 summary judgment reply); D.I. 974 (Dr. Almeroth Declaration in support of Family 3 summary judgment reply). Next, against ADTRAN in Family 9, TQ Delta's expert served a supplemental reply report after its expert's first deposition. D.I. 687, Ex. 3 at 197:17–19. In Family 10, Dr. Cooklev served a supplemental testing report that addressed material that TQ Delta's counsel possessed *before* Dr. Cooklev's reply report. D.I. 736, Ex. 12; D.I. 733 at 7–8.

In Family 4, TQ Delta elevated its unauthorized supplements and blatant disregard of the rules to another level. Dr. Cooklev and Dr. Madisetti both served purported surreply reports on invalidity. D.I. 968, Exs. 11–12. Then, after serving only an opening report and skipping a reply report, Dr. Almeroth served an unauthorized supplemental report on the eve of his deposition. D.I. 954, Ex. 4. And, as it did here, TQ Delta filed an Opposition Declaration and Reply Declaration from Dr. Madisetti well after the close of expert discovery and the *Daubert* motion deadline. D.I. 990; D.I. 1005. ADTRAN's motion to strike those declarations is still pending. D.I. 1015.

In all of this, **_not once_** has TQ Delta respected the Final Scheduling Order by requesting leave of Court, let alone actually receiving leave. *Compare INVISTA*, 2013 WL 3216109, at *5 (suggesting party "purposefully disregarded the scheduling order and engaged in trial by ambush with its eleventh-hour defense"). The same is true of TQ Delta's serial attempts to add new infringement theories without once requesting leave of Court to do so. *See* D.I. 964 at 19 (cataloging TQ Delta's repeated practice of belatedly asserting new infringement theories); D.I. 1038 at 17-18 (same).

In the Third Circuit, these repeated violations of court orders are compelling proof that TQ Delta is acting at least willfully. *In re TMI Litig.*, 193 F.3d at 721 (affirming exclusion of expert

reports in part because of "Plaintiffs repeated violation of numerous orders of th[e] court, failure to seek leave of court before filing untimely reports, and 'covert' filing of additional reports").

This factor is particularly compelling because this litigation is so complex and because up to seven other trials[6] remain on the calendar. Thus, maintaining "orderly and efficient compliance" with expert disclosure requirements is essential. *Apotex*, 2015 WL 12645734, at *2. In complex cases, courts have been loathe to allow gamesmanship of even a lesser degree:

> This litigation has required extensive case management. The court has sought and obtained input from the parties throughout the process in the setting of scheduling orders and has, on numerous occasions, made adjustments to the scheduling when the parties agreed or where good cause was shown. The submission of a further supplemental report, however, was not contemplated by [the] scheduling order and [plaintiff] did not even seek leave to serve it. [The] argument that the report is timely as "expert discovery" . . . was to be "completed by March 18, 2014" ignores the clear deadlines for the completion of "all supplemental fact discovery" and submission of expert reports specifically set out in the scheduling orders.

*Apotex*, 2014 WL 4933009, at *2 (citations omitted).

Without enforcing the Final Scheduling Order, TQ Delta will only continue in its willful disregard of the rules. This factor weighs strongly in favor of exclusion.

### 5.     The withheld opinions are not important.

The relative importance of Dr. Madisetti's new opinions supports exclusion. On both issues—obviousness over the combination of G.992.1 and SC-060 and lack of enablement and written description for changing a single FEC parameter—TQ Delta and Dr. Madisetti offered multiple arguments in addition to Dr. Madisetti's untimely, new opinions. Thus, striking Dr. Madisetti's new opinions will not alone be dispositive of TQ Delta's claims, and the extreme lateness of the new opinions corroborates their relative unimportance. *See Opengate*, 2016 WL

---

[6] Families 2, 7, and 3 remain against ADTRAN, and Families 4 and 6 remain against 2Wire. In addition, Family 4 against ADTRAN is fully briefed, but does not currently have a trial date. Also, there will be a separate damages trial for each defendant.

8488409, at *4 (quoting *Chase Manhattan Mtg. Corp. v. Advanta Corp.*, 2004 WL 912949, at *1 (D. Del. 2004)) ("[I]f the evidence its now sought to bring into the trial were genuine critical, [TQ Delta] could have and should have made a motion to supplement months ago."). Because these opinions are not "critical evidence," the reluctance to strike does not apply. *Id.* This factor therefore weighs in favor of exclusion.

## VI.   Conclusion

For the foregoing reasons, ADTRAN asks the Court to strike Dr. Madisetti's new opinions (D.I. 1129 ¶¶ 8-23) and preclude TQ Delta from offering any evidence related to those opinions.

In the alternative that the Court does not strike some of Dr. Madisetti's new opinions, ADTRAN asks the Court to enter a schedule to allow ADTRAN a reasonable time to respond with its own expert testimony, take the deposition of Dr. Madisetti, and file any *Daubert* motions.


Dated: July 8, 2020

OF COUNSEL:

<table>
<tr><td>Paul M. Sykes (admitted <i>pro hac</i> vice)</td><td>  <i>/s/ Kenneth L. Dorsney</i></td></tr>
<tr><td>Benn C. Wilson (admitted <i>pro hac vice</i>)</td><td>Kenneth L. Dorsney (#3726)</td></tr>
<tr><td>Jake M. Gipson (admitted <i>pro hac vice</i>)</td><td>MORRIS JAMES LLP</td></tr>
<tr><td>BRADLY ARANT BOULT CUMMINGS LLP</td><td>500 Delaware Avenue, Suite 1500</td></tr>
<tr><td>One Federal Place</td><td>Wilmington, DE 19801</td></tr>
<tr><td>1819 5th Avenue N</td><td>Phone: 302-888-6800</td></tr>
<tr><td>Birmingham, AL 35203</td><td>Fax: 302-571-1750</td></tr>
<tr><td>Phone: 205-521-8000</td><td>kdorsney@morrisjames.com</td></tr>
<tr><td>psykes@bradley.com</td><td></td></tr>
<tr><td>bcwilson@bradley.com</td><td><i>Attorneys for Defendant, Plaintiff, and</i></td></tr>
<tr><td>jgipson@bradley.com</td><td><i>Counterclaim Defendant ADTRAN, Inc.</i></td></tr>
</table>

18