IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TQ DELTA, LLC,<br><br>      Plaintiff;<br> v.<br>ADTRAN, INC.,<br><br>      Defendant. | | Civil Action No. 14-954-RGA |
| ADTRAN, INC.,<br><br>      Plaintiff;<br> v.<br>TQ DELTA, LLC,<br><br>      Defendant. | | Civil Action No. 15-121-RGA |

**<u>MEMORANDUM ORDER</u>**

   Before me is Defendant Adtran Inc.'s Motion to Strike Reply Expert Opinions Based on the Doctrine of Equivalents (D.I. 962) and Plaintiff TQ Delta LLC's Motion to Strike Undisclosed Expert Opinions from the Declaration of Dr. George Zimmerman (D.I. 1018).[1] I

---

[1] All docket entry numbers refer to No. 14-954-RGA. Accordingly, Adtran's corresponding motion in No. 15-121-RGA, D.I. 959, is granted, and TQ Delta's corresponding motion, D.I. 1014, is dismissed as moot.

1

have reviewed the briefing. (D.I. 964, 988, 1001; D.I. 1019, 1035, 1053). Defendant's motion is granted, and Plaintiff's motion is dismissed as moot.

## I.    BACKGROUND

TQ Delta filed this lawsuit on July 17, 2014, alleging that Adtran infringed its patents related to Digital Subscriber Line (DSL) technology. (D.I. 1). I bifurcated the case into separate trials for each patent family. (D.I. 369). These motions are about the Family 4 patents, which disclose methods for scrambling the phase characteristics of signals.

Plaintiff's final infringement contentions were due on June 30, 2018. (D.I. 369 ¶ 7). The Scheduling Order required Plaintiff to seek "leave . . . for good cause" to supplement those contentions. (*Id.*). Fact discovery closed on October 1, 2018. (*Id.* ¶ 2). Plaintiff's opening expert reports on infringement were due on November 20, 2019, Defendant's rebuttal report was due on December 20, 2019, and Plaintiff's reply reports were due on January 29, 2020. (D.I. 922; D.I. 936). In his reply report, Dr. Vijay Madisetti, Plaintiff's expert, argued for the first time that Defendant's products meet certain claim elements under a doctrine of equivalents (DOE) theory. (D.I. 959-11, Ex. J ¶¶ 35-40, 73).

## II.   LEGAL STANDARDS

The Federal Rules of Civil Procedure require an expert witness to provide a written report containing "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). If a party fails to provide this information, "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

To determine whether a failure to disclose was harmless, courts in the Third Circuit consider the *Pennypack* factors: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the possibility of curing the prejudice; (3) the potential disruption of an orderly and efficient trial; ( 4) the presence of bad faith or willfulness in failing to disclose the evidence; and (5) the importance of the information withheld. *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977)).

### III.  DISCUSSION

#### A.  Dr. Madisetti's DOE Opinions

Defendant seeks to exclude Dr. Madisetti's DOE opinions as untimely. Plaintiff responds that the opinions "were properly raised in good faith to address Adtran's ever-shifting non-infringement theories and claim interpretations." (D.I. 988 at 2). For example, in its non-infringement contentions, Defendant initially argued that, in the accused products, a "sign change is performed on a constellation point based on a two bit pseudo random number." (D.I. 987-4, Ex. 4 at 3). By contrast, Defendant's expert, Dr. George Zimmerman, concluded in his report, "In this portion of the source code, the constellation point is not transformed via sign change," and that instead, "the data bits themselves are transformed." (D.I. 959, Ex. K ¶ 156).

Plaintiff, however, did not include a DOE argument in its infringement contentions, which were due before Defendant's non-infringement contentions. (*See, e.g.*, D.I. 965-1, Ex. 3). Plaintiff cannot point to Defendant's later filings to justify the absence of a DOE theory in its own infringement contentions. The Scheduling Order required Plaintiff to seek leave and show good cause to supplement its contentions. (D.I. 369 ¶ 7). The Federal Circuit has held that even if

3

a scheduling order is silent on the required contents of infringement contentions, that "does not mean that [the plaintiff] can choose to disclose nothing about its doctrine of equivalents theory." *Teashot LLC v. Green Mountain Coffee Roasters, Inc.*, 595 F. App'x 983, 987 (Fed. Cir. 2015). I therefore conclude that Plaintiff's DOE opinions for Family 4 were not disclosed in a timely manner.

      I turn to the *Pennypack* factors to determine whether the untimely disclosure was nevertheless harmless. At the outset, it is worth noting that in "sophisticated, complex litigation involving parties represented by competent counsel," courts have "been less indulgent" in applying the *Pennypack* factors and "more willing to exclude evidence without a strict showing that each of the *Pennypack* factors has been satisfied." *Bridgestone Sports Co. v. Acushnet Co.*, 2007 WL 521894, at *4 (D. Del. Feb. 15, 2007). There can be little doubt that this sprawling litigation, which has already lasted the better part of a decade, is "sophisticated [and] complex" or that these parties are represented by "competent counsel."

      The first *Pennypack* factor is the prejudice or surprise to the party against whom the evidence is offered. As one court observed, a belated attempt to introduce a DOE theory of infringement is "not a mere correction of information, but instead, creates a new ballgame." *Hochstein v. Microsoft Corp.*, 2009 WL 2498481, at *6 (E.D. Mich. Aug. 17, 2009). Defendant would need to present new defenses for the asserted DOE theories—defenses that Defendant did not prepare for during discovery. I therefore find the first factor favors exclusion.

      The second and third factors also favor exclusion. Although the COVID-19 pandemic has already disrupted plans for an "orderly and efficient trial," re-opening discovery to give Defendant an opportunity to cure the prejudice would only disrupt the schedule further.

4

For the fourth factor, I do not believe that Plaintiff acted in "bad faith" like a party that intentionally suppresses evidence. Plaintiff, however, did know it had an obligation to disclose its DOE theories earlier, as evidenced by the fact that Plaintiff included DOE opinions in its infringement contentions for other patent families in this litigation. (*See* D.I. 965-1, Ex. 6 at 18). In that sense, the omission of DOE theories for this family was a "willful" decision. This factor is, at best for Plaintiff, neutral.

Finally, I do not find that the DOE opinions are so important to Plaintiff's case that they should be admitted despite the prejudice to Defendant. As Plaintiff acknowledged in its own brief on this motion, Dr. Madisetti merely "repeated his opinion from his Opening Report, albeit using the linguistic framework of the function-way-result test," and his DOE opinion "was not materially different from what [he] stated in his opening report." (D.I. 988 at 11). Plaintiff can still rely on that opening report at trial. Plaintiff just cannot raise the entirely new argument that the products infringe under a DOE theory.

Thus, I conclude that under the *Pennypack* factors, the belated disclosure of Dr. Madisetti's DOE opinions was not "harmless," and the opinions should be excluded.

### B. Dr. Zimmerman's Declaration

Plaintiff seeks to strike Paragraphs 11, 16, and 17 of Dr. Zimmerman's declaration (D.I. 969) as untimely and unreliable. Paragraphs 16 and 17 address Dr. Madisetti's DOE opinions, and since those opinions are now excluded, the motion to strike the paragraphs is moot. In Paragraph 11, Dr. Zimmerman writes:

> In Exhibit B, I explained the operation of the source code on which TQ Delta's experts Drs. Almeroth and Madisetti rely regarding the transmission of certain SOC messages. Ex. B. ¶¶ 83-107. As I explained, the source code operates by scrambling the data bits of the relevant initialization message and then passing

> those scrambled data bits to the constellation encoder function. The constellation encoder function then generates QAM symbols or constellation points based on those scrambled data bits.

(D.I. 969 ¶ 11).

Exhibit B is a copy of Dr. Zimmerman's expert report on non-infringement. Plaintiff claims that, contrary to this paragraph, "Dr. Zimmerman has never previously characterized the operation of the source code as a bit scrambler." (D.I. 1019 at 3). Plaintiff argues this is a new opinion that violates the expert disclosure rules and fails to meet the standards for expert testimony under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

Defendant counters that this paragraph is not an "expert report nor [is it] testimony to be presented to a jury." (D.I. 1035 at 1). Rather, Defendant offered the declaration in support of its own motion to strike Dr. Madisetti's DOE opinions. Given this representation, which essentially concedes the disclosure has no further relevance to the Family 4 patents, I will dismiss as moot Plaintiff's motion to strike.

**IV.   CONCLUSION**

For these reasons, Defendant's motion to strike (D.I. 962) is GRANTED, and Plaintiff's motion to strike (D.I. 1018) is DISMISSED as moot.

Entered this 31st day of July, 2020.

  /s/ Richard G. Andrews  
United States District Judge