IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TQ DELTA, LLC,

                            Plaintiff;

         v.

ADTRAN, INC.,

                         Defendant.

Civil Action No. 14-954-RGA

MEMORANDUM OPINION

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE; Peter J. McAndrews, Paul W. McAndrews, Rajendra A. Chiplunkar, Ashley M. Ratycz, MCANDREWS, HELD & MALLOY, LTD., Chicago, IL; Sharon E. Roberg-Perez, David A. Prange, Benjamen Linden, ROBINS KAPLAN LLP, Minneapolis, MN,

Attorneys for Plaintiff.

Kenneth L. Dorsney, Cortlan S. Hitch, MORRIS JAMES LLP, Wilmington, DE; Paul M. Sykes, Benn C. Wilson, Jake M. Gipson, BRADLEY ARANT BOULT CUMMINGS LLP, Birmingham, AL,

Attorneys for Defendant.

August 17, 2021

**ANDREWS, U.S. DISTRICT JUDGE:**

Before the Court is Defendant's Motion to Strike New Infringement Theories Based on Alleged Standards Essentiality in Family 7. (D.I. 1276). I have considered the parties' briefing. (D.I. 1277, 1285, 1289).

## I.    BACKGROUND

Plaintiff TQ Delta filed suit against Defendant ADTRAN, alleging infringement of numerous U.S. Patents. (D.I. 1). The Court divided the case into separate trials based on the patent families. (D.I. 369). This motion concerns the Family 7 Patents, U.S. Patent Nos. 6,445,730 ("the '730 Patent"), 7,978,753 ("the '753 Patent"), 8,437,382 ("the '382 Patent"), and 8,611,404 ("the '404 Patent"). The Family 7 Patents relate to multicarrier transmission systems with low power mode or sleep mode and rapid-on capabilities.

Plaintiff's final infringement contentions were due on June 30, 2018 and fact discovery closed on October 30, 2018. (D.I. 369 at 5). Opening expert reports were due on September 23, 2020, rebuttal expert reports were due on October 23, 2020, and reply expert reports were due on November 6, 2020. (D.I. 1219). Expert discovery closed on December 22, 2020. (D.I. 1259).

## II.    LEGAL STANDARD

"Infringement contentions … serve the purpose of providing notice to the Defendants of infringement theories beyond the mere language of the patent claim." *Intellectual Ventures I LLC v. AT&T Mobility LLC*, 2017 WL 658469, at *2 (D. Del. Feb. 14, 2017) (quoting *Motion Games, LLC v. Nintendo Co.*, 2015 WL 1774448, at *2 (E.D. Tex. Apr. 16, 2015)). In other words, "Plaintiff need not in its contentions actually prove its infringement case." *WI-LAN Inc. v. Vizio, Inc.*, 2018 WL 669730, at *1 (D. Del. Jan. 26, 2018). Infringement contentions are treated as initial disclosures under Federal Rule of Civil Procedure 26(a). *See* United States District Court

for the District of Delaware, *Default Standard for Discovery* § 4; *Intellectual Ventures I*, 2017 WL 658469, at *1.

Under Federal Rule of Civil Procedure 37(c)(1), "If a party fails to provide information ... as required by Rule 26(a) or (e), the party is not allowed to use that information ... to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Courts in the Third Circuit consider the *Pennypack* factors to determine whether a failure to disclose was harmless: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the possibility of curing the prejudice; (3) the potential disruption of an orderly and efficient trial; (4) the presence of bad faith or willfulness in failing to disclose the evidence; and (5) the importance of the information withheld." *TQ Delta, LLC v. ADTRAN, Inc.*, 2019 WL 4346530, at *1 (D. Del. Sept. 12, 2019) (citing *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997)). "[T]he exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Konstantopoulos*, 112 F.3d at 719. The determination of whether to exclude evidence is within the discretion of the district court. *Id.*

## III.   ANALYSIS

Defendant moves to strike Plaintiff's infringement theories based on standards essentiality. (D.I. 1277 at 2). Defendant argues that Plaintiff set forth an infringement theory based on standards essentiality for the first time in its opening expert report. (*Id.* at 6). Defendant contends that Plaintiff's addition of "an alternative infringement theory in its opening expert report[]" was a violation of the Court's Final Scheduling Order. (*Id.* at 9). Defendant maintains that Plaintiff's arguments for why there was no violation of the Final Scheduling Order are

3

insufficient because (1) Plaintiff's "own representations in open court establish that merely

mapping a DSL standard to an asserted claim does not disclose an essentiality theory;" and (2)

Plaintiff cannot "excuse its failure to disclose by asserting that ADTRAN bears the burden of

proof on essentiality." (*Id.* at 11).

Plaintiff counters that it did not disavow an infringement theory based on standards

essentiality. (D.I. 1285 at 11-16). Rather, Plaintiff argues that it was "well known that it was

relying on standards essentiality to prove infringement," as its "reliance on the DSL Standards to

prove infringement was disclosed at the earliest stages of the case in [its] initial infringement

contentions[] and maintained through [its] final infringement contentions." (D.I. 1285 at 7, 14).

Plaintiff argues that its responses to Defendant's Interrogatory No. 12 made it clear that Plaintiff

was relying on standards essentiality to prove infringement. (*Id.* at 8).

The Final Scheduling Order provided that Plaintiff's final infringement contentions were

due by June 30, 2018, and that "Plaintiff may seek leave to supplement its final infringement

contentions for good cause." (D.I. 369 at 5). Plaintiff timely filed its final infringement

contentions. Plaintiff also timely supplemented its responses to Defendant's interrogatories. (D.I.

454).

I agree with Plaintiff that its reliance on standards essentiality is not a new infringement

theory. Throughout the course of this litigation, Plaintiff has pursued an infringement theory

based on standards essentiality.

In its final infringement contentions and claim charts, Plaintiff stated how the Accused

Product "operates in accordance with the ADSL2/2+ standard." (D.I. 1286-9, Exh. I at 3 of 31

(claim charts for the '730 Patent)). Defendant's non-infringement contentions acknowledge this,

stating, "TQ Delta's infringement contentions are based on ADSL2." (D.I. 1286-12, Exh. L at 2

of 7). Both Plaintiff's infringement contentions and Defendant's non-infringement contentions indicate the parties' understanding that infringement based on standards essentiality was an infringement theory in this case.

Further, Plaintiff supplemented its response to Interrogatory 12 and incorporated its Claim Charts that reflect how each element of the Asserted Claims relates to particular sections of DSL standards. (D.I. 1286-10, Exh. J at 8 of 31). This supplementation occurred on July 17, 2018, months prior to the closure of fact discovery. (*Id.* at 9 of 13). In its supplemental interrogatory response, Plaintiff also included its "initial, conditional contentions regarding whether an asserted claim is standard-essential" in Appendix A. (*Id.* at 8 of 13). Appendix A consists of a chart that maps out each Asserted Claim and denotes to which standards the claim is essential. (*Id.* at 10-31 of 31). Within the chart, Plaintiff also states its contentions for standards essentiality for each claim. (*Id.*). For instance, for Claim 1 of the '784 Patent, Plaintiff states, "As shown in the TQ Delta claim charts, each element of the claim reads on a corresponding portion of the ADSL2/2+ and VDSL2 standards, and therefore, TQ Delta preliminarily contends that claim 1 is essential to the standards identified in this essentiality table." (*Id.* at 10 of 31). While Plaintiff's arguments on a standards essentiality infringement theory were not completely fleshed out, that was not necessary at this stage. Based on Plaintiff's final infringement contentions, claim charts, and supplemented response to Interrogatory No. 12, it is clear that Plaintiff was asserting that the Asserted Claims are standards essential. Therefore, Plaintiff did not raise this infringement theory for the first time in its opening expert reports, but rather, used the opening expert reports to expand on this infringement theory, as it is entitled to do. *See ROY-G-BIV Corp. v. ABB, Ltd.*, 63 F. Supp. 3d 690, 699 (E.D. Tex. 2014).

Defendant argues that Plaintiff has disavowed an infringement theory based on standards essentiality as Plaintiff repeatedly stated that Defendant bears the burden of proof on essentiality. (D.I. 1277 at 11-12). In its interrogatory response, Plaintiff does state, "It is ADTRAN's burden, however, to establish whether each element of a claim is standard-essential for purposes of any FRAND obligation." (D.I. 1286-10, Exh. J at 8 of 31). This statement, in addition to being an accurate statement of the law, does not negate Plaintiff's reliance on standards essentiality to prove infringement. Plaintiff has established, in both its infringement contentions and answers to interrogatories, that it contends that the Asserted Claims are standard essential.

Therefore, I find that Plaintiff disclosed its infringement theories based on standards essentiality prior to its opening expert report, so its disclosure was not untimely. As Plaintiff's disclosure was not untimely, I need not address the *Pennypack* factors. Defendant's motion to strike is denied.

## IV.   CONCLUSION

Defendant's Motion to Strike New Infringement Theories Based on Alleged Standards Essentiality in Family 7 (D.I. 1286) is denied.

A separate order will be entered.