IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TQ DELTA, LLC,<br><br>                    Plaintiff;<br>        v.<br>ADTRAN, INC.,<br><br>                    Defendant. | | Civil Action No. 14-954-RGA |

## MEMORANDUM OPINION

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE; Peter J. McAndrews, Paul W. McAndrews, Rajendra A. Chiplunkar, Ashley M. Ratycz, MCANDREWS, HELD & MALLOY, LTD., Chicago, IL; Sharon E. Roberg-Perez, David A. Prange, Benjamen Linden, ROBINS KAPLAN LLP, Minneapolis, MN,

Attorneys for Plaintiff.

Kenneth L. Dorsney, Cortlan S. Hitch, MORRIS JAMES LLP, Wilmington, DE; Paul M. Sykes, Benn C. Wilson, Jake M. Gipson, BRADLEY ARANT BOULT CUMMINGS LLP, Birmingham, AL,

Attorneys for Defendant.

August 23, 2021


ANDREWS, U.S. DISTRICT JUDGE:

Before the Court are two motions: Plaintiff's Motion to Strike Adtran's New Non-Infringement Defense Based on Purported Password Protection (D.I. 1312) and Defendant's Motion to Strike New Infringement Contentions Based on the Broadcom Command Line Interface and System Release Source Code (Family 7). (D.I. 1327). I have considered the parties' briefing. (D.I. 1313, 1328, 1331, 1339, 1341, 1348).

## I.   BACKGROUND

Plaintiff TQ Delta filed suit against Defendant ADTRAN alleging infringement of numerous U.S. Patents. (D.I. 1). The Court divided the case into separate trials based on the patent families. (D.I. 369). This motion concerns the Family 7 Patents, U.S. Patent Nos. 6,445,730 ("the '730 Patent"), 7,978,753 ("the '753 Patent"), 8,437,382 ("the '382 Patent"), and 8,611,404 ("the '404 Patent"). The Family 7 Patents relate to multicarrier transmission systems with low power mode or sleep mode and rapid-on capabilities.

Plaintiff's final infringement contentions were due on June 30, 2018 and fact discovery closed on October 30, 2018. (D.I. 369 at 5). Opening expert reports were due on September 23, 2020, rebuttal expert reports were due on October 23, 2020, and reply expert reports were due on November 6, 2020. (D.I. 1219). Expert discovery closed on December 22, 2020. (D.I. 1259). Dispositive motions and trial have been continued pending the resolution of outstanding claim construction issues. (D.I. 1269).

## II.   LEGAL STANDARD

"Infringement contentions ... serve the purpose of providing notice to the Defendants of infringement theories beyond the mere language of the patent claim." *Intellectual Ventures I LLC v. AT&T Mobility LLC*, 2017 WL 658469, at *2 (D. Del. Feb. 14, 2017) (quoting *Motion Games,*

*LLC v. Nintendo Co.*, 2015 WL 1774448, at *2 (E.D. Tex. Apr. 16, 2015)). In other words, "Plaintiff need not in its contentions actually prove its infringement case." *WI-LAN Inc. v. Vizio, Inc.*, 2018 WL 669730, at *1 (D. Del. Jan. 26, 2018). Infringement contentions are treated as initial disclosures under Federal Rule of Civil Procedure 26(a). *See* United States District Court for the District of Delaware, *Default Standard for Discovery* § 4; *Intellectual Ventures I*, 2017 WL 658469, at *1.

"If a party fails to provide information ... as required by Rule 26(a) or (e), the party is not allowed to use that information ... to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Courts in the Third Circuit consider the *Pennypack* factors to determine whether a failure to disclose was harmless: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the possibility of curing the prejudice; (3) the potential disruption of an orderly and efficient trial; (4) the presence of bad faith or willfulness in failing to disclose the evidence; and (5) the importance of the information withheld." *TQ Delta, LLC v. ADTRAN, Inc.*, 2019 WL 4346530, at *1 (D. Del. Sept. 12, 2019) (citing *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997)). "[T]he exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Konstantopoulos*, 112 F.3d at 719. The determination of whether to exclude evidence is within the discretion of the district court. *Id.*

### III. ANALYSIS

Both motions concern Broadcom Command Line Interface ("CLI") and System Release source code. Defendant moves to strike Plaintiff's infringement theories based on this source code, while Plaintiff moves to strike Defendant's non-infringement defense based on purported

password protection. (D.I. 1328 at 1; D.I. 1313 at 1). Each party asserts that the other inappropriately raised its respective infringement theory or non-infringement defense for the first time in its expert reports. (D.I. 1328 at 1; D.I. 1313 at 6).

### A. Defendant's Motion to Strike Plaintiff's Infringement Contentions Based on CLI and System Release Source Code

Defendant moves to strike Plaintiff's theories of infringement based on CLI and System Release source code as an untimely-disclosed infringement contention. (D.I. 1328 at 1). Defendant states, "TQ Delta's final infringement contentions asserted infringement based exclusively on the native capability of a single component of the ADTRAN Accused Products – the Broadcom DSL chip." (*Id.*). Defendant contends that Plaintiff, for the first time in its opening expert report, asserted new non-infringement theories based on CLI. (*Id.*). Specifically, Defendant argues that Plaintiff now contends that the Accused Products infringe because a user can access Broadcom CLI, enter certain commands, override settings in the System Release source code, and reprogram the DSL chip to access the infringing functionality. (*Id.*). Defendant maintains that infringement theories based on Broadcom CLI and System Release source code were not disclosed during discovery, were not referenced in Plaintiff's infringement contentions, and Plaintiff did not seek leave of Court to amend its infringement contentions. (*Id.* at 5-9).

Plaintiff, meanwhile, counters that it "has consistently pursued an infringement theory based on the L2 [low power] mode functionality specified in the ADSL2/2+ standard." (D.I. 1341 at 6). Plaintiff maintains that its Final Infringement Contentions pointed to sections of "Broadcom source code for the DSL chip firmware running on the BCM65300 DSL chip in the accused products that implement the L2 mode functionality and correspond to elements of the asserted claims." (*Id.*). Plaintiff argues that Dr. Brody's report and Dr. Rudnick's report expand

4

on its infringement theories, including the theories based on Broadcom CLI and System Release source code. (*Id.* at 6-7).

The Final Scheduling Order provided that Plaintiff's final infringement contentions were due by June 30, 2018, and, "Plaintiff may seek leave to supplement its final infringement contentions for good cause." (D.I. 369 at 5). Plaintiff timely filed its final infringement contentions. Plaintiff points to locations in its final infringement contentions that describe portions of the Broadcom CLI and, in Plaintiff's view, disclose the infringement contentions at issue. (D.I. 1341 at 6-7). One is a block diagram of the Accused Product which states, "The block diagram also shows an ARM AM3352 processor that configures the three BCM65300 chips." (D.I. 1342-4, Exh. D at 14 of 31). The other describes VDSL2 ports and states, "Ports can be provisioned individually using Total Access 5000 CLI commands." (*Id.* at 8 of 31).

Plaintiff's infringement contentions mention Broadcom CLI, but it is a much closer call as to whether these statements disclose Plaintiff's infringement theories based on Broadcom CLI and System Release source code. Even if these infringement theories were untimely, I find, under the *Pennypack* factors, that their exclusion is not warranted.

I note that in "sophisticated, complex litigation involving parties represented by competent counsel," courts "have been less indulgent" in applying the *Pennypack* factors and "more willing to exclude evidence without a strict showing that each of the *Pennypack* factors has been satisfied." *Bridgestone Sports Co. v. Acushnet Co.*, 2007 WL 521894, at *4 (D. Del. Feb. 15, 2007). There is little doubt that this litigation, which has already spanned the better part of a decade, is "complex" and that the parties have been represented by "competent counsel."

For the first *Pennypack* factor, surprise or prejudice, Defendant contends that it is severely prejudiced as fact discovery was conducted based on a different infringement theory

5

and, had Plaintiff identified its other infringement theories earlier, Defendant "would have handled its non-infringement contentions and remaining fact discovery much differently." (D.I. 1328 at 14). Defendant also asserts that the prejudice has been amplified as Plaintiff's delayed disclosure permitted Defendant only one month to respond. (*Id.* at 15). As to the second and third factors, Defendant maintains that the prejudice is incurable as fact discovery is over and it was unable to pursue discovery regarding these infringement theories. (*Id.* at 16). Defendant asserts that its experts would need additional time to evaluate the source code on which Plaintiff's infringement theories rely, and such time would disrupt the trial schedule. (*Id.* at 16-17).

Plaintiff counters that Defendant has not been prejudiced as (1) its infringement contentions have not changed; (2) its expert report was timely; (3) Defendant had sufficient time to respond; and (4) Defendant had full access to the Source Code. (D.I. 1341 at 13-14). Plaintiff argues that any prejudice was, and is, curable, as Defendant had the opportunity (and did) respond to Plaintiff's experts' opinions and Defendant had possession of the source code and could analyze it as necessary. (*Id.* at 15-16). Further, Plaintiff maintains that there will be no impact on the trial schedule, as there is currently no trial date set and Defendant's expert did not have any issue performing remote testing. (*Id.* at 16-17).

The first factor weighs in favor of exclusion. If Defendant was not clear on Plaintiff's infringement theories based on Broadcom CLI and the System Release source code, then its discovery on the theories could have been inhibited. However, that prejudice was, and is, curable. Therefore, the second and third *Pennypack* factors weigh against exclusion. Defendant's expert, Bruce McNair, reviewed the source code analyzed by Plaintiff's experts and submitted a rebuttal expert report. (D.I. 1341-8, Exh. H at 38-68 of 155). Should Defendant require more time to further analyze the source code pertaining to Plaintiff's Broadcom CLI and the System

6

Release source code infringement theories, I will grant Defendant that opportunity. There is currently no trial scheduled for the Family 7 Patents, so additional time to review source code will not impact the litigation's progress.

For the fourth factor, willfulness or bad faith, Defendant argues that Plaintiff acted willfully in failing to seek the Court's permission to add new infringement contentions. (D.I. 1328 at 18). In Defendant's view, such willfulness is demonstrated by Plaintiff's "past practice of belatedly asserting new infringement contentions without leave of Court" and Plaintiff's delay in disclosing these infringement theories. (*Id.* at 18-19). Plaintiff counters that it was not willful as it is not asserting a new infringement theory and actions in other Families are not relevant to the issue at hand here. (D.I. 1341 at 19). I agree with Plaintiff that there has been no willfulness or bad faith. While Plaintiff's infringement contentions could have more specifically detailed the Broadcom CLI and System release source code, its infringement contentions did mention Broadcom CLI and that was expanded upon in Plaintiff's expert reports. As there has been no willfulness, this factor weighs against exclusion.

In regards to the fifth factor, importance, Defendant maintains that these infringement contentions are not so important as the Court has granted summary judgment against Plaintiff on similar issues in litigation of other patent families. (D.I. 1328 at 19-20). Plaintiff disagrees, arguing that these theories are important to proving its infringement case. (D.I. 1341 at 20). I agree with Plaintiff. These infringement theories and the corresponding expert reports are important evidence in support of Plaintiff's infringement case. Beyond this, "the exclusion of critical evidence is an 'extreme' sanction," *Konstantopoulos*, 112 F.3d at 719, and I do not find it warranted in this situation. Any prejudice Defendant suffered can be or has been remedied and

7

the infringement theories and supporting expert opinions are important to Plaintiff's infringement case. Therefore, Defendant's motion to strike is denied.

### B. Plaintiff's Motion to Strike Defendant's Non-Infringement Defense Based on Purported Password Protection

Plaintiff moves to strike Defendant's non-infringement defense "based on purported password protection for a portion of the user interface of the accused products" and any expert opinion or declaration in support of that non-infringement defense for the Family 7 Patents. (D.I. 1313 at 1). Plaintiff first argues that this is not a legally viable defense, as the purported requirement of entering a password does not prevent the Accused Products from infringing when sold. (*Id.* at 2)[1]. Second, Plaintiff contends that this non-infringement defense was not timely disclosed and, therefore, Plaintiff has suffered severe and incurable prejudice. (*Id.* at 2-6). Plaintiff argues that Defendant, for the first time, in its expert's rebuttal report, asserted that a customer would not have access to Broadcom CLI as it is restricted by a password, and therefore, the Accused Products do not infringe. (*Id.* at 5-7).

Defendant counters that this defense falls within the scope of its non-infringement contentions and fairly responds to Plaintiff's infringement contention based on CLI and System Release source code. (D.I. 1331 at 9). Defendant argues that its non-infringement contentions describe how in the Accused Products the L2 mode is not presented to or available to customers, and its defense that there is password protection aligns with this stated non-infringement contention. (*Id.* at 9-10).

Defendant's non-infringement claim charts state, "[T]he option to enable L2 mode is not presented or available to a customer purchasing ADTRAN's accused products." (D.I. 1332, Exh.

---

[1] A motion to strike is not the appropriate time to determine whether a defense is legally viable. Therefore, I will not address Plaintiff's argument on that ground.

8

1 at 36-37 of 435). Defendant's interrogatory responses, as supplemented on October 1, 2018, state identical contentions. (*Id.* at 30 of 435). Defendant's contentions are clear: its Accused Products do not enable the L2 mode and a customer purchasing the Accused Products is not presented with or able to enable the L2 mode. In its rebuttal expert report, Defendant's expert, Mr. McNair expanded on this defense. (*See* D.I. 1341-8, Exh. 8 at 87, 94-97 of 155). This is permissible, as all details of a non-infringement defense need not be disclosed in non-infringement contentions. Therefore, Defendant's assertion of this defense is not untimely and I need not address the *Pennypack* factors. Plaintiff's motion to strike is denied.

## IV. CONCLUSION

Defendant's Motion to Strike New Infringement Contentions Based on the Broadcom Command Line Interface and System Release Source Code (Family 7) (D.I. 1327) is denied. Plaintiff's Motion to Strike ADTRAN's New Non-Infringement Defense Based on Purported Password Protection (D.I. 1312) is denied.

A separate order will be entered.